| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| *Caption in Compliance with D.N.J. LBR 9004-2* | |
| **A.Y. STRAUSS LLC**<br>Eric H. Horn, Esq.<br>David S. Salhanick, Esq.<br>290 West Mount Pleasant Avenue, Suite 3260<br>Livingston, New Jersey 07039<br>Tel. (973) 287-0966<br>Fax  (973) 533-0127<br><br>*Counsel to the Debtor and Debtor-in-Possession* | |
| In re:<br><br>Work 'N Gear, LLC,<br><br>          Debtor. | Chapter 11<br><br>Case No. 25-17472 (MEH) |

**Order Filed on October 7, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

---

### INTERIM ORDER (I) AUTHORIZING DEBTOR IN POSSESSION FINANCING PURSUANT TO 11 U.S.C. §§ 105(a), 362, 363 AND 364(c) AND (d); (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE CLAIMS PURSUANT TO 11 U.S.C. § 364(c); (III) MODIFYING THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF

---

The relief set forth on the following pages, numbered two (2) through and including twenty-six (26), is hereby **ORDERED**

**DATED: October 7, 2025**

**Honorable Mark E. Hall
United States Bankruptcy Judge**

Page:    2
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

Upon the emergency motion, dated October 1, 2025 [Docket No. 124] (the "***DIP Motion***")[1]
of Work 'N Gear, LLC, the debtor and debtor in possession (the "***Debtor***" or "***DIP Borrower***") in
the above-captioned chapter 11 case (the "***Case***"), seeking entry of an order (the "***Interim DIP
Order***") pursuant to sections 105, 361, 362, 364, 506, 507 and 552 of chapter 11 of title 11 of the
United States Code (the "***Bankruptcy Code***"), Rules 2002, 4001, 6003, 6004, and 9014 of the
Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rule 4001-3 of the Local
Rules for the United States Bankruptcy Court for the District of New Jersey (the "***Local Rules***"),
*inter alia:*

(i)        authorizing, on an interim basis, the Debtor to obtain senior secured, postpetition
financing on a superpriority basis consisting of a secured superpriority credit facility in the
aggregate principal amount of up to $5,000,000 (the "***DIP Facility***"; and the loans disbursed
thereunder, the "***DIP Loan Proceeds***") pursuant to the terms and conditions of that certain *Senior
Secured and Superpriority Debtor-In-Possession Credit Agreement* attached as **Exhibit B** to the
DIP Motion by and among the DIP Borrower, as borrower, and ABL OPCO LLC and/or one or
more of its affiliates, as lender, (collectively, and together with their successors and assigns, the
"***DIP Lenders***"), and ABL OPCO LLC as administrative agent (in such capacity, and together
with its successors and assigns, the "***DIP Administrative Agent***") for and on behalf of itself and
any other lenders party thereto (collectively with the DIP Administrative Agent, the DIP Lenders,
the "***DIP Secured Parties***");

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the DIP Motion.

Page:    3
Debtors: Work 'N Gear, LLC
Case No: 25-17472 (MEH)
Caption: Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
         105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
         Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
         Stay; and (iv) Granting Related Relief

_____

(ii)    approving the terms and authorizing the Debtor to execute and deliver the DIP Loan

Agreement and any other agreements and documents related thereto (together with the DIP Loan

Agreement, the "***DIP Loan Documents***") and to perform such other acts as may be necessary or

desirable in connection with the DIP Loan Documents and this Interim DIP Order;

(iii)    authorizing borrowings under the DIP Facility;

(iv)    granting to the DIP Administrative Agent and the DIP Lenders, on account of the

DIP Facility owing under the DIP Loan Documents (the "***DIP Obligations***") allowed superpriority

administrative expense claim status with respect to the DIP Obligations;

(v)    granting to the DIP Administrative Agent, for the benefit of itself and the DIP

Lenders, as security for the DIP Obligations, automatically perfected security interests in and liens

on all of the collateral securing the DIP Facility (collectively, the "***DIP Collateral***");

(vi)    authorizing the use of the proceeds of the DIP Facility to, among other things,

satisfy senior secured prepetition debt owed to Eastern Bank, purchase inventory, make payments

in respect to administrative expenses (including budgeted professional fees) and other

disbursements in accordance with the Approved Budget (defined below), subject to the variances

permitted in the DIP Loan Agreement, all subject to the conditions set forth in the DIP Loan

Documents and in this Interim DIP Order;

(vii)    vacating and modifying the automatic stay imposed by section 362 of the

Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of

the DIP Loan Documents and this Interim DIP Order.

Page:      4
Debtors:   Work 'N Gear, LLC
Case No:   25-17472 (MEH)
Caption:   Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
           105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
           Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
           Stay; and (iv) Granting Related Relief

_____

The Court having considered the DIP Motion, the exhibits attached thereto, the DIP Loan
Documents, and the evidence submitted and argument made at the hearing held on October 6,
2025; and adequate and sufficient notice of such hearing having been given under the
circumstances; and all objections, if any, to the interim relief requested in the DIP Motion having
been withdrawn, resolved or overruled by the Court; and it appearing that interim approval of the
relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtor and
its estate, and is essential to the restructuring of the Debtor and the preservation of the value of the
Debtor's assets; and it appearing that the Debtor's entry into the DIP Facility, the DIP Loan
Agreement, and the DIP Loan Documents is a sound and prudent exercise of the Debtor's business
judgment; and after due deliberation and consideration, and good and sufficient cause appearing
therefor;

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS
OF LAW:**

A.    **Petition Date**. On July 16, 2025 (the "***Petition Date***"), the Debtor filed a
voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States
Bankruptcy Court for the District of New Jersey (the "***Court***").

B.    **Debtor in Possession**. The Debtor has continued in the management and
operation of its businesses and property as a debtor in possession pursuant to sections 1107 and
1108 of the Bankruptcy Code.

Page:     5
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

C.      **Jurisdiction and Venue**. This Court has jurisdiction over the Case and this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.). Venue for the Case and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409 and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

D.      **Notice**. Notice of the DIP Motion and the hearing on the same are appropriate in light of the facts of this Case, and no other or further notice of the DIP Motion shall be required.

E.      **The Official Committee of Unsecured Creditors**. The Official Committee of Unsecured Creditors (the "***Committee***") was appointed on August 5, 2025, by the Office of the United States Trustee (the "***U.S. Trustee***") pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 61].

F.      **No Control**.  None of the DIP Administrative Agent or the DIP Lenders control the Debtor or its properties or operations, or is a control person or insider of the Debtor.

G.      **Findings Regarding Corporate Authority**. The Debtor has all requisite corporate or limited liability company authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

H.      **Findings Regarding Postpetition Financing.**

Page:    6
Debtors: Work 'N Gear, LLC
Case No: 25-17472 (MEH)
Caption: Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
         105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
         Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
         Stay; and (iv) Granting Related Relief

---

(i)    _Request for Postpetition Financing_. The Debtor seeks authority on an interim basis to borrow under the DIP Facility on the terms described herein and in the DIP Loan Documents in accordance with the Approved Budget.

(ii)    _Need for Postpetition Financing_. Without the funds provided for in the DIP Facility, the Debtor would be unable to purchase necessary inventory in advance of its high season and fund its administrative obligations through the effective date of a plan of reorganization.

(iii)    _No Credit Available on More Favorable Terms_. Given its current financial condition, financing arrangements, and capital structure, the Debtor has been unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. The Debtor is unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtor has also been unable to obtain (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien.

