| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| *Caption in Compliance with D.N.J. LBR 9004-2* |
| **A.Y. STRAUSS LLC**<br>Eric H. Horn, Esq.<br>David S. Salhanick, Esq.<br>290 West Mount Pleasant Avenue, Suite 3260<br>Livingston, New Jersey 07039<br>Tel. (973) 287-0966<br>Fax  (973) 533-0127<br><br>*Counsel to the Debtor and*<br>*Debtor-in-Possession* |

| | |
|---|---|
| In re: | Chapter 11 |
| Work 'N Gear, LLC, | Case No. 25-17472 (MEH) |
| Debtor. | |

### DISCLOSURE STATEMENT FOR PLAN OF
### <u>REORGANIZATION OF WORK 'N GEAR, LLC</u>

---

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY.  THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN.  THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, THAT IT IS FAIR AND EQUITABLE, AND URGE YOU TO VOTE TO ACCEPT THE PLAN.**

**Table of Contents**

Introduction. ...................................................................................................................................... 1

    A. The Purpose of this Document ..................................................................................................... 1

    B. Confirmation Procedures ............................................................................................................ 3

    1. Time and Place of Confirmation Hearing ................................................................................... 3

    2. Deadline for Voting For or Against the Plan ............................................................................... 3

    3. Deadline for Objecting to Confirmation of the Plan .................................................................. 4

    4. Person to Contact for More Information Regarding the Plan ..................................................... 4

    C. Disclaimer .................................................................................................................................... 4

Article I - Background ........................................................................................................................ 6

    A. Description of Debtor's Business ................................................................................................. 6

    B. Pre-Petition Capital Structure ..................................................................................................... 7

    C. The Bankruptcy Filing ................................................................................................................. 7

Signifiant Events During Chapter 11 Case ....................................................................................... 9

    A. Use of Cash Collateral ................................................................................................................. 9

    B. Post-Petition Secured Financing .................................................................................................. 9

    C. Retention of Professionals by the Debtor .................................................................................. 11

    D. Formation of Committee and Retention of Committee Professionals ....................................... 11

    E. The Debtor's Schedules and the Bar Date .................................................................................. 11

    F. Vendor Relations ........................................................................................................................ 11

    G. Plan Exclusivity .......................................................................................................................... 11

    H. Non-Residential Real Property Matters ..................................................................................... 11

    Article II - Classification and Treatment of Claims…………………………………………...12

    A. Summary of the Plan and Assets Available for Distribution to Creditors ................................. 12

    B. General Provisions and Classifications ...................................................................................... 12

    C. Unclassified Claims:  Administrative Claims and Priority Tax Claims .................................... 13

    1. Administrative Claims ............................................................................................................... 13

    a. Non-Professional Claims…………………………………………………………………13

    b. Professional Fee Claims ............................................................................................................ 14

c. 20 Day Administrative Claims ................................................................................................14

2. Priority Tax Claims..................................................................................................................15

D. Classes of Claims and Interests:  Classification, Treatment and Voting Rights ....................15

Article III - Treatment of Executory Contracts and Unexpired Leases...........................17

A. Assumption of Certain Contracts and Leases and Cure Payments. .......................................17

B. Rejection of Remaining Executory Contracts and Unexpired Leases. ...................................18

C. Rejection Damages Bar Date. ................................................................................................18

Article IV - Provisions for Treatment of Disputed Claims......................................19

A. Resolution of Disputed Claims..............................................................................................19

1. Prosecution of Objections to Claims.......................................................................................19

2. Payments and Distributions on Disputed Claims....................................................................19

B. Allowance of Claims .............................................................................................................20

1. Disallowance of Claims ..........................................................................................................20

2. Allowance of Claims ..............................................................................................................20

3. Objections to Claims...............................................................................................................20

4. Setoffs and Recoupment .........................................................................................................21

C. Controversy Concerning Impairment.....................................................................................21

D. Claims Estimation For Voting Purposes ................................................................................21

Article V - Distributions.................................................................21

A. Distributions ..........................................................................................................................21

1. Disbursing Agent ....................................................................................................................21

2. Disbursing Agent Qualification ..............................................................................................21

3. Compliance with Tax Requirements........................................................................................22

B. Method of Distribution Under the Plan ..................................................................................22

1. In General ...............................................................................................................................22

2. Manner of Payment..................................................................................................................22

3. Transmittal of Distributions to Parties Entitled Thereto .........................................................23

4. Distribution of Unclaimed Property.........................................................................................23

5. Saturday, Sunday or Legal Holiday .........................................................................................23

6. Reports ....................................................................................................................................23

C. Fractional Cents and De Minimis Distributions.....................................................................24

D. Corporate Action....................................................................................................................24

Article VI - Means for Implementation of the Plan..................................................24

ii

A. Going Forward Operations..................................................................................24

B. Right to Sale Debtor's Assets or Equity ............................................................25

1. Marketing Debtor's Assets ...............................................................................25

C. Funding of Plan ...............................................................................................25

D. Vesting of Assets..............................................................................................25

E. Plan Administrator….........................................................................................25

F. Avoidance Actions............................................................................................26

G. Cancellation of Instruments and Agreements....................................................27

Article VII - Effect of Confirmation…...................................................................27

A. Authority to Effectuate Plan ............................................................................27

B. Binding Effect .................................................................................................27

C. Discharge........................................................................................................28

D. Exculpation.....................................................................................................28

E. Injunctions ......................................................................................................28

F. Limitation of Liability......................................................................................29

G. Committee .......................................................................................................29

Article VIII - Conditions Precedent…....................................................................30

A. Condition Precedent to Effective Date ..............................................................30

Article IX - Confirmation Requirements and Procedure….......................................30

A. Who May Vote or Object ..................................................................................30

1. Who May Object to the Confirmation of the Plan .............................................30

2. Who May Vote to Accept or Reject the Plan.....................................................31

B. What Is An Allowed Class or Interest ...............................................................31

C. What is an Impaired Claim or Interest ...............................................................31

1. Who is Not Entitled to Vote .............................................................................32

2. Who Can Vote in More Than One Class ...........................................................32

3. Votes Necessary to Confirm the Plan ...............................................................32

4. Votes Necessary for Class to Accept the Plan...................................................32

5. Treatment of Non-Accepting Classes ...............................................................33

6. Request for Confirmation Despite Non-Acceptance by an Impaired Class...........33

D. Liquidation Analysis .......................................................................................33

E. Feasibility .......................................................................................................34

F. Confirmation Hearing ......................................................................................34

G. Objections to Confirmation ................................................................................36

Article X - Title to Property and Tax Consequences…………………………………….36

A. Vesting of Property ...........................................................................................36

B. Tax Consequences of Confirmation ...................................................................36

1. Tax Consequences to the Debtor .......................................................................37

2. Tax Consequences to Unsecured Creditors .......................................................37

3. Disclaimer .........................................................................................................37

Recommendation ....................................................................................................37

Signature ................................................................................................................38

iv

## <u>INTRODUCTION</u>

Work 'N Gear, LLC, debtor and debtor in possession in the above-captioned chapter 11 case (the "***Debtor***"), hereby submits the following Disclosure Statement pursuant to the provisions of Chapter 11 of the Bankruptcy Code with respect to its Chapter 11 Plan of Reorganization (the "***Plan***").

Unless otherwise noted, all capitalized terms used herein have the meaning ascribed to them in the Plan.

This Disclosure Statement is intended to be used in connection with the solicitation of acceptances or rejections of the Plan filed with the United States Bankruptcy Court for the District of New Jersey. A copy of the Plan is attached hereto as **Exhibit A**.

> **THE DEBTOR RESERVES THE RIGHT TO FILE AN AMENDED DISCLOSURE STATEMENT AND PLAN. ALL CREDITORS ARE HEREBY ADVISED AND ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**
>
> **AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.**

Pursuant to the Bankruptcy Code, Holders of Claims in Class 3, as defined in the Plan, are entitled to vote on the Plan. Persons in Class 1 (Priority Claims), Class 2 (DIP Secured Claim), and Class 4 (Interests) are not entitled to vote on the Plan and are deemed to have accepted or rejected the Plan by operation of law.

### A.     The Purpose of this Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

> **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**
>
> 1.     **WHO CAN VOTE OR OBJECT.**
>
> 2.     **THE PROPOSED TREATMENT OF YOUR CLAIM OR INTEREST (I.E., WHAT YOUR**

**CLAIM OR INTEREST WILL RECEIVE IF THE PLAN IS CONFIRMED), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN A LIQUIDATION.**

3.    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE.**

4.    **WHAT THE BANKRUPTCY COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN.**

5.    **THE EFFECT OF CONFIRMATION.**

6.    **THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting with your own lawyer and/or tax advisor to obtain more specific advice on how the Plan will effect you and what is the best course of action for you.

Be sure to read ***both*** the Plan ***and*** the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Bankruptcy Code § 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Bankruptcy Code § 1125(a)(1) as information of a kind, and in sufficient detail, about a debtor and its operations that will enable a hypothetical reasonable investor, typical of holders of claims or interests of the debtor to make an informed judgment about accepting or rejecting the plan. The Bankruptcy Court has determined that the information contained in this Disclosure Statement is adequate, and has approved this Disclosure Statement in accordance with the Bankruptcy Code.

This Disclosure Statement is provided to each Creditor whose Claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor. Your acceptance of the Plan may not be solicited unless you have received a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B.        Confirmation Procedures**

A Person's vote to accept or reject the Plan will only be counted if submitted by a Creditor whose Claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on Confirmation of the Plan, has timely filed with the Court a proof of Claim which has not been objected to, disallowed or suspended prior to computation of the votes on the Plan.  The ballot form that you receive does not constitute a proof of Claim.  If you are uncertain whether your Claim has been scheduled, you should check the Debtor's Schedules, which are on file at the Clerk of the United States Bankruptcy Court located at Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608. The Clerk of the Bankruptcy Court will not provide this information by telephone.

> **THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE BANKRUPTCY COURT LATER CONFIRMS THE PLAN, THEN IT WILL BE BINDING ON THE DEBTOR AND ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.**

**1.        <u>Time and Place of Confirmation Hearing</u>**

A hearing at which the Bankruptcy Court will determine whether to confirm the Plan will take place at the United States Bankruptcy Court, located at Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, before the Honorable Mark E. Hall on _____, 2025, at __:__ __.m.

**2.        <u>Deadline for Voting For or Against the Plan</u>**

If you are entitled to vote, it is in your best interest that you timely vote on the enclosed ballot and return it to:

> A.Y. STRAUSS LLC
> 290 West Mount Pleasant Avenue, Suite 3260
> Livingston, New Jersey 07039
> Attention: Eric H. Horn, Esq.

Your ballot must be received by no later than ___ _, 2025, at 4:00 p.m. (prevailing Eastern time) or it will not be counted.  Facsimile, email or electronically transmitted ballots will not be accepted.

**3.      Deadline for Objecting to Confirmation of the Plan**

Any objections to Confirmation of the Plan must be filed with the Clerk of the Court, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, and served upon each of the following so that it is received by them no later than _____, 2025, at 4:00 p.m. (prevailing Eastern time):

> A.Y. Strauss LLC
> 290 W. Mount Pleasant Ave. Suite 3260
> Livingston, New Jersey 07039
> Attention: Eric H. Horn, Esq.
>
> *Counsel for the Debtor*
>
>
> Office of the United States Trustee
> One Newark Center, Suite 2100
> Newark, New Jersey 07102
> Attention: Rachel Wolf, Esq.
>
>
> Genova Burns LLC
> 494 Mayor Kenneth A. Gibson Blvd.
> Newark, New Jersey 07102
> Attention: Donald W. Clarke, Esq.
>
> *Counsel for the Post-Petition Lender*
>
>
> Lowenstein Sandler LLP
> One Lowenstein Drive
> Roseland, New Jersey 07068
>
> *Counsel to the Committee*

**4.      Person to Contact for More Information Regarding the Plan**

Any interested parties desiring further information about the Plan or if you received a damaged Ballot should contact Mary Tomasicchio-Johnston at A.Y. Strauss LLC, 973-200-5712, on any business day between 9:00 a.m. and 5:00 p.m., prevailing eastern time.

**C.      Disclaimer**

The financial data and information contained in this Disclosure Statement and upon which the Plan is based has been prepared by Debtor from various publicly filed or internal documents. The financial data and information have not been audited.

**PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.**

Except as described below, the Plan may be confirmed only if accepted by each Voting Class. The Bankruptcy Code defines "acceptance" as acceptance by Holders of (a) at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims that vote, and (b) at least two-thirds (2/3) in amount of Allowed Interests in each Class whose Holders cast ballots. Any Voting Class that fails to accept the Plan will be deemed to have rejected the Plan. Section 1129(b) of the Bankruptcy Code permits confirmation of the Plan notwithstanding rejection by one or more Classes if the Bankruptcy Court finds that the Plan does not discriminate unfairly and is "fair and equitable" with respect to the rejecting Class or Classes ("*Cramdown*"). For a more detailed description of the requirements for acceptance of the Plan and of the criteria for confirmation notwithstanding rejection by certain Classes see the portion of this Disclosure Statement entitled "Confirmation Procedure." The Debtor will seek to have the Plan confirmed over the rejection of any voting Class which does not accept the Plan, or which is deemed to have rejected the Plan.

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE METHOD FOR MAXIMIZING THE RECOVERY TO CREDITORS. THE DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF EACH AND EVERY CLASS OF CREDITORS. IT IS RECOMMENDED THAT YOU VOTE TO ACCEPT THE PLAN.**

**THIS DOCUMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE DEBTOR FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF ITS KNOWLEDGE, INFORMATION AND BELIEF. HOWEVER, NOTHING CONTAINED HEREIN SHALL BE DEEMED TO BE AN ADMISSION OR A DECLARATION AGAINST INTEREST BY THE DEBTOR FOR PURPOSES OF ANY EXISTING OR FUTURE LITIGATION. TO THE EXTENT THAT CERTAIN DOCUMENTS ARE SUMMARIZED WITHIN THE PLAN, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS. FURTHERMORE, CERTAIN OF THE FINANCIAL INFORMATION CONTAINED HEREIN HAS BEEN PREPARED WITHOUT AUDIT. EACH HOLDER OF A CLAIM SHOULD**

**REVIEW THE ENTIRE PLAN BEFORE CASTING A BALLOT.**

After carefully reviewing the Plan and Disclosure Statement, including all Exhibits, each Person holding a Claim in Class 3 should vote by completing the enclosed ballot (the "***Voting Ballot***") and returning the Voting Ballot in a timely fashion.

**TO BE COUNTED, YOUR BALLOT MUST BE COMPLETELY FILLED IN, SIGNED AND RECEIVED BY 4:00 P.M. PREVAILING EASTERN STANDARD TIME ON _____, 2025**

## ARTICLE I

## BACKGROUND

**A.      Description of Debtor's Business**

On March 7, 2002, Debtor was formed as a limited liability company in the State of New York. At the time of the Debtor's filing of its chapter 11 case, the Debtor was the largest United States retailer specializing in work apparel, footwear and healthcare apparel.  The Debtor's parent, Work 'N Gear, Inc. ("***WNG Inc.***"), is incorporated in Delaware and has its office in in Braintree, MA.

The Debtor currently operates twenty-six (26) brick and mortar retail stores located in eight (8) different states, primarily in the Northeastern and Midwestern United States; operates an online internet retail store; and operates a 14,000 square foot distribution facility in Avon, Massachusetts, which serves in-store and online customers.

The Debtor is a privately owned company, with 100% of its membership interests held by WNG Inc. WNG Inc. is wholly owned by its sole shareholder, Anthony DiPaolo ("***DiPaolo***"). DiPaolo also serves as Debtor's Chief Executive Officer. Debtor does not operate any subsidiary or affiliate companies.

The Debtor is a retail seller of workplace apparel and footwear, as well as healthcare scrubs and attire utilized by first responders and healthcare professionals. Debtor offers over two hundred fifty (250) different brands for sale, including their own private label brands, making Debtor a "one-stop shop" for all workwear apparel and footwear needs. Debtor's wide assortment of workwear, scrubs, footwear, and accessories provides consumers with an opportunity to purchase all their workwear needs in a single location, which is unique to the workplace apparel market and often serves as a one-stop destination for

6

its customers.

The locations at which Debtor operates its retail business are not owned by Debtor. Debtor leases these properties from various landlords to whom Debtor must pay monthly rent.  At the time of the Debtor's chapter 11 filing, the Debtor employed approximately 154 employees, consisting of 81 full-time employees and 73 part-time employees.

**B.      Pre-Petition Capital Structure**

At the time of the Debtor's chapter 11 filing, it had outstanding debt obligations in the amount of approximately $5,501,000.00.

The debt obligations included an approximately $1,273,294.35 secured loan held by Eastern Bank, under a Credit Agreement between, *inter alia*, the Debtor and Eastern Bank, dated as December 7, 2021 (the "***Original Credit Agreement***"), as amended by the First Amendment to Credit Agreement, dated April 9, 2025 (as amended, the "***Prepetition Credit Agreement***"). The Prepetition Credit Agreement was secured by a separate Security Agreement, dated as of December 7, 2021, under which Eastern Bank held a security interest in certain "Collateral," as defined therein.