(iv)    _Use of proceeds of the DIP Facility_. As a condition to entry into and the extension of credit under the DIP Facility, the DIP Administrative Agent and the DIP Lenders required and continue to require, and the Debtor has agreed, that DIP Loan Proceeds shall be used, in each case in a manner consistent with the terms and conditions of this Interim DIP Order and

Page:     7
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

the DIP Loan Documents and in accordance with the budget attached hereto as **Schedule 1** (as the same may be modified from time to time in accordance with the DIP Loan Documents and this Interim DIP Order), consistent with the terms of the DIP Loan Documents and subject to such variances as permitted therein (the "***Approved Budget***").  All DIP Loan Proceeds shall be held in a segregated bank account (the "***DIP Controlled Account***") at a financial institution that is a signatory to the Uniform Depository Agreement ("***UDA***") in accordance with the U.S. Trustee Guidelines and subject to a control agreement in favor of the DIP Agent in accordance with the DIP Loan Documents.

I.     **Good Faith of the DIP Administrative Agent and DIP Lenders**.

(i)     *Willingness to Provide Financing*. The DIP Lenders have indicated a willingness to provide financing to the Debtor subject to: (a) entry of this Interim DIP Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents; (c) satisfaction of the closing conditions and conditions to the extension of credit set forth in the DIP Loan Documents; and (d) findings by this Court that the DIP Facility is essential to the Debtor's estate, that the DIP Administrative Agent and the DIP Lenders are extending credit to the Debtor pursuant to the DIP Loan Documents in good faith, and that the DIP Administrative Agent's and the DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim DIP Order and the DIP Loan Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

Page:     8
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

(ii)   _Business Judgment and Good Faith Pursuant to Section 364(e)._ The terms and conditions of the DIP Facility and the DIP Loan Documents, and the interest and fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtor under the circumstances, are ordinary and appropriate for secured financing to a debtor in possession, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration. The terms and conditions of the DIP Facility were negotiated in good faith within the meaning of Section 364(e) of the Bankruptcy Code and at arms' length among the Debtor, the DIP Administrative Agent, and the DIP Lenders, with the assistance of their respective counsel.  Based upon the foregoing findings and conclusions and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.   **Financing Approved**. The DIP Motion is granted on an interim basis as set forth in this Interim DIP Order. The funding provided under the DIP Facility pursuant to the DIP Loan Documents and hereunder is authorized and approved.  All objections to interim relief sought in the DIP Motion, to the extent not withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby denied and overruled, _provided_, _however_, that all rights of the Committee and the United States Trustee to object to and to be heard regarding the final relief sought under the DIP Motion are preserved.

Page:      9
Debtors:   Work 'N Gear, LLC
Case No:   25-17472 (MEH)
Caption:   Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
           105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
           Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
           Stay; and (iv) Granting Related Relief

---

### **DIP Facility Authorization**

2.      **Authorization of the DIP Facility**. The DIP Facility is hereby approved on
an interim basis. The Debtor is expressly and immediately authorized and directed to borrow under
the DIP Loan Documents and under the DIP Facility, and to incur and to perform the DIP
Obligations in accordance with, and subject to, the terms of this Order and the DIP Loan
Documents, and to execute and deliver all instruments, certificates, agreements, and documents
which may be required or necessary for the performance by the Debtor under the DIP Facility and
the creation and perfection of the liens described in and provided for by this Order.  Upon execution
and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtor,
enforceable against the Debtor and its estate in accordance with their terms and this Order.  In the
event of any inconsistency between the terms of this Order and the DIP Loan Documents, the terms
of the Order shall control. The DIP Secured Parties shall not have any obligation to make any loan
or advance under the DIP Facility Documents, unless all of the conditions precedent to the making
of such extensions of credit under the applicable DIP Facility documents and this Interim Order
have been satisfied in full or waived by the DIP Administrative agent in its respective sole
discretion. The initial DIP Lender is hereby authorized to assign all of its rights, title and interest
in the DIP Facility and the DIP Facility documents to AB Lending SPV I LLC, a Delaware limited
liability company.

Page:    10
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

3.      **Authorization to Borrow**. Subject to the terms and conditions set forth in the DIP Loan Documents and this Order, the Debtor is hereby authorized to borrow up to $5,000,000.

4.      **DIP Obligations**. The DIP Loan Documents and this Order shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, which DIP Loan Documents and this Order shall be enforceable against the Debtor, its estate and any successor thereto, including any trustee appointed in the Case, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "***Successor Cases***"). No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.      **DIP Liens**. In order to secure the DIP Obligations, pursuant to sections 361, 362, 364(c)(2), and 364(c)(3) of the Bankruptcy Code, the DIP Administrative Agent, for the benefit of itself and the DIP Lenders, is granted immediately upon entry of the Order, a continuing,

Page:    11
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition

security interests in and liens (collectively, the "**_DIP Liens_**") on all Collateral (as defined in the

DIP Loan Documents, the "**_DIP Collateral_**") subject to the Carveout. The DIP Collateral shall

include the DIP Controlled Account and the DIP Loan Proceeds.

      6.     **<u>DIP Lien Priority</u>**. The DIP Liens securing the DIP Obligations are valid,

automatically perfected, non-avoidable and superior to any security, collateral interest, lien, or

claim to any of the DIP Collateral, and shall otherwise be junior only to, if any, the existing liens

disclosed to the DIP Parties in the DIP Loan Agreement.  Other than as set forth herein or in the

DIP Loan Documents, the DIP Liens shall not be made subject to or _pari passu_ with any lien or

security interest heretofore or hereinafter granted in the Case or any Successor Cases, and shall be

valid and enforceable against any trustee appointed in the Case or any Successor Cases, upon the

conversion of any of the Case to a case under chapter 7 of the Bankruptcy Code (or in any other

Successor Case), and/or upon the dismissal of any of the Case or Successor Cases. The DIP Liens

shall not be subject to section 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided

and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be

_pari passu_ with or senior to the DIP Liens.

      7.     **<u>DIP Superpriority Claims</u>**. The DIP Administrative Agent, on behalf of

itself and the DIP Lenders, is hereby granted pursuant to section 364(c)(l) of the Bankruptcy Code,

an allowed superpriority administrative expense claim in the Case and any Successor Cases

(collectively, the "**_DIP Superpriority Claims_**") for all DIP Obligations having priority over any

Page:      12
Debtors:   Work 'N Gear, LLC
Case No:   25-17472 (MEH)
Caption:   Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
           105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
           Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
           Stay; and (iv) Granting Related Relief

---

and all administrative expense claims and unsecured claims against the Debtor or its estate in the

Case and any Successor Case, at any time existing or arising, including administrative expenses

under any provision of the Bankruptcy Code and pre-petition liens to the extent allowed under the

Bankruptcy Code. The DIP Superpriority Claims shall have recourse to and be payable from all

pre-petition and post-petition assets of the Debtor, including, but not limited to, the DIP Collateral,

subject to the other terms of this Interim DIP Order; *provided, however*, that notwithstanding

anything to the contrary herein, prior to seeking payment or satisfaction of the DIP Obligations

from proceeds of preference actions asserted under 11 U.S.C. § 547 and commercial tort claims,

the DIP Secured Parties shall use commercially reasonable efforts to first satisfy such DIP

Obligations from all DIP Collateral other than proceeds of preference actions and commercial tort

claims and shall consult with the Committee prior to seeking payment or satisfaction of the DIP

Obligations from proceeds of preference actions asserted under 11 U.S.C. § 547 and commercial

tort claims. If any or all of the provisions of this Interim DIP Order are hereafter reversed, modified,

vacated, stayed, or not included in any Final DIP Order (as that term is defined in the DIP Motion),

that action (or failure to secure a Final DIP Order for any reason) will not affect (a) the validity of

any obligation, indebtedness, or liability incurred hereunder by the Debtor to the DIP Secured

Parties, or (b) the validity and enforceability of any lien, claim, obligation, or priority authorized

or created under this Interim DIP Order or pursuant to the DIP Facility as of such date.  Except as

expressly permitted in this Interim DIP Order and the DIP Facility in the event that any person or

entity that holds a lien or security interest in DIP Collateral that is junior or subordinate to the DIP

Page:      13
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

Liens in such DIP Collateral (other than the DIP Secured Parties) receives or is paid the proceeds

of such DIP Collateral prior to payment in full and in cash and the complete satisfaction of the DIP

Facility, such junior or subordinate lienholder shall be deemed to have received, and shall hold,

the proceeds of any such DIP Collateral in trust for the DIP Lender, and shall immediately turn over

such proceeds to the DIP Administrative Agent for application in accordance with this Interim DIP

Order and the DIP Facility documents.