At the time of the Debtor's chapter 11 filing, the Debtor's debt obligations further included approximately $3,921,000.00 in unsecured debt owed collectively to approximately 200 creditors. This sum includes unpaid unpaid rent and trade debt.

**C.      The Bankruptcy Filing**

On July 16, 2025, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States District Court for the District of New Jersey.

The Debtor was profitable for most of its operational history, and remained profitable in fiscal year 2023. However, beginning in 2024 and continuing through the Petition Date, the Debtor has faced significant operational and financial challenges. Specifically, Debtor has struggled with a variety of factors that have negatively impacted sales and profitability. These factors include increased turnover within Debtor's management team, supply chain and product availability challenges, increased competition in the healthcare apparel supply market, heightened inflation and an economic downturn

within Debtor's consumer submarket, and other national and local economic trends.

Moreover, the Debtor's operational and fiscal challenges were greatly exasperated and worsened by the conduct of Eastern Bank.  Indeed, under the Prepetition Credit Agreement, in determining the amount of credit available to Debtor, Secured Lender is permitted to impose reserve requirements ("**Reserves**"). These Reserves reduce the amount of credit available to Debtor on a dollar-for-dollar basis. At the outset of the Original Credit Agreement, Eastern Bank established a Reserve for gift cards (the "**Gift Card Reserve**"), which was supposedly intended to mitigate against the liability from Debtor's outstanding gift cards.  At all times prior to November 2024, the Gift Card Reserve was set at 50% of outstanding gift cards.  However, beginning in November 2024, Eastern Bank abruptly increased the Gift Card Reserve to 75% of outstanding gifts cards. This increase to the Gift Card Reserve was unreasonable and was not justified by any material change in Debtor's position or the consumer market, which Debtor closely tracks. Additionally, in November 2024, Eastern Bank imposed an entirely new Reserve, in the sum of $720.000.00, supposedly to mitigate against liability from Debtor's future rent obligations (the "**Rent Reserve**"). Eastern Bank's sudden imposition of a new, $720,000 Rent Reserve was unreasonable and was not justified by any material change in the Debtor's position or the consumer market.  Those arbitrary increases to the Reserves unnecessarily constrained Debtor's liquidity, hamstringing its business growth.

As a consequence of Eastern Bank's manufactured, unjustifiable conduct, a Covenant Trigger Event (as defined therein) occurred under the terms of the Prepetition Credit Agreement.

Under Section 5.3(a) of the Prepetition Credit Agreement:

> Upon the occurrence of a Covenant Trigger Event, the Fixed Charge Coverage Ratio shall be immediately tested as of the most recently ended fiscal quarter for which financial statements were required to be delivered…and for so long as a Covenant Trigger Period shall continuing, the Borrower will maintain a Fixed Charge Coverage Ratio measured quarterly on a trailing twelve (12) month basis at the end of each quarter of not less than 1.10 to 1.0.

Under Section 7.1 of the Prepetition Credit Agreement, which sets forth "Events of Defaults"

8

under the Prepetition Credit Agreement, Debtor's failure to comply with Section 5.3 of the Prepetition Credit Agreement constitutes an Event of Default.  Under Section 7.2 of the Prepetition Credit Agreement, which sets forth the remedies available upon an Event of Default, Eastern Bank is entitled, among its other remedies, to accelerate and declare immediately payable the entire debt owed by Debtor.

By Notice of Default and Reservation of Rights dated as of July 24, 2025, Eastern Bank advised the Debor that an Event of Default has occurred under the Prepetition Credit Agreement, based upon Debtor's alleged failure to maintain a Fixed Charge Coverage Ratio of not less than 1.10 to 1.0 following a Covenant Trigger Event. The notice further advised Debtor that, under the terms of the Prepetition Credit Agreement, as a consequence of the Event of Default, Eastern Bank had no further obligation to extend credit to Debtor.

By Notice of Acceleration delivered on or about July 9, 2025, Eastern Bank advised the Debor that it was accelerating the Debtor's indebtedness and declaring same immediately due and payable.  Faced with a loan default and the evaporation of its credit line, it became clear that the Debtor would have no choice but to file its Chapter 11 Case.

## SIGNIFICANT EVENTS DURING CHAPTER 11 CASE

This section of the Disclosure Statement describes important developments that occurred in the Debtor's Chapter 11 case.

**A.      Use of Cash Collateral**

On July 18, 2025, the Bankruptcy Court entered an order authorizing the Debtor use the cash collateral of Eastern Bank on an interim basis [Docket No. 125], and on August 28, 2025, the Bankruptcy Court entered an order authorizing the Debtor use the cash collateral of Eastern Bank on a final basis through October 31, 2025 [Docket No. 102] (the "***Final Cash Collateral Order***").  Pursuant to the Final Cash Collateral Order, the Debtor's use of cash collateral expired on October 31, 2025.

**B.      Post-Petition Secured Financing**

The Debtor commenced its search for a DIP financing facility prior to the Petition Date. As part

9

of that search, the Debtor spoke with twenty five (25) potential lenders, all of which determined not to loan monies to the Debtor.

The Debtor was able to locate a party willing to lend monies to the Debtor pursuant to the terms set forth in that certain Debtor in Possession Credit and Security Agreement dated as of October 1, 2025 by and among the Debtor, as borrower, and ABL OPCO LLC and/or one or more of its affiliates, as lender, (collectively, the "*DIP Lenders*"), and ABL OPCO LLC as administrative agent (in such capacity, the "*DIP Administrative Agent*") for and on behalf of itself and any other lenders party thereto (collectively with the DIP Administrative Agent, the DIP Lenders, the "*DIP Secured Parties*") (the "*DIP Loan Agreement*").

The Debtor required funds to purchase and replenish inventory and continue its business operations.  Since the Petition Date, the Debtor has been surviving on use of cash collateral. The funds available to the Debtor have proved insufficient to allow the Debtor to purchase / replenish the inventory necessary to operate as a successful business.

Under the DIP Loan Agreement, the Debtor was able to borrow up to $5 million based on availability under a revolving facility.

On October 7, 2025, the Bankruptcy Court entered an Interim Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§ 105(a), 362, 363 and 364(c) and (d); (II); Granting Liens and Superpriority Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic Stay; and (iv) Granting Related Relief [Docket No. 139] (the "*Interim DIP Order*").

On November 5, 2025, the Bankruptcy Court entered a Final Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§ 105(a), 362, 363 and 364(c) and (d); (II); Granting Liens and Superpriority Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic Stay; and (iv) Granting Related Relief [Docket No. 161] (the "*Final DIP Order*"  and together with the Interim DIP Order, the "*DIP Orders*").  Pursuant to the DIP Orders, the Debtor was authorized and empowered to, among other things, borrow up to $5 million and fully pay off Eastern Bank.

**C.        Retention of Professionals by the Debtor**

The Debtor retained A.Y. Strauss LLC as its counsel in connection with this Bankruptcy Case.  It also selected KCP Advisory Group, LLC as its financial advisor and CBIZ as its accountants.

**D.        Formation of Committee and Retention of Committee Professionals**

The Office of the United States Trustee formed an Official Committee of Unsecured Creditors (the "*Committee*") in this Chapter 11 Case by Notice dated August 12, 2025 [Docket No. 61], comprised of the following members: (i) Carhartt, Inc.; (ii) Warson Group, Inc.; (iii) VF Outdoor, LLC dba Timberland, Williamson-Dickie; (iv) Wolverine World Wide, Inc.; and (v) HH Brown Shoe Company, Inc.  The Committee has retained Lowenstein Sandler LLP as its counsel.

**E.        The Debtor's Schedules and the Bar Date**

The Debtor has filed its Schedules of Assets and Liabilities and Statement of Financial Affairs. *See* Docket Nos. 57, 58.

The Bar Date or last date for filing proofs of Claim was fixed as October 31, 2025, unless a different date was set for a particular Claim.  Pursuant to the Plan, objections to Claims can be made for a period of ninety (90) days after the Effective Date.  This deadline can be further extended by Order of the Bankruptcy Court upon the filing of a motion on notice to the Bankruptcy Rule 2002 service list.

**F.        Vendor Relations**

Since the Petition Date, the Debtor has attempted to maintain and improve its relationships with vendors (i) to ensure an uninterrupted supply of goods to their retail stores and (ii) to rebuild and maintain sufficient levels of trade credit.  These efforts were largely made informally through business contacts and have continued throughout the Chapter 11 case.

**G.        Plan Exclusivity**

Pursuant to § 1121 of the Bankruptcy Code, the Debtors are afforded periods of 120 and 180 days, respectively, from the Petition Date during which period they have the exclusive right to file, and solicit acceptances of, a plan or plans of reorganization.

**H.        Non-Residential Real Property Matters**

The Debtor currently operates its business at twenty-six (26) leased locations. One of the locations is a warehouse, one of the locations is an office, and the remainder are retail locations.  Since the

commencement of this Chapter 11 case, the Debtor has been negotiating with its landlords regarding rental concessions. To date, the Debtor has negotiated approximately $800,000 in rental concessions.

Pursuant to § 365(d)(4), the Debtor is afforded a period of 120 days from the Petition Date to either assume or reject their non-residential real property leases. By Order dated November 6, 2025, the Debtor's time to assume or reject non-residential real property leases has been extended until February 11, 2026. To date, the Debtor has filed a motion seeking to reject ten (10) locations.

## ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS

**A.    Summary of the Plan and Assets Available for Distribution to Creditors**

The Plan produces a distribution to the DIP Lender via exit financing which the Debtor continues to shop. The DIP Lender has a right of first refusal with regard to the provision of exit financing. With regard to the Debtor's unsecured Creditors, the Plan provides for a distribution via profits generated by the Reorganized Debtor post confirmation over the course of five (5) years.

Additionally, post-confirmation, the Debtor retains the right to sell equity or assets to satisfy the Class 3 Creditors.

Under the Plan, the Allowed Claims of the Debtor's Creditors will be paid as follows:

- DIP Claim to be paid in full upon the Effective Date.

- Unsecured Creditors will be paid in full, without interest, in five (5) annual installments, as follows: (i) ten percent (10%) ninety (90) days after the Effective Date; (ii) fifteen percent (15%) on the first anniversary of the Effective Date; (iii) twenty percent (20%) on the second anniversary of the Effective Date; (iv) thirty percent (30%) on the third anniversary of the Effective Date; and (v) twenty-five percent (25%) on the fourth anniversary of the Effective Date.

- Holders of the Debtor's Interests shall retain their interest in the Debtor; provided however, that twenty percent (20%) of the Interests shall be pledged to secure payment to Class 3.

**B.    General Provisions and Classifications**

The classification of Claims listed below is for all purposes, including without limitation, voting,

12

Confirmation and distributions under the Plan and under §§ 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that such Claim is allowed in that Class and has not been paid or otherwise settled before the Effective Date.

The classification of Claims pursuant to the Plan is as follows:

| CLASS | STATUS | VOTING RIGHTS | EST. AMT. |
|---|---|---|---|
| Class 1:  Priority Claims | Unimpaired | Not Entitled to Vote | $0.00 |
| Class 2:  DIP Secured Claim | Unimpaired | Not Entitled to Vote | ~$1,600,000 |
| Class 3  Unsecured Claims | Impaired | Entitled to Vote | ~$3,500,000 |
| Class 4:  Interests | Unimpaired | Not Entitled to Vote | N/A |

**C.     Unclassified Claims:  Administrative Claims and Priority Tax Claims**

**1.     Administrative Claims**

**a.     Non-Professional Fee Claims**

The Debtor (or Reorganized Debtor) shall pay each Holder of an Allowed Administrative Claim (except for a Professional Fee Claim and 20 Day Administrative Claim) the full amount of the Allowed Administrative Claim, without interest, in Cash, as soon as practicable after the Effective Date or within thirty (30) days after the Claim becomes an Allowed Claim, except that Allowed Administrative Claims representing obligations incurred in the ordinary course of business are to be paid in accordance with the terms of any agreement upon which such Allowed Administrative Claim is based.  Notwithstanding anything herein to the contrary, the Holders of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by that Holder of an Allowed Administrative Claim and the Debtor or Reorganized Debtor.  All Administrative Claims (except for Professional Fee Claims and 20 Day Administrative Claims) are required to be Filed by the Administrative Bar Date fixed in Section 10.19 of the Plan, or such Administrative Claim shall be forever barred and shall not be

enforceable against the Debtor, the Reorganized Debtor, their Estates and their successors, their assigns or their Assets.  Without limiting the foregoing, all outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930 that have not been paid shall be paid no later than thirty (30) days after the Effective Date or when due in the ordinary course.

The estimated amount of Non-Professional Fee Claims is $0.00.

### b.      Professional Fee Claims

The Debtor or the Reorganized Debtor shall pay Professionals who are entitled to reimbursement or allowance of fees and expenses from the Debtor's Estate pursuant to §§ 503(b)(2) through (b)(6) of the Bankruptcy Code, in Cash, in the amount awarded to such Professionals by Final Order of the Bankruptcy Court as soon as practicable after the Effective Date or the date upon which any order awarding fees and expenses becomes a Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Bankruptcy Case, and after application of any retainer received by the Professionals.

Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date must be Filed with the Bankruptcy Court and served on counsel for the Reorganized Debtor at the addresses listed in Section 10.10 of the Plan and the Office of the United States Trustee so that it is received no later than forty-five (45) days after the Effective Date, or such Professional Fee Claim shall be forever barred and shall  not be enforceable against the Debtor, the Reorganized Debtor, their Estates and their successors, their assigns or their Assets.

Fees and expenses incurred on or after the Effective Date by any Professionals of the Debtor and/or Reorganized Debtor shall be paid on a monthly basis by the Reorganized Debtor without the requirement to file fee applications.

The estimated amount of Professional Fee Claims is $1,350,000.  Allowed Professional Fee Claims must be paid in full prior to any payment to Class 3 Unsecured Claims.

### c.      20 Day Administrative Claims

The Debtor (or Reorganized Debtor) shall pay each Holder of an Allowed 20 Day Administrative

Claim the full amount of the Allowed 20 Day Administrative Claim, without interest, in Cash, as soon as practicable after the Effective Date or within thirty (30) days after the Claim becomes an Allowed Claim. Notwithstanding anything herein to the contrary, the Holders of an Allowed 20 Day Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by that Holder of an Allowed 20 Day Administrative Claim and the Debtor or Reorganized Debtor.

**2.      Priority Tax Claims**

The Reorganized Debtor shall pay Allowed Priority Tax Claims, over a period through the sixth anniversary of the date of assessment of such Allowed Priority Tax Claim, deferred Cash payments in an aggregate amount equal to such allowed Priority Tax Claim, together with interest thereon (if and so required) at the legal rate required for such claim in Chapter 11 case.  All Allowed Priority Tax Claims which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

The Holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with an Allowed Priority Tax Claim.  Any such Claim, or demand for any such penalty, will be deemed disallowed by Confirmation of the Plan.

The estimated amount of Priority Tax Claims is $0.00.  There are outstanding tax claims owing by the Debtor (which may be entitled to priority) relating to their real estate leases which will be satisfied as part of the Debtor's cure payments made in accordance with Article III(A) of this Plan.

**D.      Classes of Claims and Interests:  Classification, Treatment and Voting Rights**

Under the Plan, Holders of Claims and Interests are divided into Classes and treated as follows:

**1.      "Class 1" – Priority Claims -- *Unimpaired***

**a.      Classification**

Class 1 consists of all Allowed Priority Claims.

**b.      Treatment**

After paying any and all Allowed Administrative Claims and Priority Tax Claims, the Reorganized

Debtor shall pay Allowed Class 1 Claims, in their respective order of priority pursuant to § 507 of the Bankruptcy Code in full, in Cash, without interest, within thirty (30) days (i) after the Effective Date or (ii) when the Class 1 Claim is allowed by a Final Order.

### c.    Voting

Class 1 is an Unimpaired Class.  Holders of Class 1 Claims are conclusively deemed to accept the Plan pursuant to § 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

### 2.    "Class 2" – DIP Secured Claim -- Un*impaired*

### a.    Classification

Class 2 consists of the Allowed DIP Lender Claim.

### b.    Treatment

Allowed Class 2 Claims shall be paid in full, in Cash, with interest at the contract rate, legal fees and other expenses as permitted in accordance with the terms and provisions of the DIP Loan Documents. Until such time as the DIP Secured Claim is paid in full, the DIP Lender shall retain its liens and security interests in all collateral it has been granted under the DIP Loan Documents and Final DIP Order dated November 5, 2025.

### c.    Voting

Class 2 is an Unimpaired Class.  The Holder of the Class 2 Claim is conclusively deemed to accept the Plan pursuant to § 1126(f) of the Bankruptcy Code.  Therefore, the Holder of the Claim in Class 2 is not entitled to vote to accept or reject the Plan.

### 3.    "Class 3" – Unsecured Claims-- *Impaired*

### a.    Classification

Class 3 consists of all Allowed Unsecured Claims.

### b.    Treatment

Allowed Class 3 Unsecured Claims in the aggregate maximum amount of $3,500,000  shall be paid in full, without interest, in five (5) annual installments, as follows:  (i) ten percent (10%) ninety (90) days after the Effective Date; (ii) fifteen percent (15%) on the first anniversary of the Effective Date; (iii)

twenty percent (20%) on the second anniversary of the Effective Date; (iv) thirty percent (30%) on the third anniversary of the Effective Date; and (v) twenty-five percent (25%) on the fourth anniversary of the Effective Date.