8.    **Budget Maintenance**.  The use of borrowings under the DIP Facility shall

be in accordance with the Approved Budget, subject in all respects to the permitted variances set

forth in the DIP Loan Agreement.

9.    **Modification of Automatic Stay**. The automatic stay imposed under

section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the

terms and provisions of this Order, including to: (a) permit the Debtor to grant the DIP Liens and

DIP Superpriority Claims; (b) permit the Debtor to perform such acts as the DIP Administrative

may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit

the Debtor to incur all liabilities and obligations to the DIP Administrative Agent and DIP Lenders

under the DIP Loan Documents, the DIP Facility, and this Order, as applicable; authorize the

Debtor to make, and the DIP Administrative Agent and DIP Lenders to retain and apply, payments

made in accordance with the terms of this Order and the DIP Loan Documents.

10.    **Perfection of DIP Liens**. This Order shall be sufficient and conclusive

evidence of the creation, validity, perfection, and priority of all liens granted under this Order,

Page:      14
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

including the DIP Liens, without the necessity of filing or recording any financing statement,

fixture filing, notice, or other instrument or document which may otherwise be required under the

law or regulation of any jurisdiction or the taking of any other action to validate or perfect the DIP

Liens, or to evidence or entitle the DIP Administrative Agent, and the DIP Lenders to the priorities

granted herein.

    11. **Cash Maintenance**. Debtor shall maintain with a financial institution that

has signed the UDA and selected or approved by the DIP Administrative Agent a Lockbox (as

defined in the DIP Facility) and any deposit accounts required by the DIP Administrative Agent,

including the Cash Concentration Accounts (as defined in the DIP Facility). Each Lockbox and

deposit account must be subject to a lockbox agreement, a deposit account agreement, or control

that is satisfactory to the DIP Administrative Agent to be entered into promptly following the entry

of this Interim Order. Debtor must instruct (and these instructions must be satisfactory to the DIP

Administrative Agent in its Discretion) all Account Debtors and other Persons obligated to Debtor

or any subsidiary of Debtor to make, and Debtor must ensure that all Account Debtors do make,

all payments directly to the Lockbox or a Cash Concentration Account.  In the event that, at any

time, Debtor, the guarantor of the DIP Facility, or any of their subsidiaries shall at any time receive

any remittances of any payment directly or shall receive any other funds representing proceeds of

the DIP Collateral, Debtor or such other person will, and will cause each of its subsidiaries to, (i)

hold the same in trust for the DIP Administrative Agent and as the DIP Administrative Agent's

fiduciary, and segregate such remittances from its other assets and (ii) deposit promptly, and in

Page:      15
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

any event no later than one (1) Business Day after the date of receipt thereof, all cash, cash

equivalents, checks, notes, drafts or other similar items of payment relating to or constituting

payments made in respect of any and all Accounts or representing proceeds of the DIP Collateral

into the Lockbox or a Cash Concentration Account.  All collections sent to the Lockbox will be

deposited daily directly into a Cash Concentration Account. All funds in each Cash Concentration

Account are the DIP Administrative Agent's exclusive property and are subject to the DIP

Administrative Agent's sole control. Debtor does not have control over or any interest in any Cash

Concentration Account and do not have any right to withdraw any amounts from any Cash

Concentration Account. On each Business Day (or as frequently as the DIP Administrative Agent

may determine in its sole discretion), the DIP Administrative Agent may cause, without further

consent of Debtor, all immediately available funds in the Lockbox or the Cash Concentration

Accounts to be deposited into the DIP Administrative Agent Holding Account (as defined in the

DIP Facility) and apply all such funds to the Obligations (as defined in the DIP Facility) in the

order and manner the DIP Administrative Agent determines in its discretion.  Debtor, on behalf of

itself and its subsidiaries, irrevocably waives the right to direct the application of any DIP

Collateral proceeds, and agrees that the DIP Administrative Agent shall have the continuing,

exclusive right to apply and reapply the same against the Obligations, in such manner as the DIP

Administrative Agent deems advisable, notwithstanding any entry by the Administrative Agent in

its records.

Page:    16
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

_____

12.    **Access to DIP Collateral**. All of Debtor's landlords, warehousemen, mortgagees, processing facilities and bailees (collectively, the "***DIP Custodians***") shall permit the DIP Secured Parties, its assignees, agents, representatives or any purchasers of any of the DIP Collateral pursuant to a sale conducted by the DIP Secured Parties (together with the DIP Secured Parties, collectively, the "***DIP Permitted Parties***"), to enter upon their premises during normal business hours and in a manner reasonably acceptable to the DIP Custodian for the DIP Permitted Parties to perform the Permitted Actions (defined below) with the prior written consent of the applicable DIP Custodian;; *provided, however*, that the DIP Permitted Parties shall provide not less than seven (7) days' written notice (email being sufficient) to the applicable DIP Custodian, and any party in interest shall have the right to object and request a hearing on no less than three (3) days' notice to determine appropriate conditions for such access (the "***Access Conditions***"). Subject to the foregoing, the DIP Permitted Parties may enter the premises without assuming any obligations of Debtor under any agreement between DIP Custodian and Debtor or any obligation to cure any defaults by Debtor thereunder without interference by the DIP Custodian, to do with the DIP Collateral, in accordance with the provisions of this Interim Order and the DIP Facility, all or any of the following acts: inspect; assemble; appraise; display, sever; remove; maintain; use or operate; prepare for sale or lease; process or repair; and/or lease, transfer and/or, so long as a sale has been approved by an order of this Court, sell any or all of the DIP Collateral by private sale, public sale or auction from the premises (collectively, the "***DIP Permitted Actions***"). DIP Custodians shall permit the DIP Secured Parties to do with the DIP Collateral, all or any of the

Page:     17
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

DIP Permitted Actions, provided that the DIP Permitted Parties shall (a) comply with all applicable laws, rules, regulations and safety requirements of the premises, (b) maintain customary insurance naming the DIP Custodian as an additional insured, and (c) indemnify and hold harmless the DIP Custodian from and against any and all claims, liabilities, losses, damages, costs, or expenses (including attorneys' fees) related to the DIP Permitted Actions, at no cost to the DIP Permitted Parties other than repairs to the premises for damages caused to the premises as a result of the DIP Permitted Parties performing the DIP Permitted Actions and, following notice of an Event of Default (under and as defined in the DIP Facility), payment by Secured Parties of the amount due under the applicable agreement with the DIP Custodian, In furtherance of the foregoing, Secured Parties shall have no obligation or liability to the DIP Custodians for any obligations of Debtor or otherwise under any agreement between Debtor and the applicable DIP Custodian, including any obligation to cure any past due amount arising prior to the Access Period. Under no circumstances shall the DIP Permitted Parties or DIP Custodian have any obligation to remove any of the DIP Collateral from any premises. For the avoidance of doubt, nothing in this Interim Order shall (i) be deemed to grant the DIP Permitted Parties any greater rights of access than Debtor itself had under the applicable lease or other occupancy agreement, or (ii) require the DIP Custodian to waive, compromise or prejudice any of its rights, remedies or defenses under applicable non-bankruptcy law or any agreement with the Debtor.