### c.      Voting

Class 3 is Impaired.  The Holders of the Allowed Class 3 Unsecured Claims are entitled to vote to accept or reject the Plan.

### 4.      "Class 4" -- Interests – *Unimpaired*

#### a.      Classification

Class 4 consists of all Interest in the Debtor.

#### b.      Treatment

Class 4 Interests Holder shall retain its interests in the Debtor; provided however, if the Reorganized Debtor determines to sell its assets and / or equity post-confirmation, those Interests will be

#### c.      Voting

Class 4 is an Unimpaired Class.  Holders of Class 4 Interests are conclusively deemed to accept the Plan pursuant to § 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Interests in Class 4 are not entitled to vote to accept or reject the Plan.

## ARTICLE III

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption of Certain Contracts and Leases and Cure Payments.**

Fifteen (15) days prior to the Confirmation Hearing, the Debtor shall file a schedule of Executory Contracts to be assumed as of the Effective Date and the amount of cure payments, if any, to be paid by the Reorganized Debtor in accordance with § 365(b)(1) of the Bankruptcy Code (the "*Assumption Schedule*"), which shall be deemed Exhibit A to Plan. Objections to any proposed cure payment must be filed and served no later than four (4) days prior to the Confirmation Hearing (the "*Assumption Objection Deadline*") and shall be adjudicated, if necessary, at the Confirmation Hearing. Any non-debtor party or Person to an Executory Contract that has not filed an appropriate pleading with the

Bankruptcy Court on or before the applicable Assumption Objection Deadline shall be deemed to have waived its right to dispute the cure amount. All unpaid cure payments under any Executory Contracts that are assumed or assumed and assigned under this Plan shall be made by the Disbursing Agent as soon as practicable after the Effective Date but not later than thirty (30) days after the Effective Date, *provided, that*, in the event that there is a dispute regarding the amount of any cure payments, the Disbursing Agent shall make such cure payments as may be required by § 365(b)(1) of the Bankruptcy Code within ten (10) days following the entry of a Final Order resolving such dispute.

The Debtor reserves the right to remove any Executory Contract from the Assumption Schedule within five (5) days of the Confirmation Hearing.

**B.      Rejection of Remaining Executory Contracts and Unexpired Leases.**

On the Confirmation Date, except for (i) any Executory Contract that was previously assumed or rejected by an Order of the Bankruptcy Court pursuant to § 365 of the Bankruptcy Code and (ii) any Executory Contract identified on the Assumption Schedule, each Executory Contract entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, shall be deemed rejected pursuant to § 365 of the Bankruptcy Code, effective as of the Confirmation Date. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejection pursuant to § 365 of the Bankruptcy Code, as of the Confirmation Date.

**C.      Rejection Damages Bar Date.**

Except to the extent that another Bar Date applies pursuant to an Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under the Plan must be filed with the Clerk of the Bankruptcy Court, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, and a copy served on counsel for the Reorganized Debtor, within thirty (30) days from the entry of the Confirmation Order, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtor, the Reorganized Debtor, their Estates and their successors, their assigns or their Assets. Any Claims arising from the rejection of Executory Contracts shall be treated in Class 3.

## ARTICLE IV

## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

**A.      Resolution of Disputed Claims**

**1.        Prosecution of Objections to Claims**

An objection to the allowance of a Claim shall be in writing and shall be Filed with the Bankruptcy Court pursuant to Section B. 3 below.

Except as set forth herein, nothing in the Plan, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, Causes of Action, Avoidance Action, or other legal or equitable defense which the Debtors and its Estate had immediately prior to the commencement of its Bankruptcy Case against or with respect to any Claim. Except as set forth herein, upon Confirmation, the Debtor and/or the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, Avoidance Actions, rights of setoff and other legal or equitable defenses which any or all of the Debtor or its Estate had immediately prior to the commencement of its Bankruptcy Case as if the Bankruptcy Case had not been commenced.

**2.        Payments and Distributions on Disputed Claims**

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid in accordance with the terms of the Plan.

As to any Person who holds a Claim whereby only a portion of such Claim is disputed,  a distribution may be made on the non-disputed portion of such Claim at the Reorganized Debtor's discretion, although no payment or distribution will be made on the disputed portion of such Claim until such dispute is resolved by settlement or Final Order, except as otherwise provided for in Section B. 1 below.

Any Person who holds both (an) Allowed Claim(s) and (a) Disputed Claim(s) will receive the appropriate payment or distribution on the Allowed Claim(s), although no payment or distribution will be made on the Disputed Claim(s) until such dispute is resolved by settlement or Final Order, except as otherwise provided for in Section B. 1 below.

**B.**      **Allowance of Claims**

   **1.**      <u>**Disallowance of Claims**</u>

All Claims held by Persons against whom the Debtor, its Estate and/or the Reorganized Debtor has asserted or may assert a Claim, Avoidance Action, subordination, or Cause of Action under §§ 522(f), 522(h), 542, 543, 544, 547, 548, 549, 550, 551, 553 or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to § 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan or receive a distribution until such time as such Claims, Avoidance Action or Causes of Action against the Person have been settled or a Final Order entered and all sums due the Debtor by that Person are turned over to the Debtor or the Reorganized Debtor, as the case may be.  The Holders of any and all Claims Filed with the Bankruptcy Court after the Bar Date shall be disallowed and Holders of such Claims may not vote to accept or reject the Plan or be entitled to any distribution, unless otherwise Allowed by Final Order of the Bankruptcy Court.

   **2.**      <u>**Allowance of Claims**</u>

Except as expressly provided in the Plan, no Claims shall be deemed Allowed by virtue of the Plan, Confirmation or any order of the Bankruptcy Court, unless and until such Claim is deemed Allowed under the Bankruptcy Code, or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim.  Notwithstanding the foregoing, any Claim included in the Debtor's Schedules that is not listed as contingent, unliquidated, and/or disputed shall be an Allowed Claim in the amount scheduled.

   **3.**      <u>**Objections to Claims**</u>

Both the Debtor and the Reorganized Debtor shall have all proper legal standing and the right to commence and pursue objections to Claims.

All objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made by the later of (i) ninety (90) days after the Effective Date, unless this time period is extended by order of the Bankruptcy Court by the filing of a motion on notice solely to the Bankruptcy Rule 2002 service list, and the Reorganized Debtor expressly reserves the right to seek such extensions from the Bankruptcy Court, or (ii) ninety (90) days after a Proof of Claim or

20

request for payment with respect to such Claim is filed unless this time period is extended as provided for in subsection (i) above.  As stated in this paragraph, the Reorganized Debtor shall have the right to petition the Bankruptcy Court for an extension of the Claim Objection Deadline by motion and such an extension shall not be deemed a modification of the Plan.

### 4. Setoffs and Recoupment

The Debtor and/or the Reorganized Debtor (as the case may be) may, pursuant to §§ 553 and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any claim on which payments are to be made pursuant to the Plan, any Claims of any nature whatsoever the Debtor may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim shall constitute a waiver or release by the Debtor of any such setoff or recoupment the Debtor may have against such Claim.

### C. Controversy Concerning Impairment

If a controversy arises as to whether any Claims or any Class of Claims or Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy on or before the Confirmation Date.

### D. Claims Estimation For Voting Purposes

Pursuant to the Plan, the Debtor reserves the right to dispute any Claim amount listed on the Voting Ballot, and if necessary, seek estimation of such Claim amount, for voting purposes only, pursuant to Rule 3018(a) of the Bankruptcy Rules.

### ARTICLE V

### DISTRIBUTIONS

### A. Distributions

### 1. Disbursing Agent

The Plan Administrator shall be the Disbursing Agent and the Disbursing Agent shall make all distributions under the Plan.

### 2. Disbursing Agent Qualification

No Person other than the Plan Administrator shall be authorized by the Bankruptcy Court to serve

as Disbursing Agent unless and until the Reorganized Debtor consents in writing to that Person serving as Disbursing Agent and that Person (i) executes and files a statement with the Bankruptcy Court agreeing to perform all of the duties of the Disbursing Agent under the Plan, and (ii) consents to the jurisdiction of the Bankruptcy Court in respect to all matters relating to the performance of its duties as the Disbursing Agent under the Plan.

### 3.    Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Disbursing Agent in making distributions under the Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Disbursing Agent may withhold the entire distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Disbursing Agent the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Disbursing Agent to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Disbursing Agent the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification by the Disbursing Agent to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable or unclaimed distribution in accordance with the terms of the Plan.

### B.    Method of Distribution Under the Plan

### 1.    In General

Except as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court, distributions on account of Administrative Claims and Priority Tax Claims, and Claims in Classes 1, 2 and 3 shall be made by the Disbursing Agent.

### 2.    Manner of Payment

Any payment of Cash under the Plan may be made either by check drawn on a domestic bank, by wire transfer or by automated clearing house transfer ("**ACH**") from a domestic bank, at the option of

the Disbursing Agent.

### 3.   **Transmittal of Distributions to Parties Entitled Thereto**

All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  Any distributions by wire transfer or ACH shall be deemed made as of the date of the wire transfer by the Federal Reserve or other wire transfer is made.  Except as otherwise agreed with the Holder of an Allowed Claim in respect thereof or provided in the Plan, any property to be distributed on account of an Allowed Claim, shall be distributed by mail upon compliance by the Holder with provisions of the Plan to (i) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution, (ii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Claim to receive distributions, (iii) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

### 4.   **Distribution of Unclaimed Property**

Except as otherwise provided in the Plan, any distribution of property (Cash or otherwise) under the Plan which is unclaimed after three (3) months following any distribution date shall be forfeited, and such distribution, together with any interest earned thereon, shall return to and vest in the Reorganized Debtor free and clear of any claim by such Person. Nothing in the Plan shall be construed as requiring the Debtor, Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

### 5.   **Saturday, Sunday or Legal Holiday**

If any payment or act under the Plan is required to be made or performed on a Date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6.   **Reports**

Until a Final Decree is entered, Plan Administrator on behalf of the Reorganized Debtor shall submit quarterly reports to the United States Trustee as required by the United States Trustee guidelines setting forth all receipts and disbursements of the Reorganized Debtor.  The Reorganized Debtor shall be

responsible to request a Final Decree be entered in these Bankruptcy Case.

**C.      Fractional Cents and De Minimis Distributions**

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan.  Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).

Any distribution of less than $25.00 will be considered de minimis, and holders of Allowed Claims that are entitled to a final distribution of less than $25.00 will not receive any distribution.  Such funds shall remain with and vest in the Reorganized Debtor.

**D.      Corporate Action**

Upon the Effective Date, all matters provided under the Plan involving the Debtor shall be deemed to be authorized and approved without any requirement of further  action by the Debtor and its officers and/or members.

**ARTICLE VI**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.      Going Forward Operations**

The Debtor will fund distributions under the Plan over the course of five years from profits generated from the operation of the Debtor's business operations.  Indeed, under the Plan, Class 3 Claims in the aggregate maximum amount of $3,500,000 shall be paid in full, without interest, in five (5) annual installments, as follows:  (i) ten percent (10%) ninety (90) days after the Effective Date; (ii) fifteen percent (15%) on the first anniversary of the Effective Date; (iii) twenty percent (20%) on the second anniversary of the Effective Date; (iv) thirty percent (30%) on the third anniversary of the Effective Date; and (v) twenty-five percent (25%) on the fourth anniversary of the Effective Date.

The Debtor intends on satisfying its obligations to Class 3 via cash generated through its business operations.  Additionally, as set forth herein, the Debtor reserves the right to sell its assets and / or equity post-confirmation.

24

**B.** **Right to Sale Debtor's Assets or Equity**

**1.** **Marketing Debtor's Assets**

Since the Petition Date, the Debtor has considered various strategic alternatives in order to maximize the recovery to creditors in this case. For instance, the Debtor received various levels of interest from certain potential acquisition(s) of the Debtor's business. Those discussions continue and the Reorganized Debtor reserves the right to sell assets and / or equity post-confirmation.

**C.** **Funding of Plan**

The source of funds to achieve consummation of and carry out the Plan shall come from the going forward operations of the Reorganized Debtor, recoveries from Avoidance Actions, and / or the sale of equity or assets.

**D.** **Vesting of Assets**

Upon the occurrence of the Effective Date, title to the Assets shall vest in the Reorganized Debtor.

**E.** **Plan Administrator**

(i) Appointment. On the Effective Date, a Plan Administrator shall be appointed for the Debtor.[1] A copy of the proposed Plan Administrator Agreement is annexed hereto as **Exhibit C.**

(ii) Bonding Requirement. The Plan Administrator shall not be required to post a bond in order to serve as the Plan Administrator.

(iii) Authority. The Plan Administrator shall have the authority and right on behalf of the Debtor, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement the provisions of the Confirmed Plan, including, without limitation, to:

- except to the extent Claims have been previously Allowed, to control and

---

[1] Seven days prior to the Confirmation Hearing, the Debtor shall either include the name of the proposed Plan Administrator in a plan supplement or file a notice with the Court naming the proposed Plan Administrator.

effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtor;

- make Distributions to holders of Allowed Claims in accordance with the Plan;

- prosecute all Causes of Action on behalf of the Reorganized Debtor, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Reorganized Debtor;

- make regular monthly payments to existing professionals who will continue to perform in their current capacities subsequent to the Effective Date;

- retain professionals to assist in performing its duties under the Plan;

- incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

- administer the Debtor's tax obligations, pay statutory fees; and perform other duties and functions that are consistent with the implementation of the Plan.

## F.      Avoidance Actions

Except as otherwise provided in this Plan, title to any Avoidance Actions accruing to or assertable by the Debtor shall, on the Effective Date, be transferred to the Reorganized Debtor. From and after the Effective Date, the Plan Administrator shall have sole authority to litigate or settle any Avoidance Actions. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Avoidance Actions and approve of any such settlement (if required), whether commenced prior to or after Confirmation of the Plan.

26

### G.    Cancellation of Instruments and Agreements

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, or stock, or agreements evidencing, giving rise to, or governing any Claim or Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtor under such promissory notes, share certificates, instruments, indentures, or agreements shall be discharged.

## ARTICLE VII

## EFFECT OF CONFIRMATION

### A.    Authority to Effectuate Plan

Upon the Confirmation Order becoming a Final Order, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Debtor. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action necessary to achieve consummation and carry out the Plan and to effectuate the transactions provided for thereunder.

### B.    Binding Effect

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all Holders of Claims and Interests, whether or not such Holders voted to accept or reject the Plan. Except as expressly set forth herein, on and after the Confirmation Date, subject to the occurrence of the Effective Date, every Holder of a Claim or Interest shall be precluded and permanently enjoined from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, and their respective Assets and properties, any claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the Petition Date or between the Petition Date and the Effective Date, in connection with, related to, effecting, or arising out of the Debtor, the Debtor's operations, the bankruptcy filing, the Bankruptcy Case, the administration of the Plan, any sale or liquidation of the Debtor's Assets, or the property to be distributed under the Plan, except by reason of their gross negligence or willful misconduct, and in all respects, shall be entitled to rely upon the advice

27

of counsel with respect to their duties and responsibilities under the Plan.

## C.      Discharge

Except as otherwise provided in the Plan or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims of any nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any Assets or property shall have been distributed or retained pursuant to the Plan on account of such Claims, to the fullest extent permitted under the Bankruptcy Code.  Upon the Effective Date, the Debtor shall be deemed discharged and released under § 1141(d) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose on or before the Confirmation Date.  Further, upon the Effective Date all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code shall be terminated, extinguished and canceled.  The foregoing discharges and releases shall not apply to the mortgages and security interests of the DIP Lender until all amounts are paid in full under the DIP Loan Agreement.