13.    **DIP Maturity Date**. The commitment of the DIP Lenders shall terminate and all amounts owing under the DIP Facility shall be due and payable on the earlier of (1) the

Page:    18
Debtors: Work 'N Gear, LLC
Case No: 25-17472 (MEH)
Caption: Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
Stay; and (iv) Granting Related Relief

---

Termination Date, (2) the date on which the Revolving Commitments are reduced to zero (and

remains at zero for a period longer than sixty (60) days) or otherwise terminated, (3) the date that

is sixty (60) days after the entry of the Interim DIP Order if the Final DIP Order has not been

entered on or before such date (unless such date has been amended or extended in writing by the

DIP Administrative Agent in its discretion); (4) the effective date of any confirmed Acceptable

Plan or the date of entry of a Confirmation Order with respect to any other Chapter 11 Plan; (5)

the date of filing by any Debtor of a Chapter 11 Plan that is not an Acceptable Plan; (6) the date

of entry of a Confirmation Order with respect to a Chapter 11 Plan filed by a Person other than a

Debtor if such Chapter 11 Plan is not an Acceptable Plan; (7) the date of closing of any sale of all

or any substantial part of the assets of the Debtor; (8) the date on which the DIP Administrative

Agent is granted relief from the automatic stay (after giving effect to any notice required for the

DIP Administrative Agent to enforce its Liens as described in any Financing Order); and (9) the

date on which any of the Chapter 11 Cases is dismissed or converted to Chapter 7.[2]

14. **Repayment of Original Credit Agreement**. The Debtor is hereby

authorized and directed to repay the Pre-Petition Lender, Eastern Bank, in full promptly upon entry

of this Order and, in any event, no later than the time of the initial advance under the DIP

Facility.  Such repayment is hereby approved pursuant to sections 105(a), 363(b) and 364 of the

Bankruptcy Code, and shall not be subject to setoff, recoupment, avoidance, reduction,

---

[2] With regard to this paragraph, any capitalized term not otherwise defined herein shall have the meaning ascribed to
such term in the DIP Loan Agreement.

Page:    19
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

_____

disgorgement, subordination, or recovery by any party.  Upon payment in full, in cash, of all

principal, accrued and unpaid interest, fees, costs, expenses (including, without limitation,

attorneys' fees and expenses), and other obligations outstanding under the Credit Agreement, the

Pre-Petition Lender's liens and security interests shall be deemed released.  Upon entry of this

Order, the Challenge Deadline (as defined in the Final Cash Collateral Order) shall be deemed to

have expired and all Prepetition Lien and Claim Stipulations (as defined in the Final Cash

Collateral Order) shall be binding, conclusive, and final on any subsequent trustee, responsible

person, examiner with expanded powers, any other estate representative, and all creditors and

parties in interest and all of their successors in interest and assigns, including the Committee, as

further set forth in the Final Cash Collateral Order.

15. **Application of Payment by Pre-Petition Lender**.  The Pre-Petition

Lender is hereby authorized to receive and retain the payment of the senior secured prepetition

debt owed to Eastern Bank and to apply such payment to the indefeasible satisfaction in full of the

obligations outstanding under the Credit Agreement.  Such payment shall be final and binding on

the Debtor, its estate, and all parties in interest, and shall not be subject to any setoff, recoupment,

avoidance, reduction, disgorgement, subordination, or recovery by any party.

16. **Events of Default**. The occurrence of any of the following events, unless

waived by the DIP Administrative Agent in writing and in accordance with the terms of the DIP

Loan Agreement, shall constitute an event of default (an "***Event of Default***"): (a) the failure of the

Debtor to perform, in any respect, any of the terms, provisions, covenants or obligations under this

Page:     20
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

Order, (b) the failure of the Debtor to comply with the Approved Budget on the terms and subject

to the permitted variances set forth in the DIP Loan Documents; or (c) the occurrence of any other

"Event of Default" under the DIP Loan Documents.

17.    **Rights and Remedies Upon Event of Default**. Immediately upon the

occurrence and during the continuation of an Event of Default, notwithstanding the provisions of

section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before,

or order from the Court, but subject to the terms of this Order the DIP Administrative Agent may

declare (any such declaration shall be referred to herein as a "***Termination Declaration***") (a) all

DIP Obligations owing under the respective DIP Loan Documents to be immediately due and

payable, (b) the termination, reduction or restriction of any further commitment to extend credit to

the Debtor under the DIP Facility, (c) termination of the DIP Facility and the DIP Loan Documents

as to any future liability or obligation of the DIP Administrative Agent and the DIP Lenders, but

without affecting any of the DIP Liens or the DIP Obligations, and (d) a termination, reduction or

restriction on the ability of the Debtor to use cash constituting DIP Collateral.  The Termination

Declaration shall include notice of the occurrence of the Event of Default and shall be given by

electronic mail to counsel to the Debtor, counsel for the Committee , and the U.S. Trustee. The

automatic stay in the Chapter 11 Case otherwise applicable to the DIP Administrative Agent and

the DIP Lenders is hereby modified so that ten (10) days after the date a Termination Declaration

is delivered (the "***Remedies Notice Period***"), the DIP Administrative Agent and the DIP Lenders

shall be entitled to exercise their rights and remedies in accordance with the DIP Loan Documents

Page:    21
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

and this Order to satisfy the DIP Obligations, DIP Superpriority Claim, and DIP Liens.  During

the Remedies Notice Period, the Debtor shall be entitled to seek an emergency hearing for any

reason within the Remedies Notice Period and the Remedies Notice Period shall be tolled until the

Court rules upon such emergency relief. Unless the Court orders otherwise (whether during the

Remedies Notice Period or within five (5) business days of the expiration thereof), the automatic

stay, as to DIP Administrative Agent and the DIP Lenders shall automatically be terminated at the

end of the Remedies Notice Period without further notice or order. Upon expiration of the

Remedies Notice Period or within five (5) business days of the expiration thereof, the DIP

Administrative Agent and the DIP Lenders shall be permitted to exercise all remedies set forth

herein and in the DIP Loan Documents as applicable, and as otherwise available at law without

further order of or application or motion to the Court.  Notwithstanding the foregoing, the DIP

Lender may only enter upon a leased premises of the Debtor in accordance with (i) a separate

written agreement among the DIP Lender and the applicable landlord for the leased premises, (ii)

pre-existing rights of the DIP lender under applicable non-bankruptcy law, (iii) written consent of

the applicable landlord for the leased premises, or (iv) entry of an order by this Court approving

such access to the leased premises in accordance with the Access Conditions.

18.    **Good Faith Under Section 364(e) of the Bankruptcy Code**. The DIP

Administrative Agent and the DIP Lenders have acted in good faith in connection with this Order

and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy

Code.  Based on the findings set forth in this Order and the record made during the hearing on the

Page:    22
Debtors: Work 'N Gear, LLC
Case No: 25-17472 (MEH)
Caption: Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
         105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
         Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
         Stay; and (iv) Granting Related Relief

---

DIP Motion, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or

all of this Order are hereafter reargued, reconsidered, reversed, modified, amended, or vacated by

a subsequent order of this Court or any other court, the DIP Administrative Agent and the DIP

Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code to the

maximum extent set forth therein.