## D.      Exculpation

**Except as otherwise specifically provided in this Plan, upon the Effective Date, none of the Debtor, the Committee, or any of their respective officers, directors, shareholders, members and/or employees, representatives, advisors, attorneys, financial advisors, agents, or affiliates, or any of their successors or assigns, shall have or incur, and are hereby released from, any Claim, obligation, Cause of Action or liability to one another or to any holder of a Claim or an Interest, or any other party in interest, for any act or omission in connection with, relating to, or arising out of, the Debtor's Chapter 11 case, the formation, negotiation, and pursuit of Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their gross negligence, willful misconduct or fraud, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities (if any) under this Plan. Further, the Debtor, the Committee and Professionals are granted the protections and benefits of § 1125(e) of the Bankruptcy Code.**

## E.      Injunctions

**Except as otherwise specifically provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims, rights, Causes of Action, liabilities or any Interests based upon**

**any act or omission, transaction or other activity of any kind or nature related to the Debtor or the Debtor's Chapter 11 Case that occurred prior to the Effective Date, other than as expressly provided in this Plan or the Confirmation Order, regardless of the Filing, lack of Filing, allowance or disallowance of such a Claim or Interest, and regardless of whether such Person has voted to accept or reject the Plan, and any successors, assigns or representatives of such Persons, shall be precluded and permanently enjoined on and after the Effective Date from (a) the commencement or continuation in any manner of any claim, action or other proceeding of any kind, and against any Person or entity, with respect to any Claim, Interest or any other right or claims against the Debtor, or any Assets of the Debtor which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or their successors and assigns with respect to any Claim, Interest or any other right or claim against the Debtor, or against any Assets of the Debtor which such Entities possessed or may possess prior to the Effective Date, and (c) the creation, perfection or enforcement of any encumbrance or Lien of any kind against the Debtor or its successors and assigns with respect to any Claim, Interest or any other right or claim against the Debtor or any Assets of the Debtor which it possessed or may possess prior to the Effective Date.**

**F.      Limitation of Liability**

**Except as expressly set forth in the Plan, following the Effective Date, none of the Debtor, the Reorganized Debtor, the Committee, or any of their respective members, officers, directors, employees, advisors, attorneys, professionals or agents, or any of their successors and assigns, shall have or incur any liability to any Holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Debtor's Chapter 11 Case, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or any contract, instrument, release or other agreement or document created in connection with this Plan, or the administration of the Plan or the property to be distributed under the Plan, except for fraud, gross negligence or willful misconduct.**

**G.      Committee**

Ninety (90) days after the Effective Date, the Committee and its Professionals shall be disbanded and no longer constituted to act.  Any Professional Fee Claim incurred by the Committee's Professionals for ninety (90) days after the Effective Date shall be paid upon submissions of invoices to the Reorganized Debtor.  Any dispute concerning these fees and expenses shall be adjudicated by the Bankruptcy Court.

**ARTICLE VIII**

**CONDITIONS PRECEDENT**

**A.      Condition Precedent to Effective Date**

The Effective Date is conditioned upon the Confirmation Order becoming a Final Order.

**ARTICLE IX**

**CONFIRMATION REQUIREMENTS AND PROCEDURE**

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the Confirmation of the Plan.  You are encouraged to supplement the summary with your own analysis, an evaluation of the Plan and Disclosure Statement in their entirety, and in consultation with your own advisors.  The Debtor believes that the Plan is viable and will meet all the requirements for Confirmation under Bankruptcy Code § 1129.

> **PERSONS CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS AND/OR TAX ADVISORS BECAUSE THE LAWS CONCERNING CONFIRMING A PLAN ARE COMPLEX.**

The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing objections and/or Claims.  The Debtor does not represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Bankruptcy Court can confirm the Plan.  Some of the requirements include that the Plan must be proposed in good faith, that the Creditors have accepted the Plan, that the Plan pays Creditors at least as much as they would receive in a Chapter 7 liquidation, and that the Plan is feasible.  These requirements are not the only requirements for confirmation.

**A.      Who May Vote or Object**

**1.      Who May Object to the Confirmation of the Plan**

Any party-in-interest, Creditor or Interest Holder may object to Confirmation of the Plan, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

30

2.        **Who May Vote to Accept or Reject the Plan**

A Creditor or Interest Holder has a right to vote for or against the Plan if that Creditor or Interest Holder has a Claim that is both (i) allowed or allowed for voting purposes, and (ii) classified in an Impaired Class that will receive some distribution or recovery under the Plan.

**B.        What Is An Allowed Class or Interest**

As noted above, a Creditor or Interest Holder must first have an Allowed Claim or Interest to have the right to vote.  Generally, any proof of Claim or Interest will be Allowed, unless a party-in-interest files an objection to the Claim or Interest.  When an objection is so filed, the Creditor or Interest Holder cannot vote unless the Bankruptcy Court, after notice and a hearing, either overrules the objection or allows the Claim or Interest for voting purposes.

A Creditor or Interest Holder may have an Allowed Claim or Interest even if a proof of Claim or Interest was not timely filed.  A Claim is deemed allowed if it is scheduled on the Debtor's Schedules and such Claim is <u>not</u> scheduled as disputed, contingent or unliquidated.

An Interest is deemed Allowed if it is scheduled and no party-in-interest has objected to the Interest.

**C.        What is an Impaired Claim or Interest**

As noted above, an Allowed Claim or Interest only has the right to vote if it is in a Class that is Impaired under the Plan.  A Class is Impaired if the Plan alters the legal, equitable  or contractual rights of the members of the Class.  For example, the Class comprised of Unsecured Claims is Impaired because the Plan will not pay members of this Class 100% (with interest) of what they are owed on the Effective Date.

In this Bankruptcy Case, Allowed Claims in Class 3 is Impaired.  However, only the Holders of Claims in Classes 3 and 4 are entitled to vote to accept or reject the Plan because Classes 5 and 6 shall not receive any dividend under the Plan, and therefore Classes 5 and 6 are deemed (pursuant to the Bankruptcy Code) to have rejected the Plan.  A party who disputes the Debtor's characterization of a Claim as being Impaired or unimpaired may file an objection to the Plan stating that its Claim has been incorrectly

31

characterized.

### 1.   Who is Not Entitled to Vote

The following four types of Claims are not entitled to vote:  (i) Claims that have been disallowed or are otherwise filed as contingent or unliquidated and have not been estimated for voting purposes; (ii) Claims in an unimpaired Class; (iii) Claims entitled to Priority pursuant to Bankruptcy Code §§ 507(a)(1), (a)(2) and (a)(8); and (iv) Claims in Classes that do not  receive or retain any value under the Plan.  Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan. Claims entitled to Priority pursuant to Bankruptcy Code §§ 507(a)(1), (a)(2), and (a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in Classes that did not receive or retain any value under the Plan do not vote because such Classes are deemed to have rejected the Plan.  Even if your Claim is of the type described above, you may still have the right to object to Confirmation of the Plan.

### 2.   Who Can Vote in More Than One Class

A Creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the Secured part of the Claim and another ballot for the Unsecured part of the Claim. The Debtor does not believe that any Creditor has a Claim in more than one Class.

### 3.   Votes Necessary to Confirm the Plan

If Impaired Classes exist, the Court cannot confirm the Plan unless (i) all  Impaired Classes have accepted the Plan or (ii) at least one Impaired Class has accepted the Plan without counting the votes of any Insiders within that Class, and with respect to clause (ii), the Plan is eligible to be confirmed by "cramdown" of the non-accepting classes, as discussed later herein.

### 4.   Votes Necessary for Class to Accept the Plan

A Class of Claims is considered to have accepted the Plan when more than one half in number and at least two-thirds in dollar amount of the Claims that have actually voted have voted in favor of accepting the Plan.  A Class of Interests is considered to have accepted the Plan when at least two-thirds in the amount of the Interest Holders of such Class that have actually voted have voted to accept the Plan.

5.      **Treatment of Non-Accepting Classes**

As noted above, even if some Impaired Classes do not accept the proposed Plan, the Court can nonetheless confirm the Plan if the non-accepting Classes are treated in the manner required by the Bankruptcy Code.  The process by which non-accepting Classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed-down" on non-accepting Classes of Claims or Interests if the Plan (i) meets all consensual requirements except the voting requirements of § 1129(a)(8) of the Bankruptcy Code, and (ii) if the Plan does not discriminate "unfairly" and is "fair and equitable" toward each creditor in an Impaired Class that has not voted to accept the Plan, as referred to in Bankruptcy Code § 1129(b) and the applicable case law.

6.      **Request for Confirmation Despite Non-Acceptance by an Impaired Class**

In the event an Impaired Class of Claims or Interests with the right to vote on the Plan ultimately votes to reject the Plan, the Debtor will request the Court to confirm the Plan by "cramdown."

D.      **Liquidation Analysis**

Another Confirmation requirement is the "best interests test" which requires a liquidation analysis. Under the best interests test, if a Claimant or Interest Holder is an Impaired Class and the Claimant or Interest Holder does not vote to accept the Plan, then that Claimant or Interest Holder must receive or retain under the Plan property of the value not less than the amount that such Holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, a debtor's assets are usually sold by a Chapter 7 Trustee. Secured Creditors are paid first from the sale proceeds from the property in which the Secured Creditor has a lien. Administrative and Priority Claims are paid next.  Unsecured Creditors are paid from any remaining proceeds from the liquidation of the assets.  Unsecured Creditors with the same priority share in proportion to the amount of their Allowed Claims.  Finally, Interest Holders receive the balance that remains after all Creditors are paid in full, if anything.

In order for the Bankruptcy Court to be able to confirm the Plan, the Court must find that all Creditors and Interest Holders who do not accept the Plan will receive as much  under the Plan as such Holders would receive under Chapter 7 liquidation.  The Debtor submits that this requirement is met here.

33

A copy of the liquidation analysis is annexed hereto as **Exhibit B**.

Under the Plan, the Debtor's Assets are to be distributed in accordance with the priority scheme as established by Congress in the Bankruptcy Code.  Thus, Unsecured Creditors will receive at least as much under the Plan as they would in a Chapter 7 liquidation because (a) among other things, there will be less administrative expenses, and (b) the proceeds of a liquidation sale under Chapter 7 could be less than the "going concern" sale contemplated in the Plan and the Asset Purchase Agreement.

**E.      Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means the confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor or any successor debtor under the Plan, unless such a liquidation or reorganization is proposed in the Plan.

The Plan Proponents believe that the Plan meets the requirements of the "feasibility Test" and of the "best interest test" by providing for sale of substantially all of the Debtor's Assets as a going concern and the distribution of Cash proceeds and proceeds of Excluded Assets in accordance with the Plan.

**F.      Confirmation Hearing**

The Bankruptcy Code requires the Bankruptcy Court to hold a hearing on confirmation of the Plan after the ballots have been cast.  The Confirmation Hearing has been scheduled for ____ __, 2025 at __:__.m., prevailing eastern time.   The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for  an announcement of the adjournment made at the Confirmation Hearing.  At the Confirmation Hearing, the Bankruptcy Court will (i) determine whether the Plan has been accepted by the requisite majority of Creditors in Class 4; (ii) hear and determine all objections to the Plan and to confirmation of the Plan; (iii) determine whether the Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith; and (iv) confirm or refuse to confirm the Plan.

**THE DEBTOR BELIEVE THAT THE PLAN DOES NOT DISCRIMINATE UNFAIRLY WITH RESPECT TO ANY CLASS, AND THAT IT IS FAIR AND EQUITABLE WITH RESPECT TO EACH IMPAIRED CLASS.   THEREFORE, THE DEBTOR RECOMMENDS THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.**

**G.      Objections to Confirmation**

Objections to confirmation must be in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim against or the Interest in the Debtor held by the objector.  Any such objection must be Filed with the Bankruptcy Court and served upon each of the following so that it is received by them on or before 4:00 p.m. prevailing eastern time on _____, 2025:

A.Y. Strauss LLC
290 W. Mount Pleasant Ave. Suite 3260
Livingston, New Jersey 07039
Attention:  Eric H. Horn, Esq.

*Counsel for the Debtor*

Office of the United States Trustee
One Newark Center, Suite 2100
Newark, New Jersey  07102
Attention:  Rachel Wolf, Esq.

Genova Burns LLC
494 Mayor Kenneth A. Gibson Blvd.
Newark, New Jersey 07102
Attention:  Donald W. Clarke, Esq.

*Counsel for the Post-Petition Lender*

Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068
Attention: Colleen M. Restel, Esq.

*Counsel to the Committee*

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

## ARTICLE X

### TITLE TO PROPERTY AND TAX CONSEQUENCES

**A.** **Vesting of Property**

Except as otherwise provided in the Plan or the Confirmation Order, upon the Effective Date, all Assets, not otherwise disposed of in the Plan, of the Debtor's Estate, wherever situated, shall vest in the Reorganized Debtor free and clear of all liens, security interests, Interests, and Claims of Creditors, except obligations pursuant to the Plan and Confirmation Order and the liens and security interests, if any, granted or maintained pursuant to the Plan or Confirmation Order.

**B.** **Tax Consequences of Confirmation**

Circular 230 Disclaimer: To ensure compliance with requirements imposed by the Internal Revenue Service (the "*IRS*"), we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter(s) addressed herein.

Confirmation may have federal income tax consequences for the Debtor and Holders of Claims or Interests. The Debtor has not obtained and do not intend to request a ruling from the IRS, nor have the Debtor obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by Confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder. Creditors and Holders of Interests are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain. Accordingly, each Holder of a Claim or Interest is strongly urged to consult with his or her own tax advisor regarding the federal, state and local tax consequences of the Plan.

1. **<u>Tax Consequences to the Debtor</u>**

The Debtor may not recognize income as a result of the discharge of debt pursuant to the Plan because § 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from the discharge of debt.  However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged.  Tax attributes are reduced in the following order:  (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; and (v) foreign tax credits.

2. **<u>Tax Consequences to Unsecured Creditors</u>**

An Unsecured Creditor that receives only Cash in satisfaction of its Claim may recognize gain or loss, with respect to the principal amount of the Claim, equal to the difference between (i) the Creditor's basis in the Claim (other than the portion of the Claim, if any, attributable to accrued interest), and (ii) the balance of the Cash received after any allocation to accrued interest.  The character of the gain or loss as capital gain or loss, or ordinary income or loss, will generally be determined by whether the Claim is a capital asset in the Creditor's hands. A Creditor will also recognize income or loss in respect of consideration received for accrued interest on the Claim.  The income or loss will generally be ordinary, regardless of whether the Creditor's Claim is a capital asset in its hands.

3. **<u>Disclaimer</u>**

Holders of Claims or Interests should not rely on this Disclosure Statement with respect to the tax consequences of the Plan.  They should consult with their own tax counsel or advisor.  The discussion of tax consequences in this Disclosure Statement is not intended to be a complete discussion or analysis.

**<u>RECOMMENDATION</u>**

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS PREFERABLE TO ANY OF THE ALTERNATIVES DESCRIBED ABOVE AND THAT THE PLAN IS DESIGNED TO PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE IN ANY OTHER FORM OF LIQUIDATION.  ANY OTHER ALTERNATIVE WOULD CAUSE SIGNIFICANT DELAY AND UNCERTAINTY, AS WELL AS ADDITIONAL ADMINISTRATIVE COSTS.**

**THUS, THE DEBTOR RECOMMENDS THAT YOU VOTE TO "ACCEPT" THE PLAN.**

## <u>SIGNATURE</u>

Dated:  November 12, 2025

                                **WORK 'N GEAR, LLC**

                                By:      */s/ Larry Nusbaum*
                                       Name:  Larry Nusbaum
                                       Title:  President

**Exhibit A to Disclosure Statement**

**[Plan]**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| *Caption in Compliance with D.N.J. LBR 9004-2* | |
| **A.Y. STRAUSS LLC**<br>Eric H. Horn, Esq.<br>David S. Salhanick, Esq.<br>290 West Mount Pleasant Avenue, Suite 3260<br>Livingston, New Jersey 07039<br>Tel. (973) 287-0966<br>Fax  (973) 533-0127<br><br>*Counsel to the Debtor and*<br>*Debtor-in-Possession* | |
| In re:<br><br>Work 'N Gear, LLC,<br><br>              Debtor. | Chapter 11<br><br>Case No. 25-17472 (MEH) |

## PLAN OF REORGANIZATION OF WORK 'N GEAR, LLC

### INTRODUCTION

Work 'N Gear, LLC, debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "***Debtor***"), proposes the following Plan of Reorganization (the "***Plan***") pursuant to the provisions of Chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***").

### ARTICLE I

### DEFINITIONS

Unless otherwise provided in this Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.  For the purposes of this Plan, the following terms (which appear in the Plan in capitalized forms) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context otherwise requires.

1.1.    **"20 Day Administrative Bar Date"** shall be the last date for Creditors to file Claims on account of goods sold to the Debtor within the twenty (20) days preceding the Petition Date pursuant to Bankruptcy Code § 503(b)(9).

1.2.    **"20 Day Administrative Claim"** shall mean those Claims arising pursuant to the Debtor's receipt of goods within the 20 days preceding the Petition Date pursuant to Bankruptcy Code § 503(b)(9).

1.3.    **"Administrative Claim"** shall mean, and be the collective reference to, all costs and expenses of administration of this Chapter 11 case with priority under Bankruptcy Code § 507(a), including, without limitation, costs and expenses allowed under Bankruptcy Code § 503(b), the actual and necessary costs and expenses of preserving the Estate of the Debtor, any Professional Fee Claim and any fees or charges assessed against the Estate of the Debtor under 28 U.S.C. § 1930.

1.4.    **"Allowed Claim"** shall mean a Claim (i) which has been scheduled by the Debtor pursuant to Bankruptcy Rule 1007 and (a) is not scheduled as disputed, contingent or unliquidated, and (b) as to which no Proof of Claim has been filed; (ii) as to which a timely Proof of Claim has been filed

as of the Bar Date and no objection thereto, or application to equitably subordinate or otherwise limit recovery, has been made; or (iii) has been allowed by a Final Order. An Allowed Claim shall not include interest on the amount of any Claim except with respect to an Allowed Secured Claim as permitted by § 506(b) of the Bankruptcy Code and as specifically provided in the Plan or by Final Order of the Bankruptcy Court. In accordance with § 502(d) of the Bankruptcy Code, a Claim held by any Person that is subject to any Causes of Action shall not be an Allowed Claim until such time as the avoidable transfer is returned, a Final Order has been entered that no avoidable transfer exists, or an agreement or settlement is reached.