> 19.    **Carve-Out**. Notwithstanding anything to the contrary in this Order, any

liens granted herein or pursuant to the DIP Loan Documents are subject and subordinate to a carve

out for the payment of the following (the "***Carve-Out***"): (A) all fees required to be paid pursuant

to the Clerk of the Court and to the United States Trustee under section 1930(a) of title 28 of the

United States Code and any interest thereon pursuant to 37 U.S.C. § 3717, plus (B) to the extent

allowed by the Court (regardless of whether the order allowing such fees is entered before or after

the Carve-Out Trigger Notice (defined below) or is an interim order, procedural order, or other

order) all accrued and unpaid fees and expenses (the "***Allowed Professional Fees***") incurred by

persons or firms retained or proposed to be retained by the Debtor pursuant to section 327, 328 or

363 of the Bankruptcy Code (the "***Debtor Professionals***"), and the Committee pursuant to section

328 or 1103 of the Bankruptcy Code (the "***Committee Professionals***" and, together with the Debtor

Professionals and any other estate professionals, the "***Professional Persons***"), in an amount not to

exceed that professional's total cumulative fee amount for the 13-week period set forth in the

Approved Budget, plus (C) all reasonable fees and expenses up to $50,000 incurred by a chapter

7 trustee, plus (D) Allowed Professional Fees of Professional Persons incurred on and after the

Page:    23
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

date of delivery by the  of the Carve-Out Trigger Notice (defined below), subject to an aggregate

cap of $100,000 (the "***Post-Trigger Carve-Out Fee Cap***"), *provided, however*, that any

Professional Person who exceeds its total cumulative cap is entitled to any remaining Allowed

Professional Fees to the extent any Professional Personal has not exceeded its cap.  Upon the

occurrence and during the continuation of any Termination Event, the DIP Administrative Agent

may deliver a written notice to the Debtor, the U.S. Trustee and the Committee invoking the Post-

Trigger Notice Carve-Out Fee Cap (the "***Carve-Out Trigger Notice***").  Each week during which

the Approved Budget provides for the payment of professional fees, the Debtor shall deposit the

budgeted amount for professional fees for the Professional Persons for that period into an escrow

account to be used solely for paying Allowed Professional Fees (such account, the "***Professional***

***Fee Escrow Account***"). Regardless of whether such amounts are deposited into the Professional

Fee Escrow Account, the budgeted professional fees segregated into a separate bank account of

the Debtor shall be deemed held in trust exclusively for the benefit of the Professional Persons for

the payment of Allowed Professional Fees in accordance with the Approved Budget and shall not

be available for application to any amount owing under the DIP Loan Documents or subject to the

DIP Liens or DIP Superpriority Claims unless and until all Allowed Professional Fees have been

paid in full.

      20.    **No Third-Party Rights**. Except as explicitly provided for herein, this Order

does not create any rights for the benefit of any third party, creditor, equity holder or any direct,

indirect, or incidental beneficiary.

Page:    24
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
         105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
         Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
         Stay; and (iv) Granting Related Relief

---

21.    **Release of DIP Administrative Agent and DIP Lenders**. Subject to and
effective upon entry of a Final Order, the Debtor, forever and irrevocably, to the maximum extent
permitted by applicable law: (i) releases, discharges, and acquits each of, (a) effective upon entry
of this Order, the DIP Administrative Agent and DIP Lenders, and in each case, each of their
former or current officers, employees, directors, agents, representatives, owners, members,
partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants,
attorneys, affiliates, and predecessors-in-interest of and from any and all claims, demands,
liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of
every type, including, without limitation, any so-called "lender liability" or equitable
subordination claims or defenses, solely with respect to or relating to the negotiation and entry into
the DIP Loan Documents and the use of cash constituting DIP Collateral; and (ii) waive, discharge
and release any and all defenses (including, without limitation, offsets and counterclaims of any
nature or kind) as to the validity, perfection, priority, enforceability, and avoidability of the DIP
Obligations; *provided* that nothing in this paragraph shall in any way limit or release the
obligations of the DIP Lenders under the DIP Loan Documents and this Interim Order.

22.    **Amendment**.    Subject to the terms and conditions of the DIP Loan
Agreement and the other DIP Loan Documents, Borrower, DIP Agent and DIP Lenders may
amend, modify, supplement or waive any provision of the DIP Loan Documents (a "***DIP Loan
Amendment***") without further approval or order of the Court, so long as (a) such DIP Loan
Amendment is not material (for purposes hereof, a "material" DIP Loan Amendment shall mean

Page:    25
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

any DIP Loan Amendment that operates to increase or change in any manner adverse to the

Borrower the economic terms of the DIP Loan Agreement, (b) the Debtor provides prior written

notice of the DIP Loan Agreement (the "***DIP Loan Amendment Notice***") to counsel for the

Committee, and the U.S. Trustee and (c) no objection to the DIP Loan Amendment is filed with

the Court within five (5) business days from the date the DIP Loan Amendment Notice is filed

with the Court in accordance with this Paragraph.  Any material DIP Loan Amendment to the DIP

Loan Documents must be approved by the Court to be effective.

23.      **Survival**. The provisions of this Interim DIP Order and any actions taken

pursuant hereto shall survive entry of any order which may be entered converting the Case to a

case under chapter 7 of the Bankruptcy Code or dismissing the Case or any Successor Case. The

terms and provisions of this Order, including the claims, liens, security interests, and other

protections granted to the DIP Administrative Agent and/or the DIP Lenders shall continue in the

Case, in any Successor Case, or following dismissal of the Case or any Successor Case, and shall

maintain their validity, enforceability and priority as provided by this Order until all the DIP

Obligations, pursuant to the DIP Loan Documents and this Order, have been indefeasibly paid in

full in cash, and all commitments to extend credit under the DIP Facility are terminated.

24.      **Final Hearing**. A final hearing on the relief sought in the D I P

Motion shall be conducted on **October 30, 2025 at 10:00 a.m. (ET)** (the "***Final Hearing***").

Any party-in-interest objecting to the relief sought at the Final Hearing shall file and serve a

written objection, which objection shall be served upon (a) counsel for Debtor, (b) the U.S. Trustee

Page:    26
Debtors:  Work 'N Gear, LLC
Case No:  25-17472 (MEH)
Caption:  Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§
          105(a), 362, 363 and 364(c) and (d); (II); Granting Liens And Superpriority
          Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic
          Stay; and (iv) Granting Related Relief

---

for the District of New Jersey, (c) counsel to the DIP Lender(s), (d) counsel to Eastern Bank, (e)

counsel to the Committee, and (f) all other parties appearing in this case, in each case so as to be

received no later than **October 23, 2025 at 4:00 p.m.  (ET)**.  If no objections to the entry of the

Final Order are timely filed, this Court may enter a final order without further notice or a hearing

25.    **Retention of Jurisdiction**. The Court has and will retain jurisdiction to

enforce the terms of any and all matters arising from or related to the DIP Facility, and/or this

Order.

.