1.5. **"Allowed [Class Designation] Claim"** shall mean an Allowed Claim in the specified Class.

1.6. **"Allowed Tax Claim"** shall mean that portion of an Allowed Claim which is entitled to priority under § 507(a)(8) of the Bankruptcy Code.

1.7. **"Allowed Unsecured Claim"** shall mean any Allowed Claim which is not an (i) Administrative Claim, (ii) Allowed Priority Claim, (iii) Allowed DIP Lender Claim, or (iv) Allowed Priority Tax Claim.

1.8. **"Assets"** shall mean all assets of the Debtor, of any nature whatsoever, including, without limitation, the property of the Estate pursuant to § 541 of the Bankruptcy Code, Cash, Causes of Action, rights, interests and property, real and personal, tangible and intangible, including Avoidance Actions.

1.9. **"Avoidance Action(s)"** shall mean all claims and causes of action arising under Chapter 5 of the Bankruptcy Code.

1.10. **"Bankruptcy Case"** shall mean the case commenced by the filing of the Debtor's Chapter 11 petition under the Bankruptcy Code.

1.11. **"Bankruptcy Code"** shall mean Title 11 of the United States Code, including 11

U.S.C. §§101-1532, together with all amendments, modifications and replacements as the same exist on any relevant date to the extent applicable to the Debtor's Bankruptcy Case.

1.12.   **"Bankruptcy Court"** shall mean the United States District Court for the District of New Jersey with jurisdiction over the Debtor's Bankruptcy Case and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the District of New Jersey, or any court having competent jurisdiction to enter the Confirmation Order.

1.13.   **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure effective in accordance with the provisions of 28 U.S.C. § 2075, as the same shall from time to time be amended.

1.14.   **"Bar Date"** shall mean October 31, 2025, and such other date(s) fixed by Order(s) of the Bankruptcy Court, by which all Persons asserting a Claim must have filed a Proof of Claim or are forever barred from asserting such Claim except for a governmental unit as this term is defined in § 101(27) of the Bankruptcy Code.  The bar date for a governmental unit shall mean January 12, 2026.

1.15.   **"Business Day"** shall mean a day (i) other than Saturday, Sunday, a legal holiday or other day on which commercial banks in the State of New Jersey are authorized or required by law to close and (ii) as defined in Bankruptcy Rule 9006(a).

1.16.   **"Cash"** shall mean cash equivalents in certified or immediately available funds, including but not limited to bank deposits, checks and similar items.

1.17.   **"Causes of Action"** shall mean all claims, causes of action, third-party claims, counterclaims and crossclaims (including, but not limited to any Causes of Action described in the Disclosure Statement) that may be pending on the Effective Date or instituted by the Reorganized Debtor (or Plan Administrator) after the Effective Date against any entity based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order, including Avoidance Actions.

1.18.   **"Claim Objection Deadline"** means the date that is ninety (90) days after the Effective Date, unless extended by order of the Bankruptcy Court.

1.19.   **"Claims"** shall mean any claim(s) against the Debtor as such term is defined in § 101(5) of the Bankruptcy Code including, without limitation, (a) any right to payment from the Debtor whether or not such right is reduced to a judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to a judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, arising before, on or after the Filing Date through the Effective Date.

1.20.   **"Class"** shall mean any group of Holders of Claims as specified in Article II of the Plan.

1.21.   **"Committee"** shall mean the Official Committee of Unsecured Creditors of the Debtor appointed by the United States Trustee in the Debtor's Bankruptcy Case.

1.22.   **"Confirmation Date"** shall mean the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.23.   **"Confirmation Hearing"** shall mean the hearing at which the Bankruptcy Court considers confirmation of the Plan.

1.24.   **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming the Plan, pursuant to § 1129 of the Bankruptcy Code, and approving the transactions contemplated herein.

1.25.   **"Creditor"** shall mean any person that is a Holder of a Claim against the Debtor that arose, or is deemed to have arisen, on or before the Petition Date with respect to the Debtor.

1.26.   **"Debtor"** shall mean Work 'N Gear, LLC.

1.27.   **"DIP Lenders"** shall mean ABL OPCO LLC and/or one or more of its affiliates, as lender.

1.28.   **"DIP Loan Agreement"** shall mean certain Debtor in Possession Credit and Security Agreement dated as of October 1, 2025 by and among the Debtor, as borrower, the DIP Lenders.

1.29.   **"DIP Secured Claim"** shall mean the Secured Claim of the DIP Lenders against the Debtor.

1.30.   **"Disbursing Agent"** shall be the Plan Administrator.

1.31.   "**Disclosure Statement**" shall mean the Disclosure Statement dated November 13, 2025 related to this Plan and exhibits thereto filed pursuant to Bankruptcy Code § 1125 and approved by the Bankruptcy Court.

1.32.   **"Disputed Claim"** shall mean a Claim against the Debtor to the extent that a Proof of Claim has been timely filed or deemed timely filed under applicable law; and, as to which an objection has been filed by the Debtor, the Reorganized Debtor, the Plan Administrator or by any other party-in-interest with requisite standing, and which objection, if timely filed, has not been withdrawn on or before any date fixed for filing such objections by the Plan or order of the Bankruptcy Court, and has not been denied by a Final Order, or a claim listed on the Debtor's Schedules as contingent, disputed or unliquidated.

1.33.   **"Effective Date"** shall mean the day after the Confirmation Order has become a Final Order.

1.34.   **"Estate"** shall mean the estates of the Debtor created by § 541 of the Bankruptcy Code.

1.35.   **"Executory Contract"** shall mean any executory contract or unexpired lease, subject to § 365 of the Bankruptcy Code, between the Debtor and any other Person.

1.36.   **"Filed"** shall mean filed with the Bankruptcy Court in the Debtor's Bankruptcy Case.

1.37.   **"Final Decree"** shall mean the decree contemplated under Bankruptcy Rule 3022.

1.38.   **"Final DIP Order"** means that certain Final Order (i) Authorizing Debtor in Possession Financing Pursuant to 11 U.S.C. §§ 105(a), 362, 363 and 364(c) and (d); (II); Granting Liens and

Superpriority Administrative Claims Pursuant to 11 U.S.C. § 364(c); (iii) Modifying the Automatic Stay; and (iv) Granting Related Relief dated as of November 5, 2025 [Docket No. 161].

1.39.   **"Final Order"** shall mean an order or judgment of the Bankruptcy Court as entered on the docket that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or seek reargument or rehearing has run or as to which any right to appeal, reargue, petition for certiorari or seek rehearing has been waived in writing or, if an appeal, reargument, petition for certiorari, or rehearing thereof has been denied, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired. Notwithstanding, and in lieu of the foregoing, insofar as the Confirmation Order confirming the Plan is concerned, Final Order means such order or judgment with respect to which no stay is in effect.

1.40.   **"Holder"** shall mean the owner or holder of any Claim or Interest.

1.41.   **"Impaired"** shall have the meaning set forth in § 1124 of the Bankruptcy Code.

1.42.   **"Insider"** shall have the meaning assigned to such term in § 101(31) of the Bankruptcy Code.

1.43.   **"Interests"** shall mean, with respect to the Debtor, any equity interest as defined in § 101(16) of the Bankruptcy Code. Interests shall also include, without limitation, all stock, partnership, membership interest, warrants, options, or other rights to purchase or acquire any membership interests in the Debtor.

1.44.   **"Lien"** shall mean any lien, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt, or litigation.

1.45.   **"Person"** shall mean any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint

venture, estate, trust, unincorporated organization, government or any political subdivision thereof or other entity.

1.46. **"Petition Date"** shall mean July 16, 2026, the date the Debtor filed its Bankruptcy Case.

1.47. **"Plan"** shall mean this Plan of Reorganization (as the same may be modified or amended by the Debtor in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan) and any exhibits hereto and any documents incorporated herein by reference.

1.48. **"Plan Administrator"** shall mean the party appointed to implement the Plan post-Effective Date.

1.49. **"Priority Claim"** shall mean all Claims that are entitled to priority pursuant to § 507 of the Bankruptcy Code and that are not Administrative Claims or Priority Tax Claims.

1.50. **"Priority Tax Claim"** shall mean a Claim of the kind specified in § 507(a)(8) of the Bankruptcy Code.

1.51. **"Professional"** shall mean a Person (a) employed by the Debtor and/or the Committee pursuant to a Final Order in accordance with §§ 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to §§ 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to § 503(b)(4) of the Bankruptcy Code by a Final Order.

1.52. **"Professional Fee Claim"** shall mean all fees and expenses claimed by Professionals retained by the Debtor and/or the Committee pursuant to a Final Order of the Bankruptcy Court under §§ 330 and 331 of the Bankruptcy Code and which remains unpaid as of the Effective Date.

1.53. **"Proof of Claim"** shall mean a proof of claim Filed in the Bankruptcy Case pursuant to § 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

1.54. **"Pro Rata"** shall mean proportionately so that the ratio of the amount of consideration

distributed on account of a particular Allowed Claim to the amount of such Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of a Class or Classes that share in the consideration being distributed at the time to the amount of all Allowed Claims of that Class or those Classes that share in the consideration being distributed at that time.

1.55. **"Reorganized Debtor"** shall mean the Debtor as reorganized on or after the Effective Date pursuant to this Plan.

1.56. **"Schedules"** shall mean the Statement of Financial Affairs and Schedules of Assets and Liabilities Filed by the Debtor with the Bankruptcy Court under Bankruptcy Rule 1007, and such Schedules as have been or may be amended or supplemented from time to time.

1.57. **"Secured Claims"** shall mean, pursuant to § 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, Lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtor in and to property of the Estate, to the extent of the value of the Holder's interest in such property as of the relevant determination date; or (b) Allowed as such pursuant to the terms of the Plan (subject to the Confirmation Order becoming a Final Order).

1.58. **"Unclassified Claim(s)"** shall mean Administrative Claims and Priority Tax Claims.

1.59. **"Unsecured Claim"** shall mean any claim which is not an Administrative Claim, the DIP Secured Claim, Priority Claim or a Priority Tax Claim.

## ARTICLE II

## <u>CLASSIFICATION AND TREATMENT OF CLAIMS</u>

A.    **General Provisions and Classifications**

The classification of Claims listed below is for all purposes, including without limitation, voting, Confirmation and distributions under the Plan and under §§ 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a

different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that such Claim is allowed in that Class and has not been paid or otherwise settled before the Effective Date.

The classification of Claims pursuant to the Plan is as follows:

| **CLASS** | **STATUS** | **VOTING RIGHTS** |
|---|---|---|
| Class 1:  Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 2:  DIP Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3:  Unsecured Claims | Impaired | Entitled to Vote |
| Class 4:  Interests | Unimpaired | Not Entitled to Vote |

**B.** **Unclassified Claims:  Administrative Claims and Priority Tax Claims**

**1.** **Administrative Claims**

**a.** **Non-Professional Fee Claims**

The Debtor (or Reorganized Debtor) shall pay each Holder of an Allowed Administrative Claim (except for a Professional Fee Claim and 20 Day Administrative Claim) the full amount of the Allowed Administrative Claim, without interest, in Cash, as soon as practicable after the Effective Date or within thirty (30) days after the Claim becomes an Allowed Claim, except that Allowed Administrative Claims representing obligations incurred in the ordinary course of business are to be paid in accordance with the terms of any agreement upon which such Allowed Administrative Claim is based.  Notwithstanding anything herein to the contrary, the Holders of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by that Holder of an Allowed Administrative Claim and the Debtor or Reorganized Debtor.  **All Administrative Claims (except for Professional Fee Claims and 20 Day Administrative Claims) are required to be Filed by the Administrative Bar Date fixed in Section 10.19 of the Plan, or such Administrative Claim shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, their Estates and their successors, their assigns or their Assets**.  Without limiting the foregoing, all outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930 that have not been paid shall be paid no later than thirty (30) days after the Effective Date or when due in the ordinary course.

**b.** **Professional Fee Claims**

The Debtor or the Reorganized Debtor shall pay Professionals who are entitled to reimbursement or allowance of fees and expenses from the Debtor's Estate pursuant to §§ 503(b)(2) through (b)(6) of the Bankruptcy Code, in Cash, in the amount awarded to such Professionals by Final Order of the Bankruptcy Court as soon as practicable after the Effective Date or the date upon which any order awarding fees and expenses becomes a Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Bankruptcy Case, and after application of any retainer received by the Professionals.

Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date must be Filed with the Bankruptcy Court and served on counsel for the Reorganized Debtor at the addresses listed in Section 10.10 of the Plan and the Office of the United States Trustee so that it is received no later than forty-five (45) days after the Effective Date, or such Professional Fee Claim shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, their Estates and their successors, their assigns or their Assets.

Fees and expenses incurred on or after the Effective Date by any Professionals of the Debtor and/or Reorganized Debtor shall be paid on a monthly basis by the Reorganized Debtor without the requirement to file fee applications.

Allowed Professional Fee Claims must be paid in full prior to any payment to Class 3 Unsecured Claims.

c. **20 Day Administrative Claims**

The Debtor (or Reorganized Debtor) shall pay each Holder of an Allowed 20 Day Administrative Claim the full amount of the Allowed 20 Day Administrative Claim, without interest, in Cash, as soon as practicable after the Effective Date or within thirty (30) days after the Claim becomes an Allowed Claim. Notwithstanding anything herein to the contrary, the Holders of an Allowed 20 Day Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by that Holder of an Allowed 20 Day Administrative Claim and the Debtor or Reorganized Debtor.

2. **Priority Tax Claims**

The Reorganized Debtor shall pay Allowed Priority Tax Claims, over a period through the sixth anniversary of the date of assessment of such Allowed Priority Tax Claim, deferred Cash payments in an aggregate amount equal to such allowed Priority Tax Claim, together with interest thereon (if and so required) at the legal rate required for such claim in Chapter 11 case.  All Allowed Priority Tax Claims which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

The Holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with an Allowed Priority Tax Claim. Any such Claim, or demand for any such penalty, will be deemed disallowed by Confirmation of the Plan.

**C.      Classes of Claims and Interests:  Classification, Treatment and Voting Rights**

Holders of Claims and Interests are divided into Classes and treated as follows:

   1.      **"Class 1" – Priority Claims -- _Unimpaired_**

      a.      **Classification**

Class 1 consists of all Allowed Priority Claims.

      b.      **Treatment**

After paying any and all Allowed Administrative Claims and Priority Tax Claims, the Reorganized Debtor shall pay Allowed Class 1 Claims, in their respective order of priority pursuant to § 507 of the Bankruptcy Code in full, in Cash, without interest, within thirty (30) days (i) after the Effective Date or (ii) when the Class 1 Claim is allowed by a Final Order.

      c.      **Voting**

Class 1 is an Unimpaired Class. Holders of Class 1 Claims are conclusively deemed to accept the Plan pursuant to § 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

   2.      **"Class 2" – DIP Secured Claim -- _Unimpaired_**

      a.      **Classification**

Class 2 consists of the Allowed Secured Claim of the DIP Lenders.

**b.** **Treatment**

Allowed Class 2 Claims shall be paid in full, in Cash, with interest at the contract rate, legal fees and other expenses as permitted in accordance with the terms and provisions of the DIP Loan Agreement. Until such time as the DIP Secured Claim is paid in full, the DIP Lenders shall retain their liens and security interests in all collateral it has been granted under the DIP Loan Agreement and Final DIP Order.

**c.** **Voting**

Class 2 is an Unimpaired Class. The Holder of the Class 2 Claim is conclusively deemed to accept the Plan pursuant to § 1126(f) of the Bankruptcy Code. Therefore, the Holder of the Claim in Class 2 is not entitled to vote to accept or reject the Plan.

**3.** **"Class 3" – Unsecured Claims-- _Impaired_**

**a.** **Classification**

Class 3 consists of all Allowed Unsecured Claims.

**b.** **Treatment**

Allowed Class 3 Unsecured Claims in the aggregate maximum amount of $3,500,000  shall be paid in full, without interest, in five (5) annual installments, as follows:  (i) ten percent (10%) ninety (90) days after the Effective Date; (ii) fifteen percent (15%) on the first anniversary of the Effective Date; (iii) twenty percent (20%) on the second anniversary of the Effective Date; (iv) thirty percent (30%) on the third anniversary of the Effective Date; and (v) twenty-five percent (25%) on the fourth anniversary of the Effective Date.

**c.** **Voting**

Class 3 is Impaired. The Holders of the Allowed Class 3 Unsecured Claims are entitled to vote to accept or reject the Plan.

**4.** **"Class 4" – Interests -- _Unimpaired_**

**a.** **Classification**

Class 4 consists of all Interests in the Debtor.

**b.** **Treatment**

Class 4 Interest Holders shall retain their interests in the Debtor.

  **c.**  **Voting**

Class 4 is an Unimpaired Class.  Holders of Class 4 Interests are conclusively deemed to accept the Plan pursuant to § 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Interests in Class 4 are not entitled to vote to accept or reject the Plan.