**SCHEDULE 1**

**Approved Budget**

**Work 'N Gear**
**Cash Flow Forecast**
**Weekly Cash Flow through January 31, 2026**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fiscal month >>> | September | October | | | | November | | | | December | | | | January | | | | |
| Week ending >>> | 10/4/25 | 10/11/25 | 10/18/25 | 10/25/25 | 11/1/25 | 11/8/25 | 11/15/25 | 11/22/25 | 11/29/25 | 12/6/25 | 12/13/25 | 12/20/25 | 12/27/25 | 1/3/26 | 1/10/26 | 1/17/26 | 1/24/26 | 1/31/26 |
| Current Cash Balance (including o/s checks) | 133,958 | | | | | | | | | | | | | | | | | |
| **Weekly inflows of cash:** | | | | | | | | | | | | | | | | | | |
| Cash Receipts (all channels, including sales tax) | 586,000 | 603,750 | 603,750 | 603,750 | 603,750 | 694,650 | 694,650 | 694,650 | 694,650 | 916,640 | 891,440 | 891,440 | 891,440 | 891,440 | 656,995 | 656,995 | 656,995 | 656,995 |
| **Operating Disbursements:** | | | | | | | | | | | | | | | | | | |
| Payroll & Taxes | (119,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) | (113,968) |
| Benefits | (30,000) | (17,000) | (17,000) | (17,000) | (17,000) | (25,000) | (17,000) | (17,000) | (17,000) | (25,000) | (17,000) | (17,000) | (17,000) | (25,000) | (17,000) | (17,000) | (17,000) | (17,000) |
| Rent roll & occupancy costs | (350,000) | | (21,385) | (16,885) | | (100,000) | (50,000) | | | (125,000) | (225,000) | | | (175,000) | (175,000) | (175,000) | | |
| Utilities | (17,385) | (17,385) | (21,385) | (18,500) | (7,385) | (7,385) | (7,385) | (7,385) | (7,385) | (7,385) | (7,385) | (7,385) | (7,385) | (7,385) | (7,385) | (7,385) | (7,385) | (7,385) |
| Credit card/Bank Fees | (40,000) | | (5,000) | | | (50,000) | (5,000) | | | (60,000) | | (5,000) | | (75,000) | | | (15,000) | (15,000) |
| IT/Telephone/Copier Expenses | (19,400) | (30,000) | (17,100) | (18,500) | | (19,400) | (30,000) | (17,100) | | (19,400) | (30,000) | (17,100) | | | (19,400) | (30,000) | (17,100) | |
| Insurance | (11,000) | | | | | (11,000) | | | | (11,000) | | | (3,000) | (11,000) | | | | |
| EDI | (3,000) | | | | (3,000) | | | | (3,000) | | | (3,000) | (3,000) | | | | (3,000) | |
| Security | (3,500) | (3,500) | (3,500) | | (3,500) | | (3,500) | | (3,500) | | (3,500) | (3,500) | | (3,500) | | (3,500) | (3,500) | (3,500) |
| Store Expenses | (1,500) | (3,500) | (6,000) | (3,500) | (1,500) | (3,500) | (1,500) | (3,500) | (1,500) | (3,500) | (1,500) | (3,500) | (1,500) | (3,500) | (1,500) | (3,500) | (1,500) | (3,500) |
| Amex | (5,000) | (7,000) | (6,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,000) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) |
| Miscellaneous Expense | (9,000) | (7,500) | (7,540) | (7,000) | (7,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) |
| Store Repairs & Maintenance | (1,000) | (1,000) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) |
| Store Travel | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) |
| President's Travel | (2,700) | | | | | | | | | | | | | | | | | |
| Merchandise | (300,000) | (400,000) | (300,000) | (250,000) | (350,000) | (250,000) | (150,000) | (350,000) | (350,000) | (350,000) | (350,000) | (500,000) | (500,000) | (500,000) | (500,000) | (500,000) | (500,000) | (400,000) |
| Freight | (25,000) | (25,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (60,000) | (20,000) | (20,000) | (15,000) | (15,000) | (15,000) | (15,000) |
| Sales Tax | | | (35,000) | (85,012) | | | | (40,000) | | | | | | | | | (70,000) | |
| | | | | (52,000) | | | | | | | | | | | | | | |
| **Total Operating Disbursements** | (938,453) | (623,853) | (525,203) | (487,603) | (529,103) | (609,003) | (407,103) | (702,703) | (603,603) | (744,003) | (773,603) | (756,203) | (675,103) | (943,103) | (858,003) | (700,603) | (757,203) | (569,103) |
| **Net Operating Cash Flow** | (352,453) | (20,103) | 78,547 | 116,147 | 74,647 | 85,647 | 287,547 | (8,053) | 91,047 | 172,437 | 117,837 | 135,237 | 216,337 | (51,663) | (201,008) | (43,608) | (608) | 87,892 |
| **Capital, Financing & Non-Operating:** | | | | | | | | | | | | | | | | | | |
| Capital Spend | (300,000) | | | | | | | | | | | | | | | | | |
| Financing - interest on revolve/new lender fees | | | (17,500) | | | | (19,000) | | | | (10,000) | | | | (10,000) | (15,000) | | |
| Liquidator | (17,500) | (17,500) | | | | | | | | | (18,000) | | | | | | | |
| Utility Security Deposits | | | (45,741) | | | | (125,000) | | | | (75,000) | | | | (100,000) | | | |
| Legal Fees - Debtor | | | (59,823) | (25,000) | | | (125,000) | | | | (50,000) | | | | (75,000) | | | |
| Financial Advisor Fees - Debtor | | | (50,000) | | | | (25,000) | | | | | | | | | | | |
| Legal Fees - Lender | | | (50,000) | (85,012) | | | (50,000) | | | | | | | | | | | |
| Legal Fees - New Lender | | | | (52,000) | | | (85,000) | | | | | | | | | | | |
| UCC Professional Fees | | | (35,000) | | | | | | | | | | | | | | | |
| Quarterly Ch 11 Fees | | | | | | | | | | | | (129,988) | | | | | (32,000) | |
| **Total Capital, Financing & Non-Operating Disbursements** | (317,500) | (17,500) | (223,063) | (162,012) | - | - | (429,000) | - | - | - | (153,000) | (129,988) | - | - | (185,000) | (15,000) | (32,000) | - |
| **Total Disbursements** | (1,255,953) | (641,353) | (748,266) | (649,615) | (529,103) | (609,003) | (836,103) | (702,703) | (603,603) | (744,003) | (926,603) | (886,191) | (675,103) | (943,103) | (1,043,003) | (715,603) | (789,203) | (569,103) |
| **Net Cash Flow** | (669,953) | (37,603) | (144,516) | (45,865) | 74,647 | 85,647 | (141,453) | (8,053) | 91,047 | 172,437 | (35,163) | 5,249 | 216,337 | (51,663) | (386,008) | (58,608) | (132,208) | 87,892 |
| *Cumulative Cash Flow* | *(669,953)* | *(707,556)* | *(852,072)* | *(897,937)* | *(823,290)* | *(737,643)* | *(879,096)* | *(887,149)* | *(796,102)* | *(623,665)* | *(658,828)* | *(653,579)* | *(437,242)* | *(488,905)* | *(874,913)* | *(933,521)* | *(1,065,729)* | *(977,837)* |
| Advances | 1,121,995 | 641,353 | 748,266 | 649,615 | 529,103 | 609,003 | 836,103 | 702,703 | 603,603 | 744,003 | 926,603 | 886,191 | 675,103 | 943,103 | 1,043,003 | 715,603 | 789,203 | 569,103 |
| Repayments | 586,000 | 603,750 | 603,750 | 603,750 | 603,750 | 694,650 | 694,650 | 694,650 | 694,650 | 916,440 | 891,440 | 891,440 | 891,440 | 891,440 | 656,995 | 656,995 | 656,995 | 656,995 |
| Projected Balance - cash | | | | | | | | | | | | | | | | | | |