**ARTICLE III**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.**  **Assumption of Certain Contracts and Leases and Cure Payments.**

Fifteen (15) days prior to the Confirmation Hearing, the Debtor shall file a schedule of Executory Contracts to be assumed as of the Effective Date and the amount of cure payments, if any, to be paid by the Reorganized Debtor in accordance with § 365(b)(1) of the Bankruptcy Code (the "***Assumption Schedule"),*** which shall be deemed **Exhibit A** to the Plan. Objections to any proposed cure payment must be filed and served no later than four (4) days prior to the Confirmation Hearing (the "***Assumption Objection Deadline***") and shall be adjudicated, if necessary, at the Confirmation Hearing. Any non-debtor party or Person to an Executory Contract that has not filed an appropriate pleading with the Bankruptcy Court on or before the applicable Assumption Objection Deadline shall be deemed to have waived its right to dispute the cure amount. All unpaid cure payments under any Executory Contracts that are assumed or assumed and assigned under this Plan shall be made by the Disbursing Agent as soon as practicable after the Effective Date but not later than thirty (30) days after the Effective Date, *provided, that*, in the event that there is a dispute regarding the amount of any cure payments, the Disbursing Agent shall make such cure payments as may be required by § 365(b)(1) of the Bankruptcy Code within ten (10) days following the entry of a Final Order resolving such dispute.

The Debtor reserves the right to remove any Executory Contract from the Assumption Schedule within five (5) days of the Confirmation Hearing.

**B.**  **Rejection of Remaining Executory Contracts and Unexpired Leases.**

On the Confirmation Date, except for (i) any Executory Contract that was previously assumed or rejected by an Order of the Bankruptcy Court pursuant to § 365 of the Bankruptcy Code and (ii) any Executory Contract identified on the Assumption Schedule, each Executory Contract entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms,

shall be deemed rejected pursuant to § 365 of the Bankruptcy Code, effective as of the Confirmation Date. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejection pursuant to § 365 of the Bankruptcy Code, as of the Confirmation Date.

**C.      Rejection Damages Bar Date.**

Except to the extent that another Bar Date applies pursuant to an Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under the Plan must be filed with the Clerk of the Bankruptcy Court, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, and a copy served on counsel for the Reorganized Debtor, within thirty (30) days from the entry of the Confirmation Order, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtor, the Reorganized Debtor, their Estates and their successors, their assigns or their Assets. Any Claims arising from the rejection of Executory Contracts shall be treated in Class 3.

**ARTICLE IV**

**<u>PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS</u>**

**A.      Resolution of Disputed Claims**

**1.      <u>Prosecution of Objections to Claims</u>**

An objection to the allowance of a Claim shall be in writing and shall be Filed with the Bankruptcy Court pursuant to Section B. 3 below.

Except as set forth herein, nothing in the Plan, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, Causes of Action, Avoidance Action, or other legal or equitable defense which the Debtor and its Estate had immediately prior to the commencement of their Bankruptcy Case against or with respect to any Claim. Except as set forth herein, upon Confirmation, the Debtor and/or the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, Avoidance Actions, rights of setoff and other legal or equitable defenses which the Debtor or its Estate had immediately prior to the commencement of its Bankruptcy Case as if the Bankruptcy Case had not been commenced.

**2.      <u>Payments and Distributions on Disputed Claims</u>**

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be

paid in accordance with the terms of the Plan.

As to any Person who holds a Claim whereby only a portion of such Claim is disputed, a distribution may be made on the non-disputed portion of such Claim at the Reorganized Debtor's discretion, although no payment or distribution will be made on the disputed portion of such Claim until such dispute is resolved by settlement or Final Order, except as otherwise provided for in Section B. 1 below.

Any Person who holds both (an) Allowed Claim(s) and (a) Disputed Claim(s) will receive the appropriate payment or distribution on the Allowed Claim(s), although no payment or distribution will be made on the Disputed Claim(s) until such dispute is resolved by settlement or Final Order, except as otherwise provided for in Section B. 1 below.

**B.**      **Allowance of Claims**

   **1.**      **Disallowance of Claims**

All Claims held by Persons against whom the Debtor, its Estate and/or the Reorganized Debtor has asserted or may assert a Claim, Avoidance Action, subordination, or Cause of Action under §§ 522(f), 522(h), 542, 543, 544, 547, 548, 549, 550, 551, 553 or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to § 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan or receive a distribution until such time as such Claims, Avoidance Action or Causes of Action against the Person have been settled or a Final Order entered and all sums due the Debtor by that Person are turned over to the Debtor or the Reorganized Debtor, as the case may be. The Holders of any and all Claims Filed with the Bankruptcy Court after the Bar Date shall be disallowed and Holders of such Claims may not vote to accept or reject the Plan or be entitled to any distribution, unless otherwise Allowed by Final Order of the Bankruptcy Court.

   **2.**      **Allowance of Claims**

Except as expressly provided in the Plan, no Claims shall be deemed Allowed by virtue of the Plan, Confirmation or any order of the Bankruptcy Court, unless and until such Claim is deemed Allowed under the Bankruptcy Code, or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim. Notwithstanding the foregoing, any Claim included in the Debtor's

Schedules that is not listed as contingent, unliquidated, and/or disputed shall be an Allowed Claim in the amount scheduled.

### 3. Objections to Claims

Both the Debtor and the Reorganized Debtor shall have all proper legal standing and the right to commence and pursue objections to Claims.

All objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made by the later of (i) ninety (90) days after the Effective Date, unless this time period is extended by order of the Bankruptcy Court by the filing of a motion on notice solely to the Bankruptcy Rule 2002 service list, and the Reorganized Debtor expressly reserves the right to seek such extensions from the Bankruptcy Court, or (ii) ninety (90) days after a Proof of Claim or request for payment with respect to such Claim is filed unless this time period is extended as provided for in subsection (i) above. As stated in this paragraph, the Reorganized Debtor shall have the right to petition the Bankruptcy Court for an extension of the Claim Objection Deadline by motion and such an extension shall not be deemed a modification of the Plan.

### 4. Setoffs and Recoupment

The Debtor and/or the Reorganized Debtor (as the case may be) may, pursuant to §§ 553 and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Claims of any nature whatsoever the Debtor may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim shall constitute a waiver or release by the Debtor of any such setoff or recoupment the Debtor may have against such Claim.

### C. Controversy Concerning Impairment

If a controversy arises as to whether any Claims or any Class of Claims or Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy on or before the Confirmation Date.

### D. Claims Estimation For Voting Purposes

The Debtor reserves the right to dispute any Claim amount listed on the Voting Ballot, and if

necessary, seek estimation of such Claim amount, for voting purposes only, pursuant to Rule 3018(a) of the Bankruptcy Rules.

**ARTICLE V**

**<u>DISTRIBUTIONS</u>**

**A.**     **Distributions**

     **1.**     **<u>Disbursing Agent</u>**

The Plan Administrator shall be the Disbursing Agent and the Disbursing Agent shall make all distributions under the Plan.

     **2.**     **<u>Disbursing Agent Qualification</u>**

No Person other than the Plan Administrator shall be authorized by the Bankruptcy Court to serve as Disbursing Agent unless and until the Reorganized Debtor consents in writing to that Person serving as Disbursing Agent and that Person (i) executes and files a statement with the Bankruptcy Court agreeing to perform all of the duties of the Disbursing Agent under the Plan, and (ii) consents to the jurisdiction of the Bankruptcy Court in respect to all matters relating to the performance of its duties as the Disbursing Agent under the Plan.

No Person other than the Plan Administrator shall be authorized by the Bankruptcy Court to serve as Disbursing Agent unless and until the Reorganized Debtor consents in writing to that Person serving as Disbursing Agent and that Person (i) executes and files a statement with the Bankruptcy Court agreeing to perform all of the duties of the Disbursing Agent under the Plan, and (ii) consents to the jurisdiction of the Bankruptcy Court in respect to all matters relating to the performance of its duties as the Disbursing Agent under the Plan.

     **3.**     **<u>Compliance with Tax Requirements</u>**

In connection with the Plan, to the extent applicable, the Disbursing Agent in making distributions under the Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Disbursing Agent may withhold the entire distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Disbursing Agent the

necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Disbursing Agent to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Disbursing Agent the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification by the Disbursing Agent to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable or unclaimed distribution in accordance with the terms of the Plan.

**B.      Method of Distribution Under the Plan**

**1.      In General**

Except as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court, distributions on account of Administrative Claims and Priority Tax Claims, and Claims in Classes 1, 2 and 3 shall be made by the Disbursing Agent.

**2.      Manner of Payment**

Any payment of Cash under the Plan may be made either by check drawn on a domestic bank, by wire transfer or by automated clearing house transfer ("**ACH**") from a domestic bank, at the option of the Disbursing Agent.

**3.      Transmittal of Distributions to Parties Entitled Thereto**

All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. Any distributions by wire transfer or ACH shall be deemed made as of the date of the wire transfer by the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim in respect thereof or provided in the Plan, any property to be distributed on account of an Allowed Claim, shall be distributed by mail upon compliance by the Holder with provisions of the Plan to (i) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution, (ii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Claim to receive distributions, (iii) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (iv) if no such mailing address has been filed, the mailing address reflected

on the Schedules or in the Debtor's books and records.

### 4. Distribution of Unclaimed Property

Except as otherwise provided in the Plan, any distribution of property (Cash or otherwise) under the Plan which is unclaimed after three (3) months following any distribution date shall be forfeited, and such distribution, together with any interest earned thereon, shall return to and vest in the Reorganized Debtor free and clear of any claim by such Person. Nothing in the Plan shall be construed as requiring the Debtor, Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

### 5. Saturday, Sunday or Legal Holiday

If any payment or act under the Plan is required to be made or performed on a Date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6. Reports

Until a Final Decree is entered, Plan Administrator on behalf of the Reorganized Debtor shall submit quarterly reports to the United States Trustee as required by the United States Trustee guidelines setting forth all receipts and disbursements of the Reorganized Debtor. The Reorganized Debtor shall be responsible to request a Final Decree be entered in this Bankruptcy Case.

### C. Fractional Cents and De Minimis Distributions

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).

Any distribution of less than $25.00 will be considered de minimis, and holders of Allowed Claims that are entitled to a final distribution of less than $25.00 will not receive any distribution. Such funds shall remain with and vest in the Reorganized Debtor.

### D. Corporate Action

Upon the Effective Date, all matters provided under the Plan involving the Debtor shall be deemed to be authorized and approved without any requirement of further action by the Debtor and its respective officers and its members.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.      Going Forward Operations**

The Debtor will fund distributions under the Plan over the course of five years from profits generated from the operation of the Debtor's business operations.  Indeed, under the Plan, Class 3 Claims in the aggregate maximum amount of $3,500,000 shall be paid in full, without interest, in five (5) annual installments, as follows:  (i) ten percent (10%) ninety (90) days after the Effective Date; (ii) fifteen percent (15%) on the first anniversary of the Effective Date; (iii) twenty percent (20%) on the second anniversary of the Effective Date; (iv) thirty percent (30%) on the third anniversary of the Effective Date; and (v) twenty-five percent (25%) on the fourth anniversary of the Effective Date.

The Debtor intends on satisfying its obligations to Class 3 via cash generated through its business operations post-confirmation.  Additionally, as set forth herein, the Debtor reserves the right to sell its assets and / or equity post-confirmation.

**B.      Right to Sale Debtor's Assets or Equity**

**1.      Marketing Debtor's Assets**

Since the Petition Date, the Debtor has considered various strategic alternatives in order to maximize the recovery to creditors in this case. For instance, the Debtor received various levels of interest from certain potential acquisition(s) of the Debtor's business. Those discussions continue and the Reorganized Debtor reserves the right to sell assets and / or equity post-confirmation.

**C.      Funding of Plan**

The source of funds to achieve consummation of and carry out the Plan shall  come from the going forward operations of the Reorganized Debtor, recoveries from Avoidance Actions, and / or the sale of equity or assets.

**D.      Vesting of Assets**

Upon the occurrence of the Effective Date, title to the Assets shall vest in the Reorganized

Debtor.

**E.      Plan Administrator**

(i)      <u>Appointment</u>. On the Effective Date, a Plan Administrator shall be appointed for the

Debtor.[1]  A copy of the proposed Plan Administrator Agreement is annexed hereto as

**Exhibit C.**

(ii)      <u>Bonding Requirement</u>.  The Plan Administrator shall not be required to post a bond in

order to serve as the Plan Administrator.

(iii)      <u>Authority</u>. The Plan Administrator shall have the authority and right on behalf of the

Debtor, without the need for Bankruptcy Court approval (unless otherwise indicated), to

carry out and implement the provisions of the Confirmed Plan, including, without

limitation, to:

- except to the extent Claims have been previously Allowed, to control and

  effectuate the Claims reconciliation process, including to object to, seek to

  subordinate, compromise or settle any and all Claims against the Debtor;

- make Distributions to holders of Allowed Claims in accordance with the

  Plan;

- prosecute all Causes of Action on behalf of the Reorganized Debtor, elect

  not to pursue any Causes of Action, and determine whether and when to

  compromise, settle, abandon, dismiss, or otherwise dispose of any such

  Causes of Action, as the Plan Administrator may determine is in the best

  interests of the Reorganized Debtor;

---

[1] Seven days prior to the Confirmation Hearing, the Debtor shall either include the name of the proposed Plan Administrator in a plan supplement or file a notice with the Court naming the proposed Plan Administrator.

- make regular monthly payments to existing professionals who will continue to perform in their current capacities subsequent to the Effective Date;

- retain professionals to assist in performing its duties under the Plan;

- incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

- administer the Debtor's tax obligations, pay statutory fees; and perform other duties and functions that are consistent with the implementation of the Plan.

**F.      Avoidance Actions**

Except as otherwise provided in this Plan, title to any Avoidance Actions accruing to or assertable by the Debtor shall, on the Effective Date, be transferred to the Reorganized Debtor. From and after the Effective Date, the Plan Administrator shall have sole authority to litigate or settle any Avoidance Actions. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Avoidance Actions and approve of any such settlement (if required), whether commenced prior to or after Confirmation of the Plan.

**G.      Cancellation of Instruments and Agreements**

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, or stock, or agreements evidencing, giving rise to, or governing any Claim or Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtor under such promissory notes, share certificates, instruments, indentures, or agreements shall be discharged.

**ARTICLE VII**

**EFFECT OF CONFIRMATION**

A.      **Authority to Effectuate Plan**

Upon the Confirmation Order becoming a Final Order, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Debtor.  The Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action necessary to achieve consummation and carry out the Plan and to effectuate the transactions provided for thereunder.

B.      **Binding Effect**

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all Holders of Claims and Interests, whether or not such Holders voted to accept or reject the Plan.  Except as expressly set forth herein, on and after the Confirmation Date, subject to the occurrence of the Effective Date, every Holder of a Claim or Interest shall be precluded and permanently enjoined from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, and their respective Assets and properties, any claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the Petition Date or between the Petition Date and the Effective Date, in connection with, related to, effecting, or arising out of the Debtor, the Debtor's operations, the bankruptcy filing, the Bankruptcy Case, the administration of the Plan, any sale or liquidation of the Debtor's Assets, or the property to be distributed under the Plan, except by reason of their gross negligence or willful misconduct, and in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

C.      **Discharge**

Except as otherwise provided in the Plan or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims of any nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any Assets or property shall have been distributed or retained pursuant to the Plan on account of such Claims, to the fullest extent permitted under the Bankruptcy Code.  Upon the

Effective Date, the Debtor shall be deemed discharged and released under § 1141(d) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose on or before the Confirmation Date. Further, upon the Effective Date all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code shall be terminated, extinguished and canceled. The foregoing discharges and releases shall not apply to the mortgages and security interests of the DIP Lender until all amounts are paid in full under the DIP Loan Agreement.

**D.      Exculpation**

> **Except as otherwise specifically provided in this Plan, upon the Effective Date, none of the Debtor, the Committee, or any of their respective officers, directors, shareholders, members and/or employees, representatives, advisors, attorneys, financial advisors, agents, or affiliates, or any of their successors or assigns, shall have or incur, and are hereby released from, any Claim, obligation, Cause of Action or liability to one another or to any holder of a Claim or an Interest, or any other party in interest, for any act or omission in connection with, relating to, or arising out of, the Debtor's Chapter 11 case, the formation, negotiation, and pursuit of Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their gross negligence, willful misconduct or fraud, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities (if any) under this Plan. Further, the Debtor, the Committee and Professionals are granted the protections and benefits of § 1125(e) of the Bankruptcy Code.**

**E.      Injunctions**

> **Except as otherwise specifically provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims, rights, Causes of Action, liabilities or any Interests based upon any act or omission, transaction or other activity of any kind or nature related to the Debtor or the Debtor's Chapter 11 Case that occurred prior to the Effective Date, other than as expressly provided in this Plan or the Confirmation Order, regardless of the Filing, lack of Filing, allowance or disallowance of such a Claim or Interest, and regardless of whether such Person has voted to accept or reject the Plan, and any successors, assigns or representatives of such Persons, shall be precluded and permanently enjoined on and after the Effective Date from (a) the commencement or continuation in any manner of any claim, action or other proceeding of any kind, and against any Person or entity, with respect to any Claim, Interest or any other right or claims against the Debtor, or any Assets of the**

**Debtor which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or their successors and assigns with respect to any Claim, Interest or any other right or claim against the Debtor, or against any Assets of the Debtor which such Entities possessed or may possess prior to the Effective Date, and (c) the creation, perfection or enforcement of any encumbrance or Lien of any kind against the Debtor or its successors and assigns with respect to any Claim, Interest or any other right or claim against the Debtor or any Assets of the Debtor which it possessed or may possess prior to the Effective Date.**

F.      **Limitation of Liability**

**Except as expressly set forth in the Plan, following the Effective Date, none of the Debtor, the Reorganized Debtor, the Committee, or any of their respective members, officers, directors, employees, advisors, attorneys, professionals or agents, or any of their successors and assigns, shall have or incur any liability to any Holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Debtor's Chapter 11 Case, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or any contract, instrument, release or other agreement or document created in connection with this Plan, or the administration of the Plan or the property to be distributed under the Plan, except for fraud, gross negligence or willful misconduct.**

G.      **Committee**

Ninety (90) days after the Effective Date, the Committee and its Professionals shall be disbanded and no longer constituted to act. Any Professional Fee Claim incurred by the Committee's Professionals for ninety (90) days after the Effective Date shall be paid upon submissions of invoices to the Reorganized Debtor. Any dispute concerning these fees and expenses shall be adjudicated by the Bankruptcy Court

**ARTICLE VIII**

**CONDITIONS PRECEDENT**

A.      **Condition Precedent to Effective Date**

The Effective Date is conditioned upon the Confirmation Order becoming a Final Order. The conditions set forth in this Article VIII can be waived by the Debtor in writing.