Work 'N Gear
Cash Flow Variance
One Weeks Ended October 4, 2025

| | 1 Week Ending 10/4/2025 | | | | 2 Weeks Ending 10/11/2025 | | | |
|---|---|---|---|---|---|---|---|---|
| | Actual | Proj. | Variance | % Variance | Actual | Proj. | Variance | % Variance |
| Current Cash Balance (including o/s checks) | 133,958 | 133,958 | - | 0.0% | 133,958 | 133,958 | - | 0.0% |
| Weekly inflows of cash: | 586,000 | 586,000 | | | 1,189,750 | 1,189,750 | | |
| Operating Disbursements: | | | | | | | | |
| Payroll & Taxes | (119,968) | (119,968) | - | 0.0% | (233,937) | (233,937) | - | 0.0% |
| Benefits | (30,000) | (30,000) | - | 0.0% | (47,000) | (47,000) | - | 0.0% |
| Rent roll & occupancy costs | (350,000) | (350,000) | - | 0.0% | (350,000) | (350,000) | - | 0.0% |
| Utilities | (17,385) | (17,385) | - | 0.0% | (34,769) | (34,769) | - | 0.0% |
| Credit card/Bank fees | (40,000) | (40,000) | - | 0.0% | (40,000) | (40,000) | - | 0.0% |
| IT/Telephone/Copier Expenses | (19,400) | (19,400) | - | 0.0% | (49,400) | (49,400) | - | 0.0% |
| Insurance | (11,000) | (11,000) | - | 0.0% | (11,000) | (11,000) | - | 0.0% |
| EDI | (3,000) | (3,000) | - | 0.0% | (3,000) | (3,000) | - | 0.0% |
| Security | (3,500) | (3,500) | - | 0.0% | (3,500) | (3,500) | - | 0.0% |
| Store Expenses | (1,500) | (1,500) | - | 0.0% | (5,000) | (5,000) | - | 0.0% |
| Annex | | | - | NA | | | - | NA |
| Miscellaneous Expense | (5,000) | (5,000) | - | 0.0% | (12,000) | (12,000) | - | 0.0% |
| Store Repairs & Maintenance | (9,000) | (9,000) | - | 0.0% | (16,500) | (16,500) | - | 0.0% |
| Store Travel | (1,000) | (1,000) | - | 0.0% | (2,000) | (2,000) | - | 0.0% |
| President's Travel | (2,700) | (2,700) | - | 0.0% | (4,200) | (4,200) | - | 0.0% |
| Merchandise | (300,000) | (300,000) | - | 0.0% | (700,000) | (600,000) | (100,000) | 16.7% |
| Freight | (25,000) | (25,000) | - | 0.0% | (50,000) | (50,000) | - | 0.0% |
| Sales Tax | | | - | NA | | | - | NA |
| Total Operating Disbursements | (938,453) | (938,453) | - | 0.0% | (1,562,306) | (1,462,306) | (100,000) | -6.8% |
| Net Operating Cash Flow | (352,453) | (352,453) | - | 0.0% | (372,556) | (272,556) | (100,000) | 36.7% |
| Capital, Financing & Non-Operating: | | | | | | | | |
| Capital Spend | | | - | NA | | | - | NA |
| Financing - interest on revolver | (300,000) | (300,000) | - | 0.0% | (300,000) | (300,000) | - | 0.0% |
| Liquidator | | | - | NA | | | - | NA |
| Utility Security Deposits | (17,500) | (17,500) | - | 0.0% | (35,000) | (35,000) | - | 0.0% |
| Legal Fees - Debtor | | | - | NA | | | - | NA |
| Financial Advisor Fees - Debtor | | | - | NA | | | - | NA |
| Legal Fees - Lender | | | - | NA | | | - | NA |
| Legal Fees - New Lender | | | - | NA | | | - | NA |
| Legal Fees - UCC | | | - | NA | | | - | NA |
| Financial Advisor Fees - UCC | | | - | NA | | | - | NA |
| Total Capital, Financing & Non-Operating | (317,500) | (317,500) | - | 0.0% | (335,000) | (335,000) | - | 0.0% |
| Total Disbursements | (1,255,953) | (1,255,953) | - | 0.0% | (1,897,306) | (1,797,306) | (100,000) | 5.6% |
| Net Cash Flow | (669,953) | (669,953) | - | 0.0% | (707,556) | (607,556) | (100,000) | 16.5% |
| Cumulative Cash Flow | | | | | | | | |
| Advances | 1,121,995 | 1,121,995 | - | 0.0% | 1,763,348 | 1,663,348 | 100,000 | 6.0% |
| Repayments | 586,000 | 586,000 | - | 0.0% | 1,189,750 | 1,189,750 | - | 0.0% |
| Projected Balance - cash | | | - | NA | | | - | NA |