## ARTICLE IX

## **RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT**

1.      **Jurisdiction of Bankruptcy Court.** Upon and after Confirmation, as well as after the closing of the Debtor's Bankruptcy Case and the entry of a Final Decree, the Bankruptcy Court shall retain jurisdiction of the Debtor's Bankruptcy Case for the following purposes:

A.      To hear and determine any and all pending applications for the rejection and disaffirmance, assumption or assignment of Executory Contracts and any objection to Claims resulting therefrom and the allowance of Claims resulting therefrom.

B.      To hear and determine any and all applications, adversary proceedings, applications, contested matters and other litigated matters pending on the Confirmation Date, and to hear and determine any and all Causes of Action and the Avoidance Actions, including, without limitation, all avoidance power recovery actions such as preference actions and fraudulent conveyance actions, whether pending on the Confirmation Date or commenced by the Reorganized Debtor or the Plan Administrator after the Effective Date.

C.      To insure that the distributions to Holders of Claims are accomplished as provided herein.

D.      To hear and determine any objections to Claims filed both before and after Confirmation of the Plan, including any objections to the classification of any Claim and to allow or disallow any Disputed Claim in whole or in part.

E.      To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified or vacated.

F.      To hear and determine all applications for compensation of Professionals and reimbursement of expenses.

G.      To hear any application by the Reorganized Debtor to modify the Plan in accordance with § 1127 of the Bankruptcy Code. After Confirmation, the Reorganized Debtor may also, so long as it does not materially adversely affect the interest of Creditors, institute

proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order in such manner as may be necessary to carry out the purposes and effects of the Plan.

H.     To hear and determine disputes arising in connection with the Plan or its implementation, including disputes arising under agreements, documents or instruments executed in connection with this Plan.

I.     To construe and to take any action to enforce the Plan and issue such orders as may be necessary for the implementation, execution and consummation of the Plan.

J.     To take any action to resolve any disputes or objections arising out of or relating to any Claim; to hear and determine other issues presented by or arising under the Plan; and to take any action to resolve any disputes or objections of Creditors with respect to their Claims.

K.     To determine such other matters and for such other purposes as may be provided in the Confirmation Order and Plan.

L.     To hear and determine issues relating to, and issue any necessary orders with respect to, any governmental or regulatory agency or instrumentality.

M.     To hear and determine applications for orders sought pursuant to any provision of the Plan.

N.     To hear and determine any other matters not inconsistent with Chapter 11 of the Bankruptcy Code.

O.     To hear and determine any application or motion by the Reorganized Debtor to sell any Asset pursuant to Bankruptcy Code § 363 if requested.

## ARTICLE X

## <u>MISCELLANEOUS PROVISIONS OF THE PLAN</u>

10.1    **Governing Law.**  Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New Jersey, without giving effect to conflicts of law principles.

10.2    **Headings.**  The headings of the articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

10.3    **Severability.**  After the Effective Date, should the Bankruptcy Court, or any other court of competent jurisdiction, determine that any provision in the Plan is either illegal on its face or illegal as applied to any Claim, such provisions shall be unenforceable either as to all Holders of Claims or as to the Holder of such Claim as to which the provision is illegal, respectively.  Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

10.4    **Revocation.**  The Debtor reserves the right to revoke and withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan, then the Plan shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or be deemed an admission by the Debtor.

10.5    **The Failure to Satisfy a Confirmation Condition or an Effective Date Condition**. If one or more of the conditions to Confirmation or to the occurrence of the Effective Date that has not been waived by the Debtor are not satisfied, and the time within which such condition must be satisfied has expired, the Plan shall be deemed null and void, and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor or be deemed an admission by the Debtor.

10.6    **Construction.**  The rules of construction as set forth in § 102 of the Bankruptcy Code

shall apply to the construction of the Plan.

10.7    **Amendments.**  Except as otherwise provided herein, the Plan may be amended, modified or supplemented by the Debtor or the Reorganized Debtor, as the case may be, before or after the Confirmation Date, in the manner provided for by § 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to § 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise order.  The Plan may be amended, modified or supplemented by the Reorganized Debtor after the entry of the Confirmation Order as permitted by §1127 of the Bankruptcy Code and applicable law by the filing of a motion on notice to the Bankruptcy Rule 2004 service list only.

10.8    **No Interest.**  Except as expressly stated in this Plan, or allowed by Final Order of the Bankruptcy Court, no interest, penalty or late charge is to be allowed on any Claim subsequent to the Petition Date.

10.9    **Confirmation Over Objection.**  If any Impaired Class of Creditors shall fail to accept the Plan, the Debtor reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with the applicable provisions of § 1129(b) of the Bankruptcy Code.

10.10   **Notices**.  All notices, requests or demands for payments provided for in the Plan shall be in writing and shall be deemed to have been given when personally delivered by hand or deposited in any general or branch post office of the United States Postal Service. Notices, requests and demands for payments shall be addressed and sent postage pre-paid or delivered to the following:

To The Debtor and the Reorganized Debtor:

Work 'N Gear, LLC
10 Forbes Road, Suite 300
West Braintree, MA 02184
Attention:  Larry Nusbaum

With a copy to:

A.Y. Strauss LLC
290 W. Mount Pleasant Ave. Suite 3260
Livingston, New Jersey 07039
Attention: Eric H. Horn, Esq.

10.11   **Plan Controls Disclosure Statement.**  In the event and to the extent that any provision of the Plan is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan shall control and take precedence.

10.12   **Filing of Additional Documents.**  On or before substantial consummation of the Plan, the Debtor may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

10.13   **Reservation of Rights.**  If the Plan is not confirmed by the Bankruptcy Court or any other Court of competent jurisdiction for any reason, the rights of the Debtor and all parties in interest in the Debtor's Bankruptcy Case shall and will be reserved in full.  Statements and provisions made in the Plan or in the Disclosure Statement are made only for the purpose(s) of the Plan.  If the Plan is withdrawn, the Confirmation Order is not entered, or if the Effective Date does not occur, no Person shall be bound by or deemed prejudiced by any such statement or provision.

10.14   **Direction to a Party.**  From and after the Effective Date, the Reorganized Debtor may apply to the Bankruptcy Court for the entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by this Plan, and to perform any other act (including the satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

10.15   **Successors and Assigns.**  The rights, duties and obligations of any Person named or referred to in this Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

10.16   **Compliance with Tax Requirements.**  In connection with this Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by Federal, State, local or foreign taxing authorities.  Under § 1146(a) of the Bankruptcy Code and applicable New Jersey State law, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan, and specifically the transfer and ultimate sale of the Debtor Real Estate shall not be taxed under any law imposing a stamp tax or similar tax.

10.17   **Waiver of Subordination.**  Notwithstanding any provision of the Plan to the contrary, all holders of Claims shall be deemed to have waived any and all contractual subordination rights to which they may have with respect to the distributions made pursuant to the Plan, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of Claims from enforcing or attempting to enforce any such rights against any person receiving distributions under the Plan.

10.18   **Post-Effective Date Professional Fees.**  Any Professional fees and expenses incurred by the Debtor, the Reorganized Debtor and/or the Committee's Professionals after the Effective Date shall be paid by the Reorganized Debtor in the ordinary course of their business on a monthly basis without any requirement to file fee applications; however, if any such fees or expenses are disputed and not resolved by the parties within a reasonable time, the Bankruptcy Court shall retain jurisdiction to resolve such dispute.

10.19   **Administrative Bar Date.**

> **Upon Confirmation of this Plan, this Plan shall and does hereby establish an Administrative Claims bar date or last date for filing Administrative Claims, *exclusive of* Professional Fee Claims (which are addressed in Article II, Section B. 1. b of this Plan).  This Administrative Claim bar date shall be thirty (30) days after the Effective Date.  Such Administrative Claims must be filed with the Clerk of the Bankruptcy Court, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, with a copy sent to counsel for the Reorganized Debtor.  The failure to timely file such an Administrative Claim shall bar the Administrative Claim from being paid.**

> **The Administrative Claims bar date set forth in this section of the Plan does not apply to any 20 Day Administrative Claim. The 20 Day Administrative Bar Date controls those claims.**

> **The Debtor and Reorganized Debtor shall retain the right to object, dispute, or assert setoffs or defenses against, any Administrative Claim or 20 Day Administrative Claim, including but not limited to challenging the nature, validity, liability, amount, or classification of any such claim.**

*[remainder of page intentionally left blank]*

## <u>SIGNATURE</u>

Dated: November 12, 2025

**WORK 'N GEAR, LLC**

By: _____*/s/ Larry Nusbaum*_____
     Name: Larry Nusbaum
     Title: President

**Exhibit A to Plan**

**[Assumption Schedule]**

**TO BE PROVIDED**

**Exhibit B to Disclosure Statement**

**[Liquidation Analysis]**

**Work 'N Gear**

**Liquidation Analysis - Chapter 11**

**Assumed Liquidation Date: 11/1/25**

| | Notes | Balance Sheet at November 1, 2025 | Low Scenario Estimated Recovery % | Low Scenario Estimated Proceeds | High Scenario Estimated Recovery % | High Scenario Estimated Proceeds |
|---|---|---|---|---|---|---|
| Cash | (a) | $ 121,373 | 100.0% | $ 121,373 | 100.0% | $ 121,373 |
| Accounts Receivable - Credit Cards | (b) | 143,355 | 85% | 121,852 | 90.0% | 129,020 |
| Accounts Receivable - Third Party | (c) | 577,564 | 40.0% | 231,026 | 60.0% | 346,538 |
| Loan Receivable - A DiPaolo | (d) | 1,303,700 | 0.0% | - | 0.0% | - |
| Inventory | (e) | 3,585,762 | 125% | 4,482,203 | 150.0% | 5,378,643 |
| Other Assets - Book Value | (f) | 814,000 | 1.0% | 8,140 | 3.0% | 24,420 |
| Intectual Property | (g) | - | | 75,000 | | 150,000 |
| **Proceeds Available for Chapter 11 Expenses** | | $ 6,545,754 | | $ 5,039,593 | | $ 6,149,994 |

Chapter 11 Expenses:

| | Notes | | | Low | | High |
|---|---|---|---|---|---|---|
| Admin Claims - Estimated | (h) | | | $ 100,000 | | $ 150,000 |
| Chapter 11 Professional Fees | (i) | | | 150,000 | | 150,000 |
| United States Trustee Fees | (j) | | | 75,000 | | 75,000 |
| Wind Down Costs (assumes 10 weeks) | (k) | | | | | |
| Payroll | | | | 900,000 | | 900,000 |
| Retention Pay | | | | 250,000 | | 250,000 |
| Benefits | | | | 170,000 | | 170,000 |
| Rents | | | | 1,050,000 | | 1,050,000 |
| Insurance | | | | 33,100 | | 33,100 |
| Other Costs | | | | 250,000 | | 250,000 |
| Liquidation Costs | | | | 300,000 | | 300,000 |
| Total Chapter 11 Expenses | | | | $ 3,278,100 | | $ 3,328,100 |

| **Proceeds Available for Secured Claims** | | | | **$ 1,761,493** | | **$ 2,821,894** |

| | Notes | Estimated Claims Amounts (A) | | | | |
|---|---|---|---|---|---|---|
| Black Feather Funding - Loan Balance | (l) | 1,428,412 | 100.0% | 1,428,412 | 100.0% | 1,428,412 |
| Black Feather Funding - Estimated Exit Fees | (l) | 250,000 | 100.0% | 250,000 | 100.0% | 250,000 |
| Total Secured Claims | | $ 1,678,412 | | $ 1,678,412 | | $ 1,678,412 |

| **Proceeds Available for Chapter 11 Administrative Claims** | | | | **$ 83,081** | | **$ 1,143,482** |

Administrative Claims:

| | Notes | | | | | |
|---|---|---|---|---|---|---|
| Chapter 11 Professional Fees | (m) | $ 657,798 | 100.0% | $ 657,798 | 100.0% | $ 657,798 |
| United States Trustee Fees (Chapter 11 Perio | (n) | 55,000 | 100.0% | 55,000 | 100.0% | 55,000 |
| Total Chapter 11 Administrative Claims | | $ 712,798 | | $ 712,798 | | $ 712,798 |

| **Proceeds Available for Priority Claims** | | | | **-$629,717** | | **$430,684** |

| | | | | | | |
|---|---|---|---|---|---|---|
| Corporate Tax Claims | | $ - | 100.0% | $ - | 100.0% | $ - |
| Total Priority Claims | | $ - | | $ - | | $ - |

| **Proceeds Available for Unsecured Claims** | | | | **-$629,717** | | **$430,684** |

Unsecured Claims Claims:

| | Notes | | | | | |
|---|---|---|---|---|---|---|
| General Unsecured Claims - Estimated | (o) | 3,500,000 | 0.0% | - | 12.3% | $430,684 |
| Total Unsecured Claims | | $ 3,500,000 | | $ - | | $ 393,519 |

| **Proceeds Available for Members** | | | | **$0** | | **$0** |

**(A)  Debtor reserves all rights to object to these claims including but not limited to priority, classification and amount.**

**Further, the Debtor intends on filing claims objections when warranted.**

**Work 'N Gear**
**Liquidation Analysis as of 11/1/25**
**Notes to Liquidation Analysis**

(a) Cash on hand as of 11/1/25.

(b) Credit Card Receivables due to WNG.

(c) Third Party Receivables due, which some are gift card programs.

(d) Loan Receivable - A DiPaolo not documented with terms.

(e) Inventory - estimated return based on heavy discounts in liquidation.

(f) Other Assets - no value given to Leasehold Improvements; includes equipment at warehouse and furniture.

(g) Intellectual Property includes Work 'N Gear name and website, which are not on the books at a value. The recovery is estimated.

(h) Admin Claims during the liquidation not included in other line items.

(i) Professional fees incurred estimated during winddown.

(j) US Trustee Fees estimated to be incurred during winddown.

(k) Windown expenses estimated during a 10 week period.  It will be determined whether to consolidate stores/expenses.

(l) Principal owed to Black Feather and exit fees per loan agreement.

(m) Professional fees incurred and not paid during case.

(n) US Trustee Fees not paid for July-Sept 2025.

(o) Estimated unsecured claims.

**Exhibit C to Disclosure Statement**

**[Plan Administrator Agreement]**

**PLAN ADMINISTRATOR AGREEMENT**

This Plan Administrator Agreement (the "*Agreement*")[1] is made on this [•] day of [•]  202[•] (the "*Effective Date*"), by and between Work 'N Gear, LLC,  the  debtor  and debtor in possession (the "*Debtor*") and [•] (the "*Plan Administrator*").  Each of the Debtor and the Plan Administrator is a "*Party*" and are collectively referred to herein as the "*Parties*."

**RECITALS:**

A.      On July 16, 2025 (the "*Petition  Date*"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of New Jersey (the "*Bankruptcy Court*").

B.      Since the Petition Date, the Debtor has continued to manage  its affairs as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      The Office of the United States Trustee formed an Official Committee of Unsecured Creditors (the "*Committee*") in this Chapter 11 Case by Notice dated August 12, 2025.

D.      On November 13, 2025, the Debtor filed with the Bankruptcy Court its *Chapter 11 Plan of Reorganization* [Docket No. [•]] (the "*Plan*").  The Plan appoints a Plan Administrator whom, as of the Effective Date, has the powers and duties set forth in the Plan, this Agreement and the order confirming the Plan (the "*Confirmation  Order*").

E.      The  Parties  hereto acknowledge that  the  Plan Administrator shall, not individually but on behalf of the Estate, succeed to  the  rights  and  obligations of the Debtor as set forth in the Plan, the Confirmation Order, and this Agreement.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Debtor's *Plan*, as may be amended, supplemented, or modified from time to time.

1

**NOW, THEREFORE**, in consideration of the foregoing and the covenants and agreement agreements set forth herein, the Parties hereto agree as follows

## ARTICLE I
## ACCEPTANCE OF POSITION

**1.1    Acceptance.**

By signing this Agreement, [•] accepts the appointment as the Plan Administrator and agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under the Plan, this Agreement, the Confirmation Order and any other applicable orders of the Bankruptcy Court, and applicable law.

## ARTICLE II
## THE PLAN ADMINISTRATOR

**2.1    General Powers, Rights and Responsibilities.**

On the Effective Date, the Plan Administrator shall become the exclusive representative of the Estate.  The powers and duties of the Plan Administrator shall include, without limitation or further order of the Bankruptcy Court, the following:

(a)     to invest Cash in accordance with Section 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to Holders of Allowed Claims and pay taxes and other obligations owed by the Debtor or incurred by the Plan Administrator in connection with the wind-down of the Estate in accordance with the Plan;

(b)     to engage attorneys, consultants, agents, employees and all professional persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

(c)     to pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Plan Administrator and to pay all other expenses in connection with administering the Plan and for winding down the affairs of the Debtor in accordance with the Plan;

(d)     to execute and deliver all documents, and take all actions, necessary to consummate the Plan;

(e)     to coordinate the storage and maintenance of the Estate's books and record;

(f)     to oversee compliance with the Estate's accounting, finance and reporting

2

obligations;

(g)     to prepare any and all required reports and financial statements, including required U.S. Trustee reports, until such time as a final decree has been entered;

(h)     to oversee the filing of final tax returns, audits and other dissolution documents, if required;

(i)     to perform any additional actions as necessary to carry out the wind-down and administration of the Estate;

(j)     except as otherwise provided herein or in the Plan, to object to Claims against the Estate;

(k)     except as otherwise provided herein or in the Plan, to compromise and settle Claims against the Estate;

(l)     except as otherwise provided herein or in the Plan, to act on behalf of the Estate in all adversary proceedings and contested matters (including, without limitation, any Causes of Action), pending as of the Effective Date or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, or dispute any adversary proceedings or contested matters (including, without limitation, any Causes of Action) and otherwise pursue actions involving Assets of the Estate that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise specifically waived or relinquished in the Plan;

(m)     to implement and/or enforce all provisions of the Plan; and

(n)     to use such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or order of the Bankruptcy Court or as may be necessary and proper to carry out the provisions of the Plan.

**2.2**     **Authority to Object to Claims and to Settle Disputed Claims.**

From and after the Effective Date, the Plan Administrator, on behalf of the Estate, shall be solely authorized, with respect to those Claims which are not Allowed hereunder or by Court order, to object to any Claims filed against the Estate and to compromise and settle Disputed Claims against the Estate.

**2.3**     **Distributions.**

Following the Effective Date, Distributions shall be made by the Plan Administrator in accordance with the Plan, which terms are expressly incorporated herein.

**2.4** **Investment of Cash.**

The Plan Administrator shall invest any Cash held in any reserve in (A) direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America; (B) money market deposit accounts, checking accounts, savings accounts or certificates of deposit,  or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof; or (C) any other investments that may be permissible under (i) Section 345 of the Bankruptcy Code, or (ii) any order of the Bankruptcy Court.  Such investments shall mature in such amounts and at such times as the Plan Administrator, in the Plan Administrator's discretion, shall deem appropriate to provide funds when needed to transfer funds or make payments in accordance with the Plan and this Agreement.  The interest or other income earned on the investments of the Cash in any given reserve established pursuant to this Agreement, the Plan, or any order of the Bankruptcy Court shall constitute a part of such reserve, unless and until transferred or distributed pursuant to the terms of the Plan, this Agreement, or order of the Bankruptcy Court.

**2.5** **Control and Maintenance of Assets, Reserves, and Cash.**

Notwithstanding anything in this Agreement to the contrary, the Plan Administrator is authorized in his/her sole discretion to (i) move or transfer any asset, reserve, or Cash among various permitted investments at any time in order to comply with the rules of independence applicable to the accounting profession and (ii) refrain from making any investment or engaging in any other activity which may be in violation of such rules. The Plan Administrator shall not be liable for any action or omission which the Plan Administrator reasonably believes to be required for compliance with the preceding sentence.

4

**2.6**     <u>**Compliance with Tax Withholding and Reporting Requirements**</u>.

With respect to all payments and distributions made under the Plan, the Plan Administrator shall cause the Estate to comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority and, in the event the Plan Administrator retains accountants or other professionals, shall have the right to rely on the advice of such in connection with all tax matters.

**2.7**     <u>**Tax Requirements for Income Generated by Disputed Claims Reserves**</u>.

The Plan Administrator shall cause to be paid, out of the funds held in any reserve for Disputed Claims, any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in the reserve for Disputed Claims.

**2.8**     <u>**Books, Records, and Tax Returns**</u>.

The Plan Administrator shall preserve for the benefit of the Estate all documents and files of the Estate, including electronic data hosted on remote servers, that are necessary for the prosecution of the Causes of Action and Claims resolution process. After the Effective Date, the Plan Administrator shall be permitted, in his/her sole discretion, to abandon, destroy, or otherwise dispose of those books and records in compliance with applicable non-bankruptcy law, provided, however, that, in the Plan Administrator's discretion, these books and records may be destroyed or disposed of beginning two (2) years after the Effective Date, notwithstanding any applicable laws, rules, or regulations that would have required the Debtor to retain such books and records. Further, the Plan Administrator shall preserve and maintain all documents, data and information responsive to any subpoena, litigation hold, or discovery request to which the Debtor is subject on or after the Effective Date, provided that the Plan Administrator was served with a subpoena or discovery request before the time period to destroy records. The Plan Administrator shall file notices with the Bankruptcy Court reflecting any abandonment of books and records prior to the two years from the Effective

5

Date.

### 2.9 Post-Confirmation Reports and Fees.

Following the Effective Date and until the Chapter 11 Case is closed, converted or dismissed, not less than once every ninety (90) days, the Plan Administrator shall be responsible for the filing of all post-Effective Date reports required during such periods with the U.S. Trustee when due and payment from the Estate of all post-Effective Date fees when due, charged or assessed against the Estate under 28 U.S.C. § 1930 during such periods, together with applicable interest pursuant to 31 U.S.C. § 3717.

### 2.10 Reliance by Plan Administrator.

The Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if he relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that he reasonably believes to be genuine and to have been signed or presented by the proper party or parties or to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein and shall be fully protected personally in acting thereon. The Plan Administrator may consult with and retain counsel and other professionals with respect to matters in their area of knowledge and/or experience. Any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator. Further, the Plan Administrator shall be entitled to rely upon the advice of professionals in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon; provided, however, that this limitation of liability shall not release or absolve any professional for willful misconduct, fraud or gross negligence that may give rise to a claim against the Plan Administrator. The Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan, or any other document

executed in connection therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

**2.11    Reliance by Persons Dealing with the Plan Administrator.**

In the absence of actual knowledge to the contrary, any person dealing with the Debtor and the Liquidated Debtor shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Liquidated Debtor and shall have no obligation to inquire into the existence of such authority.

**2.12    Compensation.**

(a)    The Plan Administrator shall be compensated by the Reorganized Debtor. The Plan Administrator's compensation shall be $ [•] per hour, payable monthly.  The Plan Administrator shall also be entitled to reimbursement of all reasonable out-of-pocket expenses incurred in carrying out the terms of the Plan and this Agreement, including telephone, travel, facsimile, courier, postage, and other similar out-of-pocket expenses.  The Plan Administrator is permitted to adjust his/her billable rate on January 1st of each year.

(b)    The fees and expenses of professionals retained by the Plan Administrator on and after the Effective Date, shall be paid by the Plan Administrator within thirty (30) days of receipt or presentment of monthly, detailed invoices in respect of their services and expenses, or on such other terms as the Plan Administrator and the applicable professional may agree to, without the need for further Bankruptcy Court approval. Such post-Effective Date professionals shall provide the Plan Administrator with monthly, detailed invoices in respect of their services and expenses. Notwithstanding the foregoing, if the Plan Administrator objects in writing to the payment of any compensation, such disputed amount shall not be paid prior to the earlier of the resolution of  such

dispute or a ruling by the Bankruptcy Court. The Plan Administer shall file notices with the Bankruptcy Court every three (3) months reflecting payments to professionals.

**2.13    Conflicts.**

Should the Plan Administrator perceive or any party in interest assert that the Plan Administrator holds a conflict of interest with regard to the performance of any aspect of his/her duties under the Plan Administrator Agreement, the issue shall first be brought to the attention of the United States Trustee and thereafter brought before the Bankruptcy Court for resolution.

**2.14    Windup and Closing Case.**

Once (a) the Plan has been fully administered, (b) all Disputed Claims have been resolved, and (c) all Causes of Action have been resolved, the Plan Administrator shall effect a final distribution (after reserving sufficient Cash to pay all unpaid expenses of administration of the Plan and all expenses reasonably expected to be incurred in connection with the final distribution) to Holders of Allowed Claims in accordance with the Plan.

After the Debtor's Estate has been fully administered, the Plan Administrator shall file the final account and report with the Bankruptcy Court. At such time, the Plan Administrator shall move for the Bankruptcy Court to enter a Final Decree closing the Bankruptcy Case pursuant to Section 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

**2.15    No Agency Relationship.**

The Plan Administrator shall not be deemed to be the agent for any of the Holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Plan Administrator shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence, willful misconduct, or fraud. The Plan Administrator shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of his/her duties under

the Plan, except to the extent his/her actions constitute gross negligence, willful misconduct, or fraud. The Plan Administrator may conclusively rely on, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he believes to be genuine and to have been signed or presented by the proper party or parties. The Plan Administrator may rely upon information previously generated by the Debtor.

**ARTICLE III**
**RELEASES AND INDEMNIFICATION; INSURANCE**

### 3.1    Releases; Indemnification.

The Plan Administrator, each of his/her respective designees, employees or professionals or any duly designated agent or representative of the Plan Administrator shall not be liable for any act or omission taken or omitted to be taken in their respective functions as outlined in the Plan, this Agreement and the order confirming the Plan other than for acts or omissions resulting from willful misconduct, gross negligence, or intentional fraud as determined by Final Order of the Bankruptcy Court. The Plan Administrator may, in connection with the performance of his/her respective functions, and in his/her sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such attorneys or other professionals. Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and his/her determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence, or intentional fraud as determined by Final Order of the Bankruptcy Court. The Estate shall indemnify and hold harmless the Plan Administrator and his/her designees and professionals and all duly designated agents and representatives thereof (in their capacity as such) from and against all liabilities, losses, damages, claims, costs and expenses, including, but not

9

limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect to or related to the performance of their duties or the implementation or administration of the Plan, the order confirming the Plan and this Agreement; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence, or intentional fraud.

**3.2** **Insurance.**

The Plan Administrator shall be authorized to obtain (to be paid by the Reorganized Debtor) all reasonably necessary insurance coverage for himself, his/her agents, representatives, professionals, or other independent contractors, the Debtor, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Debtor or the Estate and (ii) the liabilities, duties, and obligations of the Plan Administrator, and his/her agents, representatives, professionals, or other independent contractors under this Agreement, and any other indemnified parties, in the form of an errors and omissions policy or otherwise, the latter of which insurance coverage may, at the sole option of the Plan Administrator, remain in effect for a reasonable period (not to exceed seven (7) years) after the termination of this Agreement.

**ARTICLE IV**

**TERMINATION AND RESIGNATION**

**4.1** **Term of Service.**

The Plan Administrator shall serve until the earliest of (a) the completion of all the Plan Administrator's duties, responsibilities and obligations under the Plan and this Agreement, (b) dissolution of the Estate in accordance with the Plan, and (c) the Plan Administrator's death, incapacitation, resignation, or removal for cause.

**4.2** **Resignation.**

The Plan Administrator may resign by written notice to the Bankruptcy Court and any the notice parties included in the Plan. In the event of his/her resignation, the Plan Administrator shall

10

give at least thirty (30) days' notice of such resignation to the Bankruptcy Court and any notice party included in the Plan.  Such resignation will not be effective until expiration of that thirty-day notice period; provided, however, that the Plan Administrator shall continue to serve as Plan Administrator after resignation until such resignation is effective under this paragraph or appointment of a successor Plan Administrator by the Bankruptcy Court, whichever occurs earlier.  Notwithstanding the foregoing, the Plan Administrator may resign and terminate the performance of his/her services as the Plan Administrator at any time upon written notice to the Bankruptcy Court and any notice party included in the Plan if the Plan Administrator determines in his/her sole discretion that the performance of any part of this Agreement would be in conflict with law or  independence or professional rules.

 4.3 **Removal of the Plan Administrator for Good Cause.**

Any creditor may seek to remove the Plan Administrator only for good cause by filing  the appropriate motion with the Bankruptcy Court upon at least thirty (30) days' prior notice. For purposes of both this provision, good cause means:

(a) theft, dishonesty, fraud, or willful misconduct. including intentional falsification of any employment or other records;

(b) gross negligence or material failure in the performance of any material duties under the Plan, which is (i) repeated or continued after written notice of, and a reasonable opportunity to cure, such gross negligence or material failure, and (ii) injurious to the Estate; or

(c) the arrest, indictment or conviction (including any plea of guilty or no contest) for any felony or other crime involving dishonesty or moral turpitude.

If there is a dispute between the Plan Administrator and a creditor regarding whether  good cause exists for removal, and such dispute is not consensually resolved within thirty (30) days thereafter, such dispute will be resolved by the Bankruptcy Court. For the avoidance of doubt, during

11

the pendency of any dispute before the Bankruptcy Court regarding removal of the Plan Administrator and any appeals therefrom, the Plan Administrator shall continue to discharge the rights, obligations, and duties of the Plan Administrator set forth in the Plan and this Agreement.

**4.4    Continuity; Appointment of Successor Plan Administrator.**

(a)    The death, incapacity, resignation, or removal of the Plan Administrator for good cause shall not operate to terminate any agency or employment created by this Agreement or invalidate any action theretofore taken by the Plan Administrator. In the event of a vacancy by reason of death, incapacity or removal of the Plan Administrator for good cause or prospective vacancy by reason of resignation or removal for good cause, counsel to the Plan Administrator shall seek the appointment of successor Plan Administrator by the filing of a motion, on notice to all parties in interest in the Chapter 11 Case, seeking to appoint a successor Plan Administrator.

(b)    The successor Plan Administrator, without any further act, shall become vested with all the rights, powers, and duties of the Plan Administrator; provided, however, that no Plan Administrator shall be liable for the acts or omissions of any prior or later appointed Plan Administrator. Every successor Plan Administrator appointed hereunder shall execute, acknowledge, and deliver to any notice parties listed in the Plan an instrument accepting such appointment subject to the terms and provisions hereof.

**ARTICLE V**

**MISCELLANEOUS PROVISIONS**

**5.1    Descriptive Headings.**

The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**5.2    Governing Law.**

This Agreement shall be governed by and construed in accordance with the laws of the State

of New Jersey without regard to the rules of conflict of laws of the State of New Jersey or any other jurisdiction.

### 5.3 Counterparts; Effectiveness.

This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.  This Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

### 5.4 Severability; Validity.

If any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby,  and to such end, the provisions of this Agreement are agreed to be severable.

### 5.5 Notices.

Any notice or other communication hereunder shall be in writing and shall be deemed given upon (a) confirmation of receipt of a facsimile transmission, (b) confirmed delivery by a standard overnight carrier or when delivered by hand, or (c) the expiration of five (5) Business Days after the day when mailed by registered or certified mail (postage prepaid, return receipt requested), addressed to the notice parties set forth in the Plan.

### 5.6 Relationship to Plan.

The principal purpose of this Agreement is to aid in the implementation of the Plan and the Confirmation Order and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan and the Confirmation Order.  In the event that the provisions of this Agreement are found to be inconsistent

13

with the provisions of the Plan and/or the Confirmation Order, the provisions of the Plan and Confirmation Order shall control.

### 5.7 **Amendments.**

This Agreement may be amended or modified by the Plan Administrator as necessary to implement the provisions of the Plan and to facilitate the administration of the Estate consistent with the Plan and to maximize the recovery thereof; provided that any material amendments shall be subject to the approval of the Bankruptcy Court.

### 5.7 **No Agency.**

Nothing in this Agreement shall constitute or be deemed to constitute an agency, partnership, or joint venture between the Parties hereto or constitute or be deemed to constitute any Party the agent or employee of the other Party for any purpose whatsoever, and neither Party shall have authority or power to bind the other Party or to contract in the name of, or create a liability against, the other Party in any way or for any purpose.

### 5.8 **Retention of Jurisdiction.**

As provided in the Plan, the Bankruptcy Court shall retain jurisdiction over the Estate to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and implementing the provisions of this Agreement.

### 5.9 **No Assignment.**

Neither Party hereto may assign any of its rights or obligations hereunder to any other person, without the prior written consent of both Parties, and approval by the Bankruptcy Court.

### 5.10 **Commencement Date.**

This Agreement shall become effective on the Effective Date of the Plan.

**IN WITNESS WHEREOF**, the Parties have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers at of the date first above written.

**PLAN ADMINISTRATOR:**                    **WORK 'N GEAR, LLC**


By: _____                         By: _____
Name:                                       Name:
                                            Title:

15