Work 'N Gear
Projected Availability
Through January 31, 2026

| | 1 4-Oct | 2 11-Oct | 3 18-Oct | 4 25-Oct | 5 1-Nov | 6 8-Nov | 7 15-Nov | 8 22-Nov | 9 29-Nov | 10 6-Dec | 11 13-Dec | 12 20-Dec | 13 27-Dec | 14 3-Jan | 15 10-Jan | 16 17-Jan | 17 24-Jan | 18 31-Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **I. Eligible Accounts Receivable** | | | | | | | | | | | | | | | | | | |
| Third Party Credit Card Receivables | 127,472 | 134,081 | 140,691 | 147,300 | 153,909 | 161,527 | 169,145 | 176,763 | 184,889 | 195,646 | 206,103 | 216,561 | 227,018 | 236,822 | 244,079 | 251,337 | 258,594 | 265,852 |
| Advance Rate | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% |
| Available Credit Card A/R | 101,977 | 107,265 | 112,552 | 117,840 | 123,127 | 129,222 | 135,316 | 141,410 | 147,911 | 156,517 | 164,883 | 173,249 | 181,614 | 189,457 | 195,263 | 201,070 | 206,876 | 212,682 |
| Trade Account Receivables | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 |
| Ineligible A/R @ 6% | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) | (19,520) |
| Eligible | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 | 305,820 |
| Advance Rate | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% | 80% |
| Available Trade A/R | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 | 244,656 |
| TOTAL Accounts Receivable Availability | 346,633 | 351,921 | 357,208 | 362,496 | 367,783 | 373,877 | 379,972 | 386,066 | 392,567 | 401,173 | 409,538 | 417,904 | 426,270 | 434,113 | 439,919 | 445,725 | 451,531 | 457,337 |
| **II. Inventory (average cost)** | | | | | | | | | | | | | | | | | | |
| WNG Stores and All Whse Inventory Available fo | 3,680,494 | 3,674,994 | 3,769,494 | 3,763,994 | 3,708,494 | 3,709,762 | 3,611,030 | 3,412,297 | 3,413,565 | 3,301,899 | 3,203,107 | 3,104,315 | 3,155,524 | 3,206,732 | 3,368,044 | 3,529,356 | 3,690,668 | 3,851,980 |
| Less: Ineligibles @3% | (110,415) | (110,250) | (113,085) | (112,920) | (111,255) | (111,293) | (108,331) | (102,369) | (102,407) | (99,057) | (96,093) | (93,129) | (94,666) | (96,202) | (101,041) | (105,881) | (110,720) | (115,559) |
| WNG Stores and All Whse Total Eligible Inventor | 3,570,079 | 3,564,744 | 3,656,409 | 3,651,074 | 3,597,239 | 3,598,469 | 3,502,699 | 3,309,929 | 3,311,158 | 3,202,842 | 3,107,014 | 3,011,186 | 3,060,858 | 3,110,530 | 3,267,003 | 3,423,476 | 3,579,948 | 3,736,421 |
| Inventory Advance Rate (NOLV = 88.5% * 90%) | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% | 66.08% |
| WNG Stores and All Whse Total Inventory Avail | 2,359,108 | 2,355,583 | 2,416,155 | 2,412,630 | 2,377,056 | 2,377,868 | 2,314,583 | 2,187,201 | 2,188,013 | 2,116,438 | 2,053,115 | 1,989,792 | 2,022,615 | 2,055,438 | 2,158,836 | 2,262,233 | 2,365,630 | 2,469,027 |
| **III. Reserves** | | | | | | | | | | | | | | | | | | |
| Gift Cards | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 | 720,138 |
| Merchandise Credits | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 | 164,675 |
| Advance Rate | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% | 35% |
| | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 | 309,684 |
| Special Order / Layaway Deposits | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 | 72,240 |
| Past Due Rent | | | | | | | | | | | | | | | | | | |
| Landlord Lien States | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 | 89,615 |
| Advance Rate | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |
| | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 | 161,855 |
| Total Reserves | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 | 471,540 |
| **TOTAL Borrowing Base Availability** | 2,234,202 | 2,235,964 | 2,301,824 | 2,303,586 | 2,273,299 | 2,280,206 | 2,223,015 | 2,101,727 | 2,109,040 | 2,046,071 | 1,991,113 | 1,936,156 | 1,977,345 | 2,018,012 | 2,127,215 | 2,236,418 | 2,345,621 | 2,454,824 |
| Suppressed Availability | | | | | | | | | | | | | | | | | | |
| NET Available Borrowing Base - $50MM cap | 2,234,202 | 2,235,964 | 2,301,824 | 2,303,586 | 2,273,299 | 2,280,206 | 2,223,015 | 2,101,727 | 2,109,040 | 2,046,071 | 1,991,113 | 1,936,156 | 1,977,345 | 2,018,012 | 2,127,215 | 2,236,418 | 2,345,621 | 2,454,824 |
| LESS: Outstanding Loan Balance | 1,241,783 | 1,777,778 | 1,815,381 | 1,959,897 | 2,005,762 | 1,931,115 | 1,845,468 | 1,986,921 | 1,994,974 | 1,903,927 | 1,731,490 | 1,766,653 | 1,761,404 | 1,545,067 | 1,596,730 | 1,982,738 | 2,041,346 | 2,173,554 |
| LESS: Additional Reserve of Bankruptcy Fees | | | | | | | | | | | | | | | | | | |
| Outstanding Letters of Credit Exposure as of | | | | | | | | | | | | | | | | | | |
| Advances | 1,121,995 | 641,353 | 748,266 | 649,615 | 529,103 | 609,003 | 836,103 | 702,703 | 603,603 | 744,003 | 926,603 | 886,191 | 675,103 | 943,103 | 1,043,003 | 715,603 | 789,203 | 569,103 |
| Repayments | 586,000 | 603,750 | 603,750 | 603,750 | 603,750 | 694,650 | 694,650 | 594,974 | 694,650 | 916,440 | 891,440 | 891,440 | 891,440 | 891,440 | 656,995 | 656,995 | 656,995 | 656,995 |
| TOTAL USAGE | 1,777,778 | 1,815,381 | 1,959,897 | 2,005,762 | 1,931,115 | 1,845,468 | 1,986,921 | 1,994,974 | 1,903,927 | 1,731,490 | 1,766,653 | 1,761,404 | 1,545,067 | 1,596,730 | 1,982,738 | 2,041,346 | 2,173,554 | 2,085,662 |
| NET AVAILABLE FOR FUTURE BORROWINGS | 456,424 | 420,583 | 341,926 | 297,823 | 342,184 | 434,738 | 236,094 | 106,753 | 205,113 | 314,580 | 224,460 | 174,752 | 432,278 | 421,281 | 144,477 | 195,072 | 172,067 | 369,162 |

| | 4-Oct | 11-Oct | 18-Oct | 25-Oct | 1-Nov | 8-Nov | 15-Nov | 22-Nov | 29-Nov | 6-Dec | 13-Dec | 20-Dec | 27-Dec | 3-Jan | 10-Jan | 17-Jan | 24-Jan | 31-Jan | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Third Party Credit Card Receivables** | | | | | | | | | | | | | | | | | | | |
| Opening Balance | 121,003 | 127,472 | 134,081 | 140,691 | 147,300 | 153,909 | 161,527 | 169,145 | 176,763 | 184,889 | 195,646 | 206,103 | 216,561 | 227,018 | 236,822 | 244,079 | 251,337 | 258,594 | 121,003 |
| Sales | 431,250 | 440,625 | 440,625 | 440,625 | 440,625 | 507,863 | 507,863 | 507,863 | 541,720 | 717,152 | 697,152 | 697,152 | 697,152 | 653,580 | 483,840 | 483,840 | 483,840 | 483,840 | 9,656,606 |
| Receipts | (424,781) | (434,016) | (434,016) | (434,016) | (434,016) | (500,245) | (500,245) | (500,245) | (533,594) | (706,395) | (686,695) | (686,695) | (686,695) | (643,776) | (476,582) | (476,582) | (476,582) | (476,582) | (9,511,756) |
| Adjustments | | | | | | | | | | | | | | | | | | | |
| Ending Balance | 127,472 | 134,081 | 140,691 | 147,300 | 153,909 | 161,527 | 169,145 | 176,763 | 184,889 | 195,646 | 206,103 | 216,561 | 227,018 | 236,822 | 244,079 | 251,337 | 258,594 | 265,852 | 265,852 |
| **Trade Accounts Receivable** | | | | | | | | | | | | | | | | | | | |
| Opening Balance | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 |
| Sales | 143,750 | 146,875 | 146,875 | 146,875 | 146,875 | 169,288 | 169,288 | 169,288 | 135,430 | 179,288 | 174,288 | 174,288 | 174,288 | 217,860 | 161,280 | 161,280 | 161,280 | 161,280 | 2,939,675 |
| Receipts | (143,750) | (146,875) | (146,875) | (146,875) | (146,875) | (169,288) | (169,288) | (169,288) | (135,430) | (179,288) | (174,288) | (174,288) | (174,288) | (217,860) | (161,280) | (161,280) | (161,280) | (161,280) | (2,939,675) |
| Adjustments | | | | | | | | | | | | | | | | | | | |
| Ending Balance | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 | 325,340 |
| **Inventory** | | | | | | | | | | | | | | | | | | | |
| Opening Balance | 3,858,459 | 3,680,494 | 3,674,994 | 3,769,494 | 3,763,994 | 3,708,494 | 3,709,762 | 3,611,030 | 3,412,297 | 3,413,565 | 3,301,899 | 3,203,107 | 3,104,315 | 3,155,524 | 3,206,732 | 3,368,044 | 3,529,356 | 3,690,668 | 3,858,459 |
| Receipts | 123,910 | 300,000 | 400,000 | 300,000 | 250,000 | 350,000 | 250,000 | 150,000 | 350,000 | 350,000 | 350,000 | 350,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 6,523,910 |
| Cost of Sales | 301,875 | 305,500 | 305,500 | 305,500 | 305,500 | 348,732 | 348,732 | 348,732 | 348,732 | 461,667 | 448,792 | 448,792 | 448,792 | 448,792 | 338,688 | 338,688 | 338,688 | 338,688 | 6,530,389 |
| Ending Balance | 3,680,494 | 3,674,994 | 3,769,494 | 3,763,994 | 3,708,494 | 3,709,762 | 3,611,030 | 3,412,297 | 3,413,565 | 3,301,899 | 3,203,107 | 3,104,315 | 3,155,524 | 3,206,732 | 3,368,044 | 3,529,356 | 3,690,668 | 3,851,980 | 3,851,980 |
| | 131,446.22 | 141,345.93 | 144,980.55 | 144,769.01 | 142,634.39 | 142,683 | 138,886 | 131,242 | 131,291 | 126,996 | 123,196 | 119,397 | 121,366 | 123,336 | 129,540 | 135,744 | 141,949 | 148,153 | |
| | 28 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | |