**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-2*

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
David S. Salhanick, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-0966
Fax  (973) 533-0127

*Counsel to the Debtor*
*and Debtor in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| Work 'N Gear, LLC, | Case No. 25-17472 (MEH) |
| Debtor. | |

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365, AND BANKRUPTCY RULES 2002, 6004 and 6006 FOR (I) ENTRY OF AN ORDER (A) APPROVING  BIDDING PROCEDURES AND NOTICE OF THE AUCTION RELATING THERETO, (B) SCHEDULING HEARING TO CONSIDER SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (C) APPROVING BID PROTECTIONS AND EXPENSE REIMBURSEMENT; AND (II) ENTRY OF AN ORDER (A) AUTHORIZING AND APPROVING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) AUTHORIZING AND APPROVING THE ASSET PURCHASE AGREEMENT WITH RESPECT THERETO, (C) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AS NECESSARY IN CONNECTION WITH THE  SALE, <u>AND (D) GRANTING RELATED RELIEF</u>**

Work 'N Gear, LLC, the above-captioned debtor and debtor in possession (the "***Debtor***"),

by and through its undersigned counsel, hereby files this motion (the "***Motion***") for (I) entry of an

order (the "***Bidding Procedures Order***"), pursuant to 11 U.S.C. §§ 105(a) and 363(b), (a)

authorizing and approving certain bidding procedures (the "***Bidding Procedures***"), (b) approving the form and manner of notice of the auction (the "***Auction***"), and (c) scheduling a hearing (the "***Sale Approval Hearing***") to consider the sale of substantially all of the Debtor's assets; and (II) entry of  an order (the "***Sale Order***") pursuant to 11 U.S.C. §§ 105(a), 363(b) and 365(a) (a) authorizing and approving the sale of the Debtor's assets free and clear of liens, claims, encumbrances, and interests, (b) authorizing and approving the APA (as defined below), (c) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases as necessary in connection with the sale, and (d) granting related relief.  In support of the Motion, the Debtor respectfully states as follows:

## JURISDICTION

1.	This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.	The statutory and legal predicates for the relief sought herein are 11 U.S.C. §§ 105(a), 363 and 365 of the Bankruptcy Code.

3.	This Motion also conforms to the November 25, 2009 *General Order Adopting Guidelines for Sale of Estate Property* (the "***Guidelines***").

## GENERAL BACKGROUND

4.	On July 16, 2025 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of New Jersey (the "***Court***").

5.	The Debtor continues to manage its businesses and properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.	On August 12, 2025, the Office of the United States Trustee appointed the

Official Committee of Unsecured Creditors (the "***Creditors' Committee***").  *See* Docket No. 61. No trustee or examiner has been appointed in this case.

7.      On March 7, 2002, Debtor was formed as a limited liability company in the State of New York. At the time of the Debtor's filing of its chapter 11 case, the Debtor was the largest United States retailer specializing in work apparel, footwear and healthcare apparel.  The Debtor's parent, Work 'N Gear, Inc. ("***WNG Inc.***"), is incorporated in Delaware and has its office in in Braintree, MA.

8.      The Debtor currently operates twenty-six (26) brick and mortar retail stores located in eight (8) different states, primarily in the Northeastern and Midwestern United States; operates an online internet retail store; and operates a 14,000 square foot distribution facility in Avon, Massachusetts, which serves in-store and online customers.

9.      The Debtor is a privately owned company, with 100% of its membership interests held by WNG Inc. WNG Inc. is wholly owned by its sole shareholder, Anthony DiPaolo ("***DiPaolo***"). DiPaolo also serves as Debtor's Chief Executive Officer. Debtor does not operate any subsidiary or affiliate companies.

10.     The Debtor is a retail seller of workplace apparel and footwear, as well as healthcare scrubs and attire utilized by first responders and healthcare professionals. Debtor offers over two hundred fifty (250) different items for sale, including their own private label brands, making Debtor a "one-stop shop" for all workwear apparel and footwear needs. Debtor's wide assortment of workwear, scrubs, footwear, and accessories provides consumers with an opportunity to purchase all their workwear needs in a single location, which is unique to the workplace apparel market and often serves as a one-stop destination for its customers.

11.     The locations at which Debtor operates its retail business are not owned by Debtor.

Debtor leases these properties from various landlords to whom Debtor must pay monthly rent.  At the time of the Debtor's chapter 11 filing, the Debtor employed approximately 154 employees, consisting of 81 full-time employees and 73 part-time employees.

## RELEVANT BACKGROUND

### A.    Sale Preparation

12.    Prior to the Petition Date, the Debtor engaged KCP Advisory Group, LLC ("**KCP**") as financial advisors to assist the Debtor in its restructuring process. While not formally retained to explore a sale process for the Debtor, KCP has been working closely with informal, well-known restructuring party (the "***Informal Restructuring Professional***"), to bring potential buyers to the table in the event that a balance sheet restructuring was not able to be accomplished in this chapter 11 case.

13.    As part of its financial advisory role, KCP has conducted extensive due diligence on the Debtor as well as meetings with the Debtor's senior management.  With that information, KCP, Larry Nusbaum (the Debtor's interim president) and the Informal Restructuring Professional worked with the Debtor to identify parties interested in purchasing of the Debtor's assets.  Those parties interfaced with at least two dozen parties where thirteen of those parties expressed strong interest.  At least two of those parties advised that they anticipate putting in a bid.

### B.    The Asset Purchase Agreement

14.    While the Debtor was canvassing interest in the Debtor's assets, the Debtor was also preparing a form of asset purchase agreement (the "***APA***"), annexed hereto as **Exhibit 2**. Pursuant to the APA, the Debtor proposes to sell, assign and transfer (the "***Sale***") substantially all of the Debtor's Assets (as defined below) free and clear of liens, claims, charges, encumbrances, and interests (collectively, the "***Interests***"), with such encumbrances to attach to the proceeds of the Sale.

4

15.     Pursuant to the Bidding Procedures, the Debtor proposes to sell, assign and transfer, convey and deliver the Assets subject to higher or better offers.  The Sale provides that no bulk sales law or similar laws of any state or other jurisdiction will apply  to the transactions contemplated by the APA.  To the extent that such laws apply, the Debtor seeks a waiver therefrom.

## SUMMARY OF RELIEF REQUESTED

16.     The Debtor seeks entry of a Bidding Procedures Order substantially in the form attached hereto as **Exhibit 1**:

(i)     Approving Bidding Procedures for the solicitation and consideration of competing offers for the Sale of the Assets including (a) procedures for submitting bids for any or all of the Assets, and (b) conducting  an auction (the "*Auction*") with respect to any Assets on which the Debtor receive more than one bid;

(ii)     Scheduling  a hearing to approve any Sale of the Assets no later than January 15, 2026, subject to the Court's availability, with any objections to the Sale to be filed on or before 4:00 p.m. (prevailing Eastern time) on January 12, 2026;

(iii)     Approving procedures, as set forth below, for the assumption, assignment and/or transfer of certain executory contracts and unexpired leases (collectively, the "*Assumed and Assigned Contracts*" ) to any purchaser of the Assets and /or to resolve any objections thereto; and

(iv)     Approving (a) the form of notice of the Bidding Procedures, Auction and Sale Approval Hearing (the "*Notice of Auction*") substantially in the form attached to the Bidding Procedures Order as Exhibit B, to be served on the Notice Parties (as defined below); and (b) the notice of the Debtor's intent to assume, assign and/or transfer the Assumed and Assigned Contracts, and the corresponding cure amounts required to be paid in connection with such assumption, assignment and/or transfer (the "*Cure Notice*"), substantially in the form attached as Exhibit C to the Bidding Procedures Order.

17.     At the Sale Approval Hearing, the Debtor will seek approval of the APA of the successful bidder at Auction, and the assumption and assignment of certain executory contracts and unexpired leases as necessary in connection with the sale.

18.     The Debtor expressly reserves the right to modify the relief requested in  this

Motion, including the proposed Bidding Procedures, prior to or at the applicable hearing.

**Proposed Bidding Procedures for  Purchased Assets**

19.     The Debtor desires to receive the greatest value for its Assets. The Debtor believes the proposed Bidding Procedures, which are annexed as Exhibit A to the proposed Bidding Procedures Order, will maximize the realizable value of the Assets for the benefit of the Debtor's estate, creditors and other parties-in-interest.  The Bidding Procedures (as set forth in pertinent part below) were developed consistent with the Debtor's need to expedite the sale process but with the objective of promoting active bidding that will result in the highest and best offer the marketplace can sustain for the Assets.  The Bidding Procedures also reflect the Debtor's objective of conducting an Auction in a controlled, but fair and open, fashion that promotes interest in the Assets by financially-capable, motivated bidders who are likely to close a transaction, while simultaneously discouraging non-serious offers and offers from persons the Debtor does not believe are sufficiently capable or likely to actually consummate a transaction.

20.     As described below and more fully in the Bidding Procedures, the Debtor proposes a two-phase auction process whereby bids are solicited from Qualifying Bidders (as defined below) and (assuming the Debtor receives at least one Qualified Bid (as defined below), an Auction occurs. Only Qualified Bids will be eligible to participate in an Auction. The following paragraphs in this section summarize key provisions of the Bidding Procedures, but are qualified in their entirety by reference to the actual Bidding Procedures attached to the Bidding Procedures Order as Exhibit A:

**(a)     Assets to Be Sold**

21.     The Debtor is seeking to sell substantially all of its assets (collectively, the "*Assets*"), or any portion thereof, to the person or entity making the most value maximizing bid through the process outlined in the Bidding Procedures.  The Assets include, but are not limited to:

(i)      All inventory, all pre-paid inventory and in-transit inventory;

(ii)     All Accounts Receivable from credit cards and third party customer accounts

(iii)    All unexpired leases and executory contracts;

(iv)     All intellectual property, to the extent transferrable and assignable;

(v)      All fixed assets and equipment (the "*FF&E*"), wherever located, that are used to operate the locations subject to any assumed real property leases (the "*Acquired Locations*");

(vi)     All customer data and customer management relationship software relating to the Debtor's business and in connection with the Acquired Locations;

(vii)    All security deposits relating to any assumed unexpired leases and executory contracts;

(viii)   All goodwill arising in connection with the Acquired Locations; and

(ix)     All books and records relating to the Acquired Locations but excluding any such books and records that are subject to attorney-client or similar privilege.

**(b)      Provisions Governing Qualification of Bidders**

22.    As a prerequisite to becoming a Qualifying Bidder, a potential bidder must:

(i)      deliver an executed confidentiality agreement in form and substance acceptable to the Debtor no later than January 2, 2026 at 5:00 p.m., prevailing Eastern Time; and

(ii)     provide financial and other information as the Debtor, in consultation with the Creditors' Committee shall reasonably deem necessary to provide sufficient support for the ability of the potential bidder to consummate a transaction to purchase the Assets, if such potential bidder is selected as the Successful Bidder.

**(c)      Access to Due Diligence Materials**

23.    The Debtor will afford Qualified Bidders the opportunity to conduct reasonable due

diligence, subject to parameters that the Debtor, in consultation with its advisors, determine are business-sensitive or otherwise not appropriate for disclosure to such Qualified Bidder in order to avoid disclosure of competitively sensitive or proprietary information that could be damaging to the value of the Debtor's estate if disclosed to a potential bidder in actual or potential competition with the Debtor or strategically situated with respect to the Debtor as an actual or potential supplier or customer. The Debtor will continue to maintain  its electronic data room and make it available to any Qualified Bidder that has executed a confidentiality agreement.  The due diligence period shall extend thorough and including **January 4, 2026 at 5:00 p.m. (ET)**.  The Debtor and its representatives and advisors shall not be obligated to furnish any due diligence information after the Bid Deadline.

**(d)      Provisions Governing Qualified Bid Requirements**

24.      All Bids must be served (written or electronic) upon and actually received by the Debtor, counsel to the Debtor, financial advisor to the Debtor, counsel to the DIP Lender, and counsel to the Creditors' Committee, on or before 5:00 p.m., prevailing Eastern Time, on January 5, 2026 (the "***Bid Deadline***").  Bids must be sent to: (i) Work 'N Gear, LLC**,** , Attn: Larry Nusbaum to larry@workngear.com**;** (ii) A.Y. Strauss LLC, as counsel to the Debtor, 290 West Mount Pleasant Avenue, Suite 3260, Livingston, New Jersey 07039, Attn: Eric H. Horn, Esq. (ehorn@aystrauss.com) and David S. Salhanick, Esq. (dsalhanick@aystrauss.com); (iii) KCP Advisory Group, LLC, financial advisor to the Debtor, 700 Technology Park Drive, Suite 212, Billerica, MA  01821, Attn: Margie Kaufman, CTP (mkaufman@kcpadvisory.com); (iv) Genova Burns LLC, DIP Lender to the Debtor, Genova Burns LLC, 494 Mayor Kenneth A. Gibson Blvd., Newark, NJ  07102, Attn: Donald  W.  Clarke,  Esq.(DClarke@genovaburns.com); and  (v) Lowenstein Sandler LLP, as counsel to the Committee, One Lowenstein Drive, Roseland, New Jersey 07068, Attn: Colleen Restel, Esq. (crestel@lowenstein.com) and Kelly E. Moynihan, Esq. (KMoynihan@lowenstein.com) (collectively, the "***Notice Parties***").

25.      An entity that desires to submit a Bid to purchase the Assets may do so in writing

as follows:

(i)     all Bids must state that the Potential Bidder offers to purchase all or substantially all of the Assets, or a specified portion of the Assets and specify which Assets are proposed to be purchased;

(ii)    all Bids must include a clean and duly executed asset purchase agreement, blacklined to show any changes from the form asset purchase agreement provided to Potential Bidders by the Debtor ("*Modified Purchase Agreement*"), clearly setting forth, among other things, any conditions for closing and stating that the Bid is irrevocable as set forth below;

(iii)   all Bids must be accompanied by a cashier's check or a wire transfer payable and delivered to the Debtor, its counsel or other agreed upon escrow agent of ten percent (10%) of the aggregate purchase price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtor (the "*Good Faith Deposit*").  To the extent that a Bid is modified at or prior to the Auction (defined below), the applicable bidder must adjust its Good Faith Deposit that it equals ten percent (10%) of the increased aggregate purchase price promptly and in no event later than one (1) business day following the conclusion of the Auction;

(iv)    the Bid must identify with particularity each and every unexpired lease or executory contract (each, an "*Assumed And Assigned Contract*") sought to be assumed and assigned, the assumption and assignment of which is a condition precedent to closing;

(v)     a Bid must set forth in the applicable asset purchase agreement the bidder's proposal with respect to payment of cure amounts with respect to any assumed unexpired leases and executory contracts;

(vi)    a Bid must clearly set forth the purchase price to be paid, and must not request or entitle such Potential Bidder to any expense reimbursement, breakup fee, termination or other similar type of fee or payment;

(vii)   a Bid shall not be contingent upon any due diligence investigation, any permitting requirements (*e.g.*, building

permits, licenses, inspections, zoning, approvals, or certificates of any kind), any material adverse change, the receipt of financing, or approval by any board of directors, shareholders, or other entity;

(viii)   a Bid must include evidence, including financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to the Debtor, upon consultation with the DIP Lender and the Creditors' Committee) sufficient to establish financial wherewithal of the   Potential Bidder to complete   the contemplated transactions and, to the extent the Potential Bidder will rely upon the financial wherewithal of an affiliate, franchisor, bid partner, or other sponsor (each, a "***Sponsor***"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

(ix)   a Bid must contain such financial and/or other information that will allow the Debtor, following consultation with the DIP Lender and the Creditors' Committee, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transactions contemplated by the Bid, including such financial and other information setting forth adequate assurance of future performance under Section 365 of the Bankruptcy Code in a form requested by the Debtor to allow the Debtor to serve on counterparties to any contracts or leases being assigned in connection with the proposed sale that have requested, in writing, such information;

(x)   each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Bid, including each equity holder or other financial backer of the bidder (including if such bidder is an entity formed for the purpose of consummating the transactions contemplated by such Bid), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered to complete the transactions on the terms contemplated by the parties.  Each Bid must also include contact information for the specific person(s) whom the Debtor should contact regarding such Bid;;

(xi)     the Potential Bidder must (a) acknowledge in writing that it has not engaged in any collusion with respect to any Bids or the sale transaction(s), specifying that it did not agree with any Qualified Bidders or Potential Bidders to control price or otherwise with respect to any of the Assets or the sale transaction(s) and processes contemplated by the Bidding Procedures; and (b) agree not to engage in any collusion with respect to any Bids, the Auction, or the sale transaction(s). For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors', in consultation with the Creditors' Committee, prior written consent (email shall suffice);

(xii)    each Bid must contain evidence that the Potential Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

(xiii)   a Bid must state that the bidder is willing and able to consummate and fund the proposed transaction by no later than January 31, 2026;

(xiv)    a Bid must disclose any agreements or understandings between the Potential Bidder and any third party with respect to the Assets or with respect to any transaction involving the Debtor;

(xv)     Bid must clearly state that it is irrevocable through the conclusion of the Sale Hearing, provided that if such bid is accepted as the Successful Bid or the Backup Bid (as defined below), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures, through the closing of the sale transaction;

(xvi)    each Bid shall provide that the Potential Bidder will serve as a Back-Up Bidder (as defined below) is its Bid is the next highest or otherwise best Bid with respect to the applicable Assets;

(xvii)   each Bid must include a written acknowledgement and representation that the Potential Bidder:  (i) has had an opportunity to conduct any and all due diligence regarding

the sale transaction(s) prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; (iii) did not rely on or receive from any person or entity (including any of the Debtor or its advisors or other representatives) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith or the Auction (if any), except as expressly stated in the Potential Bidder's purchase agreement; and (iv) did not engage in collusive conduct and acted in good faith in submitting its Bid; and

(xviii) each Bid must indicate whether the Potential Bidder intends to hire all of the employees of the Debtor or which employees the Potential Bidder intends to hire.

26. Prior to the Auction, the Debtor shall determine in its reasonable judgment and in consultation with the DIP Lender and the Creditors' Committee, which of the Qualified Bids constitutes the highest or best value to the Debtor.

**(e)** **The Auction and Auction Rules**

27. In the event that the Debtor timely receives one or more Qualified Bids, the Debtor shall conduct an Auction on **January 8, 2026 at 10:00 a.m. prevailing Eastern Time** (the "*Auction Date*") at the offices of A.Y. Strauss LLC, located at 290 West Mount Pleasant Avenue, Suite 3260, Livingston, New Jersey 07039, and shall be conducted according to the following procedures:

*a.    The Debtor Shall Conduct the Auction*

28. The Debtor and its professionals shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline (the "*Auction Baseline Bid*"). Each Qualified Bidder participating in the Auction must again confirm that it has not engaged in any collusion with respect to the bidding or sale of the Assets.

(i)    *Terms of Overbids*

12

29.     An "*Overbid*" is any bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid.  To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a)     An Overbid after the Auction Baseline Bid shall be made in an initial minimum increment of $50,000 and minimum Overbid increments of not less than $50,000. Additional consideration in excess of the amount set forth in the Auction Baseline Bid may include cash and/or noncash consideration.

(b)     An Overbid must comply with the conditions for a Qualified Bid set forth above *provided, however*, that the Bid Deadline shall not apply.  Any Overbid must remain open and binding on the Bidder until and unless the Debtor accepts a higher Overbid.

(c)     To the extent not previously provided, a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) demonstrating such Bidder's ability to close all proposed transactions contemplated in and proposed by such Overbid.

(d)     The Debtor shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtor's estate based on, *inter alia*, the Bid Assessment Criteria.

(e)     The Debtor  reserves the right, in its reasonable business judgment and after consultation with the Creditors' Committee to  make one or more continuances of the Auction over the course of the day to, among other  things: facilitate discussions between the Debtor  and individual bidders; allow individual bidders to consider how they wish to proceed; and give bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment may require that the bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate     the     proposed     competing     transaction

represented by the Overbid at the prevailing Overbid amount.

(f)     At the conclusion of the Auction, and subject to Court approval following the Auction, the successful Bid or Bids shall be selected and announced by the Debtor, in consultation with the DIP Lender and with the consent of the Creditors' Committee (the "*Successful Bid or Bids"*), and the backup Bid or Bids shall be selected and announced by the Debtor, in consultation with the DIP Lender and the Creditors' Committee (the "*Backup Bid or Bids"*).

(g)     Within 24 hours of completion of the Auction, the entity or entities that  made the Successful Bid or Bids (the "*Successful Bidder*") and the entity or entities that made the Backup Bid or Bids shall complete and sign all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which such Successful Bid or Bids and Backup Bid or Bids were made.

(h)     The Auction may be adjourned or canceled as the Debtor, after consultation with the DIP Lender and with the consent of the Creditors' Committee, deems appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction or cancellation shall be given to all participants and to the DIP Lender and the Creditors' Committee

30.     The Debtor submits that implementation of the Bidding Procedures on the timetable set forth herein is critical to maximize the value of the assets of the Debtor's estate. Indeed, although somewhat aggressive, the Debtor believes that the timetable is necessary in order to maximize the value of the Debtor's Assets and to minimize the administrative expenses incurred by the chapter 11 estate.

31.     The Debtor submits that the Bidding Procedures will not chill the bidding for the Assets. Quite the contrary, approval of the Bidding Procedures is in the best interests of the Debtor, its estate and its stakeholders.

## BASIS FOR RELIEF

**A.     The Bidding Procedures Should be Approved**

32.     Maximization of proceeds received by the estate is one of the dominant goals of any proposed sale of estate property. In the hope of maximizing the value received by the estate, courts typically establish procedures that are intended to enhance competitive bidding by, among other things, setting forth the rules that will govern the auction process.

33.     Although the Debtor has marketed its assets through the use of professional contacts, a stalking horse bid has not yet been finalized. Notwithstanding that, the Debtor believes that the Bidding Procedures will help the Debtor receive the maximum value for the Assets, under the circumstances of this chapter 11 case, by establishing a competitive bidding process where the parties that have expressed interest in the Assets may come forward and bid, knowing, among other things, the quality of the title they will receive if they are the Successful Bidder. The Debtor believes that the Bidding Procedures will encourage active bidding from seriously interested parties who possess the financial and operational capacity to purchase the Assets. Furthermore, the proposed Bidding Procedures will allow the Debtor to conduct an auction in a controlled, fair and competitive fashion that will serve to dispel any doubt as to the best and highest offer reasonably available for the Assets. Therefore, the Debtor believes the Bidding Procedures will confirm that it is receiving the greatest possible consideration for the Assets.

34.     By establishing a fair, open, and competitive process, the Bidding Procedures are designed to generate the highest and best offers available under the tough circumstances and environment the Debtor faces, and, thus, maximize recoveries for creditors and the estate. For these reasons, the Bidding Procedures are in the best interests of the Debtor's estate and should be approved.

**B.      The Sale of the Assets Pursuant to the  APA is
         Authorized By Bankruptcy Code Section 363(b)**

35.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  Section 105(a) provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title." 11 U.S.C. § 105(a).

36. A sale of a debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business justification exists for doing so. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991). The *Delaware & Hudson Railway* court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under *McClung* and *Lionel*, observing:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the assets; and whether the asset is decreasing or increasing in value.

124 B.R. at 176.

37. The *Delaware & Hudson Railway* court further held that "[o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith." *Id.*

38. The Debtor has proposed the sale of the Assets after thorough consideration of viable alternatives, and has concluded that the sale is supported by a number of sound business reasons. Hence, the Debtor has determined that a sale of the Debtor's assets, including the Purchased Assets pursuant to the APA, provides the best and most efficient means for the Debtor to maximize the value of these particular assets for its estate.

39.     The Debtor submits that the sale of the Assets is justified by sound business reasons and is in the best interests of the Debtor and its estate.  Accordingly, pursuant  to section 363(b) of the Bankruptcy Code, the Debtor requests approval of the sale to the Successful Bidder pursuant to the APA, as such may be modified.

**C.     The Sale of Assets Free and Clear of Liens, Claims and Interests is Authorized Under Bankruptcy Code Section 363(f)**

40.     Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property  of an entity other than the estate, only if –
>
> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such Acquired Assets;
>
> (4)     such interest is in a bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)

41.     As quoted above, section 363(f) of the Bankruptcy Code provides for the sale of assets "free and  clear of any interests."  The term "any interest," as used in section 363(f), is not defined anywhere in the Bankruptcy Code. *Folger Adam Security, Inc. v. DeMatteis / MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000).

42.     In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." 209 F.3d at 258.  The court observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from  ownership of the property." *Id.* at 258 (citing 3 Lawrence P. King, *Collier on Bankruptcy*, 363.06[1]).

43.     As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d

17

573, 581-82 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of 11 U.S.C. § 363(f) is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under §363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

44. The language of Section 363(f) is in the disjunctive, so that a sale free and clear of interests can be approved if any one of the enumerated conditions is satisfied. *In re Heine*, 141 B.R. 185, 189 (Bankr. D.S.D. 1992); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

45. As made clear by the statute, under Section 363(f)(2), a bankruptcy debtor may sell estate property free and clear of interests where the interest holders consent to such a sale. 11 U.S.C. § 363(f)(2). The requisite consent may either be express or implied from the circumstances surrounding the sale.

46. Here, the sale of the Assets free and clear of Interests, except with respect to any "claims" that constitute Assumed Liabilities under the APA or otherwise are expressly assumed by the Successful Bidder in the APA, should be approved under Section 363(f)(2) of the Bankruptcy Code by virtue of the express consent of the DIP Lender to a sale of the Assets, provided that its Interests attach to the proceeds of the sale with the same validity (or invalidity), priority and perfection as existed immediately prior to the sale.

47. To the extent that any other creditor with an Interest in the Assets receives notice of the sale and does not file an objection, such creditor should be deemed to have implicitly consented to the contemplated transactions. *See Veltman v. Whetzal*, 93 F.3d 517 (8th Cir. 1996) (failure to object to proposed sale, coupled with agreement to stipulate regarding authority to sell free of interest, constituted consent to the sale free and clear of interests); *Hargrove v. Pemberton (In re Tabore, Inc.)*, 175 B.R. 855 (Bankr. D.N.J. 1994) (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of § 363); *In re Shary*, 152 B.R. 724 (Bankr. N.D. Ohio 1993) (failure to object to transfer of liquor license issued by state constituted consent to sale). Therefore, either expressly or implicitly, the requirements of Section 363(f)(2)

18

for the sale or transfer of the Assets free and clear of interests, including the Interests, will be satisfied.

48.    Thus, the sale should be free and clear of such Interests. Additionally, the Debtor submits that authorizing the Debtor to sell the Assets free and clear of "successor liability" type claims also is justified under *Folger Adam* and *Leckie*.

**D.    The Successful Bidder is a Good Faith Purchaser and is Entitled to the Full Protections of Bankruptcy Code Section 363(m)**

49.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

50.    While the Bankruptcy Code does not define "good faith," the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986), has stated:

> [t]he requirement that a purchaser act in good faith…speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788F.2d at 147 (citations omitted).

51.    Moreover, the Second Circuit has indicated that a party would have to show fraud or collusion between the buyer and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. *See In re Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders").

52.    The Debtor intends to make an appropriate showing at the Sale Hearing that the

19

APA, as such may be modified, with the Successful Bidder (as defined in the Bidding Procedures) is the result of a vigorous negotiation process in which all parties acted at arm's-length and in good faith at all times, and in which all parties were represented by sophisticated counsel and advisors. With respect to potential bidders, the Bidding Procedures are designed to ensure that no party is able to exert undue influence over the process. The Debtor thus requests that this Court find that the sale of the Assets and the assignment of the Assumed and Assigned Leases are in good faith within the meaning of section 363(m) of the Bankruptcy Code. Under the circumstances, the Successful Bidder (as defined in the Bidding Procedures) should be afforded the protection that Section 363(m) of the Bankruptcy Code provides to a good faith purchaser. Furthermore, the Bidding Procedures are designed to prevent the Debtor or the Successful Bidder from engaging in conduct that would cause or permit Successful Bidder to be avoided under Section 363(n) of the Bankruptcy Code.

53.     All parties in interest will receive notice of the sale and will be provided with an opportunity to be heard. Additionally, all counterparties to the Assumed Leases will be provided notice of assumption and assignment and an opportunity to be heard. The Debtor submits that notice is adequate for entry of the Sale Order and satisfies the requisite notice provisions required under Sections 363(b) and 365 of the Bankruptcy Code.

**E.      The Court Should Approve the Assumption, Assignment and Sale of Assumed And Assigned Contracts**

54.     As required by APA, the Debtor requests approval of the assumption, assignment and sale of the Assumed and Assigned Contracts to the Successful Bidder.

55.     The Assumed and Assigned Contracts are those unexpired leases and executory contacts that are to be assumed by the Debtor and assigned and sold to the Successful Bidder as part of the sale transaction under the APA, as such APA may be modified. The Debtor further requests that the Sale Order provide that the Assumed and Assigned Contracts will be assigned to, and remain in full force and effect for the benefit of the Successful Bidder notwithstanding any provisions in the Assumed and Assigned Contracts, including those described in sections

365(b)(2) and (f)(l) and (3) of the Bankruptcy Code, that prohibit such assignment.

56.     Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A)     the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease. 11 U.S.C. § 365(f)(2).

57.     Under section 365(a), a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(l) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B)     compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)     provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

58.     Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor in possession's decision to assume an executory contract, it is well established that the decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See In re Taylor*, 913 F.2d 102 (3d Cir. 1990); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36 (3d Cir. 1989). Accordingly, assumption or rejection of any executory contract is appropriate where

21

the assumption or rejection would benefit the estate. *Sharon Steel*, 872 F.2d at 39-40.

59.     The assumption, assignment and sale of the Assumed and Assigned Contracts will be a necessary part of the  APA and, as stated above, will benefit the Debtor's estate.  Indeed, absent the Debtor's ability to assume, assign and sell the Assumed and Assigned Contracts, it is unclear whether the Successful Bidder will consummate the transaction.

60.     The Debtor shall be responsible for the timely payment of any and all applicable Cure Amounts.  The Successful Bidder is responsible for providing evidence of "adequate assurance of future performance" to the extent required in connection with the assumption and assignment of any Assumed and Assigned Contract.  The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and make a profit).  To the extent necessary, the Successful Bidder Bidder shall provide evidence of its ability to provide adequate assurance to relative to the Assumed and Assigned Contracts at the Sale Hearing.

**F.      Relief under Bankruptcy Rules
        6004(h) and 6006(d) is Appropriate**

61.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the  court orders otherwise." Fed. R. Bankr. P. 6004(h).   Also, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease … is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).  The Debtor requests that any order approving the Bidding Procedures be effective immediately by providing that the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) are waived.

62.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed, R. Bankr. P. 6004(h) and 6006(d). Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the day stay period, *Collier* suggests that the stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Lawrence P. King, *Collier on Bankruptcy*, 6004.10 (15th rev. ed. 2006). *Collier* further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party. *Id.*

63.     As described above, time is clearly of the essence.  The Debtor is required to meet certain case milestones under the postpetition DIP credit agreement with the DIP  Lender.  A prompt closing of the Sale is therefore of critical importance and the Debtor requests that any Sale Order be effective immediately by providing that the 14-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

64.     The Debtor, requests that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d) or, in the *alternative*, if an objection to the sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to seek a stay pending appeal.

## **NOTICE AND PROCEDURES THEREFOR**

65.     The Debtor proposes to serve a copy of the Motion (without exhibits) and the Bidding Procedures Order (without exhibits) by overnight delivery or other expeditious means (*i.e.*, electronic mail) upon (i) the Office of the United States Trustee for the District of New Jersey; (ii) counsel for the Creditors' Committee; (iii) counsel to the DIP lender; and (iv) all other parties that have filed a notice of appearance and  demand for service of papers in this chapter 11

case under Bankruptcy Rule 2002 (the "**Bidding Procedures Notice Parties**").

66.    Provided the Court enters the proposed Bidding Procedures Order, the Debtor requests that pursuant to the Bidding Procedures Order, no later than one (1) day after entry of the Bidding Procedures Order, the Debtor shall serve a copy of the Bidding Procedures Order (including the Notice of Auction and Sale Hearing substantially in the form attached as Exhibit B thereto) upon the following by first-class mail: upon (i) the Office of the United States Trustee for the District of New Jersey; (ii) counsel for the Committee; (iii) counsel to the DIP lender; (iv) all other entities (or counsel therefor) known to have asserted any liens, claims or encumbrances in or upon the Assets; (vi) all federal, state and local regulatory or taxing authorities that are reasonably known by the Debtor to have an interest in the relief requested by the Motion; (vii) all parties known by the Debtor to have expressed a *bona fide* interest in acquiring the Assets; (viii) the Internal Revenue Service; (ix)  the United States Attorney's office;  and (x) all entities who have filed a notice of appearance  and request for service of papers in the Debtor's case (collectively, the "**Auction and Sale  Notice Parties**").

67.    Additionally, no later than two (2) days after entry of the Bidding Procedures Order by the Bankruptcy Court, the Debtor shall cause the Notice of Auction and  Sale Hearing substantially in the form attached as Exhibit B to the Bidding Procedures Order to be served upon all other known creditors of the Debtor.

68.    In addition, to facilitate a potential sale that would involve the assumption and assignment of certain of the Debtor's unexpired leases, license agreements, and executory contracts (collectively referred to as the "**Designated Leases**"), the Debtor proposes to serve the Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases of Non-Residential Real Property (the "**Assignment Notice**"), in the form attached as Exhibit C to the Bidding Procedures Order, not later than two (2) days after the entry of the Bidding Procedures Order and requests that the Court approve the following procedures for fixing any cure amounts owed on all unexpired leases, license agreements and executory contracts:  The Debtor will attach

to the Assignment Notice its calculation of the undisputed cure amounts that the Debtor believes are to be paid to cure all defaults under all unexpired leases, license agreements and executory contracts (the "*Cure Amounts*").    If no amount is listed on the Assignment Notice, the Debtor believes that there is no Cure Amount. The Debtor requests that unless the non-debtor party to an unexpired lease, license agreement or executory contract files and serves an objection (the "*Cure Amount Objection*") to its scheduled Cure Amount on or before 4:00 p.m. (prevailing Eastern time) on January 12, 2026, so as to be received no later than 4:00 p.m. on the same day, upon: (i) Work 'N Gear, LLC, Attn: Larry Nusbaum at larry@workngear.com; (ii) A.Y. Strauss LLC, as counsel to the Debtor, 290 West Mount Pleasant Avenue, Suite 3260, Livingston, New Jersey 07039, Attn: Eric H. Horn, Esq. (ehorn@aystrauss.com) and David S. Salhanick, Esq. (dsalhanick@aystrauss.com); (iii) KCP Advisory Group, LLC, financial advisor to the Debtor, 700 Technology Park Drive, Suite 212, Billerica, MA  01821, Attn: Margie Kaufman, CTP (mkaufman@kcpadvisory.com); (iv) Genova Burns LLC, DIP Lender to the Debtor, Genova Burns LLC, 494 Mayor Kenneth A. Gibson Blvd., Newark, NJ 07102, Attn: Donald W. Clarke, Esq.(DClarke@genovaburns.com); and (v) Lowenstein Sandler LLP, as counsel to the Committee, One Lowenstein Drive, Roseland, New Jersey 07068, Attn: Colleen Restel, Esq. (crestel@lowenstein.com) and Kelly E. Moynihan, Esq. (KMoynihan@lowenstein.com), and subject to the Bidding Procedures Order, such non-debtor party should (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such unexpired lease, license agreement or executory contract and the Debtor shall be entitled to rely solely upon the Prepetition Cure Amount, and (b) be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder or any other assignee of the relevant unexpired lease, license agreement or executory contract that any additional amounts are due or defaults exist, or conditions to assumption and assignment must be satisfied under such unexpired lease, license agreement or executory contract.

69.    In the event that a Cure Amount Objection is timely filed, the Cure Amount Objection must set forth (i) the basis for the objection, and (ii) the amount the party asserts as the

Prepetition Cure Amount.  After receipt of the Cure Amount Objection, the Debtor will attempt to reconcile any differences in the Prepetition Cure Amount believed by the non-debtor party to exist.  In the event, however, the Debtor and the non-debtor party cannot consensually resolve the Cure Amount Objection and such dispute must be resolved, the Debtor will segregate any disputed cure amounts pending the resolution of any such disputes by this Court or mutual agreement of the parties.

70.     The Debtor further requests, pursuant to Fed. R. Bankr. P. 9014, that objections, if any, to the relief requested in the Sale Motion, including the assumption and assignment of any unexpired lease, contract or license agreement, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the Clerk of the Bankruptcy Court for the District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, on or before January 12, 2026 at 4:00 p.m. (prevailing Eastern Time) and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon the Bidding Procedures Notice Parties.

71.     The Debtor believes that the foregoing notice procedures to the Bidding Procedures Notice Parties, the Auction and Sale Notice Parties and other parties in interest is sufficient to provide effective notice of the Bidding Procedures, the Auction and the Sale to potentially interested parties in a manner designed to maximize the chance of obtaining the broadest possible participation while minimizing the costs to the estate.  Accordingly, the Debtor requests that the Court find that notice in this manner is sufficient and that no further notice of the Auction or the Bidding Procedures is required.

**HIGHLIGHTED DISCLOSURES**

72.     The Guidelines require specific disclosure of certain provisions affecting a sale of a debtor's assets, the justification therefor, and the location of any such provisions in the proposed sale order and any agreement related to the sale.  Prior to the hearing on the sale of the Assets, the Debtor will file with the Court such disclosures.

## NO PRIOR REQUEST

73.     No previous motion for relief requested herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that this Court enter the Bidding Procedures Order submitted herewith; and after a hearing on shortened notice (a) approving the Bidding Procedures; (b) approving the Bidding Protections; (c) scheduling an Auction and Sale Hearing; and (d) approving the Notice of Auction and Sale Hearing and Assignment Notice.  In addition, the Debtor respectfully requests that this Court at the Sale Hearing enter an order (a proposed draft form of which is attached hereto as **Exhibit 3**) authorizing the Debtor to sell the Assets free and clear of all liens, claims, encumbrances and interests.  The Debtor further requests that this Court grant such other and further relief as is just and proper.

Dated: December 4, 2025

**A.Y. STRAUSS LLC**

By:     */s/ Eric H. Horn*
Eric H. Horn, Esq.
David S. Salhanick, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-0966
Fax  (973) 533-0127

*Counsel to the Debtor
and Debtor in Possession*

Exhibit 1 to Motion

[Bidding Procedures Order]

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-2*

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
David S. Salhanick, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-0966
Fax  (973) 533-0127

*Counsel to the Debtor*
*and Debtor in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| Work 'N Gear, LLC, | Case No. 25-17472 (MEH) |
| Debtor. | |

**ORDER (A) APPROVING BIDDING PROCEDURES AND NOTICE**
**OF THE AUCTION RELATING TO SALE OF SUBSTANTIALLY ALL OF THE**
**DEBTOR'S ASSETS, (B) SCHEDULING HEARING TO CONSIDER SALE OF**
**SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (C) ESTABLISHING**
**PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT OF CERTAIN**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF**
**PROPOSED CURE AMOUNTS, AND (D) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through eight (8), is hereby

**ORDERED**.

\

Debtor:    Work 'N Gear, LLC
Case No.:   25-17472 (MEH)
Caption:    *Order Approving, Among Other Things, Bidding Procedures*

_____

Upon the Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a), 363 and 365, and Bankruptcy Rules 202, 6004 and 6006 for (i) Entry of an Order (a) Approving Bidding Procedures and Notice of the Auction Relating Thereto, (b) Scheduling Hearing to Consider Sale of Substantially all of the Debtor's Assets, and (ii) Entry of an Order (a) Authorizing and Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (b) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases as Necessary in Connection With the Sale, and (c) Granting Related Relief (the "***Motion***") seeking, among other things, the entry of  an order (the "***Bidding Procedures Order***"), pursuant to 11 U.S.C. §§ 105(a) and 363(b), (a) authorizing and approving certain bidding procedures (collectively, the "***Bidding Procedures***"), (b) approving form and manner of notice of the auction (the "***Auction***") for the Sale of the assets, (c) establishing procedures related to assumption and assignment of certain executory contracts and unexpired leases, including notice of proposed cure amounts, and (d) scheduling a hearing (the "***Sale Approval Hearing***") to consider the sale of substantially all of the Debtor's assets; and it appearing that the relief requested is in the best interest of the Debtor's estate; it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); it appearing that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion and the opportunity for a hearing on the Motion was appropriate and no other or further notice need by given; and, upon the statements of counsel, and any testimony or offer of proof as to testimony that may have been presented at the hearing; and after due deliberation and sufficient cause appearing therefore; it is hereby

Debtor: Work 'N Gear, LLC
Case No.: 25-17472 (MEH)
Caption: *Order Approving, Among Other Things, Bidding Procedures*

_____

**FOUND AND DETERMINED THAT:**

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014;

B. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. The relief requested in the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

C. Under the exigent circumstances, due, proper requisite, and sufficient notice of the Motion was provided, and no other or further notice need be provided, except as set forth herein with respect to the Sale Approval Hearing;

D. The Bidding Procedures substantially in the form annexed hereto as **Exhibit "A"** are fair, reasonable and appropriate, reflect the Debtor's exercise of prudent business judgment consistent with their fiduciary duties and are designed to maximize the value of the Debtor's estate;

E. The Debtor's proposed (i) Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases of Non-Residential Real Property and Executory Contracts (the "***Assignment Notice***"), and (ii) Notice of the Bidding Procedures, Auction and Sale Approval Hearing (the "***Notice of Auction***") are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the assumption and assignment of applicable executory contracts and unexpired leases of real property, the Sale Hearing and the Bidding Procedures to be employed in connection therewith, and complies with all applicable

Debtor:   Work 'N Gear, LLC

Case No.:  25-17472 (MEH)

Caption:   *Order Approving, Among Other Things, Bidding Procedures*

_____

provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules;

F.      The notice to be provided to all of the Debtor's known creditors pursuant to this Order is sufficient and no further notice with respect to the Motion, Bidding Procedures, Auction, Sale Approval Hearing or Sale is required;

G.      The entry of this Order is in the best interests of the Debtor, its estate, its creditors and interest holders, and all other parties in interest in this chapter 11 case;

H.      The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Assets; and  it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted.

2.      Any and all objections and reservations of rights are hereby overruled.

3.      The findings of fact set forth above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this matter pursuant to Bankruptcy Rule 9014.  To the extent that any finding of fact shall be later determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law shall be later determined to be a finding of fact, it shall be so deemed.

**The Bidding Procedures**

4.      The Bidding Procedures, in substantially the form attached hereto as **Exhibit "A"** are hereby incorporated by reference in this Order as if fully set forth herein and are hereby approved and the Debtor is authorized to take such actions as may be necessary to implement the Bidding Procedures.

5.      The Notice of Auction attached hereto as **Exhibit "B"** is hereby approved.

Debtor:   Work 'N Gear, LLC
Case No.: 25-17472 (MEH)
Caption:  *Order Approving, Among Other Things, Bidding Procedures*

_____

6.      The Assignment Notice attached hereto as **Exhibit "C"** is hereby approved.

7.      Not later than one (1) day after the entry of this Order, the Debtor shall serve a copy of this Order together will all exhibits hereto upon the following by first class mail: upon (i) the Office of the United States Trustee for the District of New Jersey; (ii) counsel for the Committee; (iii) counsel to the DIP lender; (iv) all other entities (or counsel therefor) known to have asserted any liens, claims or encumbrances in or upon the Assets; (v) all federal, state and local regulatory or taxing authorities that are reasonably known by the Debtor to have an interest in the relief requested by the Motion; (vi) all parties known by the Debtor to have expressed a *bona fide* interest in acquiring the Assets; (vii) the Internal Revenue Service; (viii)  the United States Attorney's office; and (ix) all entities who have filed a notice of appearance  and request for service of papers in the Debtor's case.

8.      Not later than two (2) days after entry of the this Order, the Debtor shall cause the Notice of Auction substantially in the form attached as **Exhibit "B"** hereto to be served, via first class mail, upon all other known creditors of the Debtor.

9.      Not later than two (2) days after the entry of this Order, the Debtor shall serve the Assignment Notice on the non-debtor parties to an applicable unexpired lease of non-residential real property or executory contact that the Debtor may seek to assume and assign to the Successful Bidder, pursuant to the following procedures:

> (i)     The Debtor will attach to the Assignment Notice its calculation of the undisputed cure amounts that the Debtor believes are to be paid to cure all defaults under all unexpired leases, license agreements and executory contracts (the "***Cure Amounts***").  If no amount is

Debtor:    Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:   *Order Approving, Among Other Things, Bidding Procedures*

listed on the Assignment Notice, the Debtor believes that there is no Cure Amount. The Debtor requests that unless the non-debtor party to an unexpired lease, license agreement or executory contract files and serves an objection (the "***Cure Amount Objection***") to its scheduled Cure Amount on or before 4:00 p.m. (prevailing Eastern time) on January 12, 2026, so as to be received no later than 4:00 p.m. on the same day, upon: (i) Work 'N Gear, LLC**,** 10 Forbes Road, Suite 300 West, Braintree, MA 02184, Attn: Larry Nusbaum**;** (ii) A.Y. Strauss LLC, as counsel to the Debtor, 290 West Mount Pleasant Avenue, Suite 3260, Livingston, New Jersey 07039, Attn: Eric H. Horn, Esq. (ehorn@aystrauss.com) and David S. Salhanick, Esq. (dsalhanick@aystrauss.com); (iii) KCP Advisory Group, LLC, financial advisor to the Debtor, 700 Technology Park Drive, Suite 212, Billerica, MA 01821, Attn: Margie Kaufman, CTP (mkaufman@kcpadvisory.com); (iv) Genova Burns LLC, DIP Lender to the Debtor, Genova Burns LLC, 494 Mayor Kenneth A. Gibson Blvd., Newark, NJ 07102, Attn: Donald W. Clarke, Esq.(DClarke@genovaburns.com); and (v) Lowenstein Sandler LLP, as counsel to the Committee, One Lowenstein Drive, Roseland, New Jersey 07068, Attn: Colleen Restel, Esq. (crestel@lowenstein.com) and Kelly E. Moynihan, Esq. (KMoynihan@lowenstein.com), and subject to the Bidding Procedures Order, such non-debtor party should (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such unexpired lease, license agreement or executory contract and the Debtor shall be entitled to rely solely upon the Prepetition Cure Amount, and (b) be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder or any other assignee of the relevant unexpired lease, license agreement or executory contract that any additional amounts are due or defaults exist, or conditions to assumption and assignment must be satisfied under such unexpired lease, license agreement or executory contract.

(ii)    In the event that a Cure Amount Objection is timely filed, the Cure Amount Objection must set forth (i) the basis for the objection, and (ii) the amount the party asserts as the Prepetition Cure Amount. After receipt of the Cure Amount Objection, the Debtor will attempt to reconcile any differences in the Prepetition Cure Amount believed by the non-debtor party to exist. In the event, however, the Debtor and the non-debtor party cannot consensually resolve the Cure Amount Objection and such dispute must be resolved, the Debtor will segregate any disputed cure amounts pending the resolution of any such disputes by this Court or mutual agreement of the parties.

Debtor:    Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:   *Order Approving, Among Other Things, Bidding Procedures*

_____

10.    Objections, if any, to the relief requested in the Motion for the entry of an order pursuant to 11 U.S.C. §§ 105(a), 363(b) and 365(a) (a)  authorizing and approving the sale of the Debtor's assets free and clear of liens, claims, charges, encumbrances, and interests, (b) authorizing and approving the asset purchase agreement(s) with respect thereto, (c) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases as necessary in connection with the sale, and (d) granting related relief (such aspects of the Motion referred to as the "***Sale Motion***"), including to the assumption and assignment of any unexpired lease of non-residential real property and or executory contract and adequate assurance of the purchaser's ability to perform under such unexpired lease of non-residential real property (an "***Adequate Assurance Objection")*** (but excluding the Cure Amount set forth in paragraph 9(i) above) must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, on or before January 12, 2026 at 4:00 p.m. (prevailing Eastern Time) and (d) be served so as to be <u>received</u> no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon the notice parties identified above in Paragraph 9(i).

11.    The failure specifically to include or reference any particular provision, section or article of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedures, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

12.    A hearing on the approval of the Sale Motion shall be held on January 15, 2026 at 10:00 a.m. (prevailing Eastern Time) before the Honorable Mark E. Hall, United States

Debtor:   Work 'N Gear, LLC
Case No.:   25-17472 (MEH)
Caption:   *Order Approving, Among Other Things, Bidding Procedures*

Bankruptcy Judge, at the United States Bankruptcy Court, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608.

13.     Any Qualified Bidder that participates in the Auction shall confirm that it has not engaged in collusion with respect to the bidding or sale.

14.     This Order shall be binding upon and inure to the benefit of the Successful Bidder and its affiliates, successors and assigns, and the Debtor, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estate of the Debtor, whether in this chapter 11 case or a subsequent bankruptcy case or upon dismissal of this case.

15.     As provided by Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after the entry thereof and shall be effective and enforceable immediately upon its entry on this Court's docket.

16.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

Exhibit A to Bidding Procedures Order

[Bidding Procedures]

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-2*

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
David S. Salhanick, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-0966
Fax  (973) 533-0127

*Counsel to the Debtor*
*and Debtor in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| Work 'N Gear, LLC, | Case No. 25-17472 (MEH) |
| Debtor. | |

**BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "***Bidding Procedures***") that have been approved by the United States Bankruptcy Court for the District of New Jersey (the "***Court***") pursuant to that certain Order dated December \_\_\_\_, 2025 (the "***Bidding Procedures Order***") and which shall govern the bid procedures for the sale of substantially all of, or a portion of, the assets (the "***Assets***") of Work 'N Gear, LLC, the above-captioned debtor and debtor in possession (the "***Debtor***") subject to the terms of an asset purchase agreement (the "***APA***").

**I.      Assets to Be Auctioned**

The Debtor is currently seeking to sell substantially all of its Assets, or any portion thereof, to the person or entity making the most value maximizing bid through the process outlined in these Bidding Procedures.  These Assets include, but are not limited to:

1.      All inventory, all pre-paid  inventory and in-transit inventory;

2.      All Credit Card Accounts and Third Party Customer Receivables;

3.      All unexpired leases and executory contracts;

4.      All intellectual property, to the extent transferrable and assignable;

5. All fixed assets and equipment (the "*FF&E*"), wherever located, that are used to operate the locations subject to any assumed real property leases (the "*Acquired Locations*");

6. All customer data and customer management relationship software relating to the Debtor's business and in connection with the Acquired Locations;

7. All security deposits relating to any assumed unexpired leases and executory contracts;

8. All goodwill arising in connection with the Acquired Locations; and

9. All books and records relating to the Acquired Locations but excluding any such books and records that are subject to attorney-client or similar privilege.

## II. Provisions Governing Qualification of Bidders

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing the Assets or part of the Assets (a "*Potential Bidder*") must deliver or have previously delivered to the Debtor the following preliminary documentation:

(a) an executed confidentiality agreement in form and substance acceptable to the Debtor no later than January 2, 2026 at 5:00 p.m., prevailing Eastern Time; and

(b) such financial and other information (the "*Financial Information*") as the Debtor, in consultation with the Official Committee of Unsecured Creditors (the "*Creditors' Committee*"), shall reasonably deem necessary to provide sufficient support for the ability of the potential bidder to consummate a transaction to purchase the Assets, if such potential bidder is selected as the Successful Bidder.

## III. Access to Due Diligence Materials

The Debtor will afford Potential Bidders the opportunity to conduct reasonable due diligence, subject to parameters that the Debtor, in consultation with its advisors and the Creditors' Committee, determine are business-sensitive or otherwise not appropriate for disclosure to such Potential Bidder in order to avoid disclosure of competitively sensitive or proprietary information that could be damaging to the value of the Debtor's estate if disclosed to a Potential Bidder in actual or potential competition with the Debtor or strategically situated with respect to the Debtor as an actual or potential supplier or customer. The Debtor will continue to maintain its electronic data room and make it available to any Potential Bidder that has executed a confidentiality agreement. The due diligence period shall extend through and including the Bid Deadline (as defined below). The Debtor and its representatives and advisors may, but shall not be obligated

to, furnish any due diligence information after the Bid Deadline.

### IV.      Consideration of Bids

Without limiting the foregoing, the Debtor may consider bids (each, a "***Bid***") for all of the Assets in a single bid from a single bidder or multiple bids from multiple bidders.  The Debtor shall determine, in consultation with the Debtor's postpetition secured lender (the "***DIP Lender***")[1] and of the Creditors' Committee, the Successful Bidder (as defined below) based on, but not limited to, the Assets purchased, the assumption of certain liabilities, the purchase price for the Assets, and the value to the estate and the other Bid Assessment Criteria (as defined below).

The purchased Assets shall be sold pursuant to section 363 of the Bankruptcy Code free and  clear of all liens and other interests in the purchased Assets with certain exceptions, which exceptions are to be assumed to the extent so specified under the Successful Bidder's asset purchase agreement, or satisfied at closing from the cash proceeds received in connection with the purchase of such purchased Assets; provided that liens, if any, on any of the purchased Assets shall attach to the proceeds of such Assets with the same validity, force, and effect.

### V.       Marketing Process and Due Diligence

The Debtor has provided and will continue to provide confidential information regarding the Assets to Potential Bidders (the "***Initial Information***").  Before receiving Initial Information, each potential purchaser must execute a confidentiality agreement, in a form satisfactory to the Debtor.  The Debtor will make the Initial Information and other information available electronically through a data room. The Debtor may, but is not obligated to, furnish any due diligence information after the Bid Deadline to Qualified Bidders (as defined below) or to any entity that the Debtor determines.  The Debtor will advise the Creditors' Committee within one (1) day of all requests for information received, including the name of the requesting party and the information provided. .

### VI.      Bid Deadline

All Bids must be served upon and actually received by the Debtor, counsel to the Debtor, financial advisor to the Debtor, counsel to the DIP Lender, and counsel to the Creditors' Committee, on or before **5:00 p.m., prevailing Eastern Time, on January 5, 2026** (the "*Bid Deadline*").  Bids must be sent to: (i) Work 'N Gear, LLC**,**  Attn: Larry Nusbaum at larry@workngear.com; (ii) A.Y. Strauss LLC, as counsel to the Debtor, 290 West Mount Pleasant Avenue, Suite 3260, Livingston, New Jersey 07039, Attn: Eric H. Horn, Esq. (ehorn@aystrauss.com) and David S. Salhanick, Esq. (dsalhanick@aystrauss.com); (iii) KCP Advisory Group, LLC, financial advisor to the Debtor, 700 Technology Park Drive, Suite 212, Billerica, MA  01821, Attn: Margie Kaufman, CTP (mkaufman@kcpadvisory.com); (iv) Genova Burns LLC, DIP Lender to the Debtor, Genova Burns LLC, 494 Mayor Kenneth A. Gibson Blvd., Newark, NJ  07102, Attn: Donald W. Clarke, Esq.(DClarke@genovaburns.com); and (v)

---

[1] To the extent that the DIP Lender, any of its affiliates, subsidiaries or other related parties submit a bid for the Assets, the DIP Lender shall not have any consultation rights with respect to the sale process and matters set forth herein, including the evaluation and qualification of Qualified Bids (as defined below) for the Assets.

Lowenstein Sandler LLP, as counsel to the Committee, One Lowenstein Drive, Roseland, New Jersey 07068, Attn: Colleen Restel, Esq. (crestel@lowenstein.com) and Kelly E. Moynihan, Esq. (KMoynihan@lowenstein.com) (collectively, the "*Notice Parties*").

## VII.    Qualified Bid Requirements

The Debtor will determine, after consultation with the DIP Lender and the Creditors' Committee, and subject to the Bidding Procedures and the requirements below, whether a Bid is a Qualified Bid (as defined below).

Any entity that desires to submit a Bid to purchase the Assets or any portion thereof may do so in writing as follows:

(i)     All Bids must state that the Potential Bidder offers to purchase all or substantially all of the Assets, or a specified portion of the Assets and specify which Assets are proposed to be purchased;

(ii)    All Bids must include a clean and duly executed asset purchase agreement, blacklined to show any changes from the form asset purchase agreement provided to Potential Bidders by the Debtor ("*Modified Purchase Agreement*"), clearly setting forth, among other things, any conditions for closing and stating that the Bid is irrevocable as set forth below;

(iii)   all Bids must be accompanied by a cashier's check or a wire transfer payable and delivered to the Debtor, its counsel or other agreed upon escrow agent of ten percent (10%) of the aggregate purchase price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtor (the "*Good Faith Deposit*").  To the extent that a Bid is modified at or prior to the Auction (defined below), the applicable bidder must adjust its Good Faith Deposit that it equals ten percent (10%) of the increased aggregate purchase price promptly and in no event later than one (1) business day following the conclusion of the Auction;

(iv)   the Bid must identify with particularity each and every unexpired lease or executory contract (each, an "*Assumed And Assigned Contract*") sought to be assumed and assigned, the assumption and assignment of which is a condition precedent to closing;

(v)    a Bid must set forth in the applicable asset purchase agreement the bidder's proposal with respect to payment of cure amounts with respect to any assumed unexpired leases and executory contracts;

(vi)   a Bid must clearly set forth the purchase price to be paid, and must not request or entitle such Potential Bidder to any expense reimbursement, breakup fee, termination or other similar type of fee or payment;

4

(vii)     a Bid shall not be contingent upon any due diligence investigation, any permitting requirements (*e.g.*, building permits, licenses, inspections, zoning, approvals, or certificates of any kind), any material adverse change, the receipt of financing, or approval by any board of directors, shareholders, or other entity;

(viii)    a Bid must include evidence, including financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to the Debtor, upon consultation with the DIP Lender and the Creditors' Committee) sufficient to establish financial wherewithal of the Potential Bidder to complete the contemplated transactions and, to the extent the Potential Bidder will rely upon the financial wherewithal of an affiliate, franchisor, bid partner, or other sponsor (each, a "***Sponsor***"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

(ix)      a Bid must contain such financial and/or other information that will allow the Debtor, following consultation with the DIP Lender and the Creditors' Committee, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transactions contemplated by the Bid, including such financial and other information setting forth adequate assurance of future performance under Section 365 of the Bankruptcy Code in a form requested by the Debtor to allow the Debtor to serve on counterparties to any contracts or leases being assigned in connection with the proposed sale that have requested, in writing, such information;

(x)       Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Bid, including each equity holder or other financial backer of the bidder (including if such bidder is an entity formed for the purpose of consummating the transactions contemplated by such Bid), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom the Debtor should contact regarding such Bid;;

(xi)      The Potential Bidder must (a) acknowledge in writing that it has not engaged in any collusion with respect to any Bids or the sale transaction(s), specifying that it did not agree with any Qualified Bidders or Potential Bidders to control price or otherwise with

5

respect to any of the Assets or the sale transaction(s) and processes contemplated by the Bidding Procedures; and (b) agree not to engage in any collusion with respect to any Bids, the Auction, or the sale transaction(s).  For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors', in consultation with the Creditors' Committee, prior written consent (email shall suffice);

(xii)    each Bid must contain evidence that the Potential Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

(xiii)    a Bid must state that the bidder is willing and able to consummate and fund the proposed transaction by no later than January 31, 2026

(xiv)    a Bid must disclose any agreements or understandings between the Potential Bidder and any third party with respect to the Assets or with respect to any transaction involving the Debtor;

(xv)    a Bid must clearly state that it is irrevocable through the conclusion of the Sale Hearing, provided that if such bid is accepted as the Successful Bid or the Backup Bid (as defined below), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures, through the closing of the sale transaction;

(xvi)    each Bid shall provide that the Potential Bidder will serve as a Back-Up Bidder (as defined below) is its Bid is the next highest or otherwise best Bid with respect to the applicable Assets;

(xvii)    each Bid must include a written acknowledgement and representation that the Potential Bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the sale transaction(s) prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; (iii) did not rely on or receive from any person or entity (including any of the Debtor or its advisors or other representatives) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith or the Auction (if any), except as expressly stated in the Potential Bidder's purchase agreement; and (iv) did not engage in collusive conduct and acted in good faith in submitting its

6

Bid; and

(xviii)  each Bid must indicate whether the Potential Bidder intends to hire all employees of the Debtor.

Notwithstanding anything to the contrary in these Bidding Procedures, the Bid of the Successful Bidder (as defined below) must remain irrevocable in accordance with the terms of the asset purchase agreement executed by the Successful Bidder in connection with the Successful Bid. All other Bids must be irrevocable until the earlier to occur of (a) 25 days after entry of a Sale Order (as defined below) approving the sale of all or substantially all of the Debtor's assets and (b) closing of the sale of all or substantially all of the Debtor's Assets in accordance with the Successful Bid (as defined below).

Notwithstanding anything to the contrary in these Bidding Procedures, the Debtor reserves the right, after consultation with the DIP Lender and the Creditors' Committee, to reject any and all Bids.

## VIII.    Evaluation of Qualified Bids

The DIP Lender and the Creditors' Committee shall be given the opportunity to review all Bids and any information and documentation, financial or otherwise, required of potential bidders by the Debtor prior to the Debtor's selection of Qualified Bidders (as defined below). The Debtor may request additional information from a Potential Bidder to better evaluate the bidder's ability to consummate a transaction and to fulfill its obligations in connection therewith, and such bidder shall be obligated to provide such information as a precondition to participating further in the Auction (as defined below).

The sufficiency of any submitted Bid will be at the discretion of the Debtor after consultation with the Creditors' Committee. The Debtor shall promptly as practicable notify Potential Bidders who have (a) returned a signed confidentiality agreement, (b) timely submitted the information and documentation listed above in Sections VII (i) through (xviii), and (c) who have financial qualifications satisfactory to the Debtor, in consultation with the DIP Lender and the Creditors' Committee, that they have been selected as a qualified bidder (each a "*Qualified Bidder*") and that their Bid is a "*Qualified Bid*."

The submission of information and documentation to the Debtor will be deemed to be the bidder's consent for the Debtor and its advisors to share any information submitted by the bidder to the DIP Lender and the Creditors' Committee.

## IX.    The Auction

If one or more Qualified Bids received by the Bid Deadline, the Debtor will conduct an auction (the "*Auction*") to determine the highest or otherwise best Qualified Bid. This determination shall take into account any factors the Debtor, in consultation with Creditors' Committee, reasonably deems relevant to the value of the Qualified Bid to the estate, including, among other things, the following: (a) the amount and nature of the consideration and net benefit to the estate; (b) the nature of any modifications to any form asset purchase agreement

7

requested by each bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Debtor's Assets and the cost to the Debtor of such modifications or delay; (d) the likelihood of the bidder's ability to close a transaction and the timing thereof; and (e) the impact of the transaction on any actual or potential litigation (collectively, the "**Bid Assessment Criteria**").   Unless otherwise agreed to by  the Debtor after consultation with the Creditors' Committee, only Qualified Bidders may participate in the Auction.

If an Auction is held, it will be conducted on **January 8, 2026 at 10:00 a.m. prevailing Eastern Time** (the "*Auction Date*") at the offices of A.Y. Strauss LLC, located at 290 West Mount Pleasant Avenue, Suite 3260, Livingston, New Jersey 07039, and shall be conducted according to the following procedures:

### a.   The Debtor Shall Conduct the Auction.

The Debtor and its professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtor shall describe the terms of the highest or otherwise best Qualified Bid received prior to the Bid Deadline (the "*Auction Baseline Bid*").  Each Qualified Bidder participating in the Auction must again confirm that it has not engaged in any collusion with respect to the bidding  or sale of the Assets.

Only the Debtors, the DIP Lender, the Creditors' Committee, Stalking Horse Bidder(s) (if any), any other Qualified Bidders, and/or other parties as the Debtors may determine to include in their discretion (in consultation with the DIP Lender and the Creditors' Committee), in each case along with their representatives and advisors, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make any Overbids (as defined below) at the Auction. The Qualified Bidders and any other authorized attendees shall appear in person or through duly authorized representatives at the Auction

### b.   Terms of Overbids.

An overbid (an "*Overbid*") is any bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid.  To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

### i.   Minimum Overbid Increment.

An Overbid after the Auction Baseline Bid shall be made in an initial minimum increment of $50,000 and minimum subsequent Overbid increments of not less than $50,000, unless otherwise agreed to by the Debtor, the Creditors' Committee, and the DIP Lender. Additional consideration in excess of the amount set forth in the Auction Baseline Bid may include cash and/or noncash consideration. To the extent that a stalking horse bidder is designated by the Debtor and approved by the Court, the initial Overbid above the Auction Baseline Bid shall be (i) $50,000 plus (ii) the amount of any bid protections, including any break-up fee and expense reimbursement, due to the stalking horse bidder, if any.

### ii.   Remaining Terms Are the Same as for Qualified Bids.

Except as modified herein, an Overbid must comply with the conditions for a Qualified

Bid set forth above, *provided, however,* that the Bid Deadline shall not apply.  Any Overbid must remain open and binding on the Bidder until and unless the Debtor accepts a higher or otherwise better Overbid.

To the extent not previously provided (which shall be determined by the Debtor in consultation the Creditors' Committee), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) demonstrating such Bidder's ability to close all proposed transactions contemplated in and proposed by such Overbid.

### iii.   Announcing Overbids.

The Debtor shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtor's estate based on, *inter alia*, the Bid Assessment Criteria.

### iv.   Consideration of Overbids.

The Debtor reserves the right, in its reasonable business judgment and after consultation with the Creditors' Committee to make one or more continuances of the Auction over the course of the day to, among other things: facilitate discussions between the Debtor and individual bidders; allow individual bidders to consider how they wish to proceed; and give bidders the opportunity to provide the Debtor with such  additional evidence as the Debtor in its reasonable business judgment may require that the bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed competing transaction represented by the Overbid at the prevailing Overbid amount.

At the conclusion of the Auction, and subject to Court approval following the Auction, the successful Bid(s) shall be selected and announced by the Debtor, in consultation with the DIP Lender and with the consent of the Creditors' Committee (the "***Successful Bid(s)***"), and the backup Bid or Bids shall be selected and announced by the Debtor, in consultation with the DIP Lender and with the consent of the Creditors' Committee (the "***Backup Bid(s)***").

Within 24 hours of completion of the Auction, the entity or entities that made the Successful Bid(s) (the "***Successful Bidder***") and the entity or entities that made the Backup Bid(s) shall complete and sign all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which such Successful Bid(s) and Backup  Bid(s) were made.

The Auction may be adjourned or canceled as the Debtor, after consultation with the DIP Lender and with the consent of the Creditors' Committee, deems appropriate.  Reasonable notice of such adjournment and the time and place for the resumption of the Auction or cancellation shall be given to all participants and to the DIP Lender and the Creditors' Committee.

### X.   Selection of Successful Bid or Bids

The Debtor reserves the right, after consultation with the DIP Lender and the Creditors' Committee, to base the selection of the Successful Bid and Backup Bid (as defined below) on the

Bid Assessment Criteria, among others. The Debtor may, after consultation with the DIP Lender and the Creditors' Committee, (a) reject any Bid that, after consultation with the DIP Lender and the Creditors' Committee, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtor, its estate and creditors and/or (b) refuse to consider any Bid that fails to comply with the Bidding Procedures or any other procedures established by the Debtor.

Within 24 hours after conclusion of the Auction, the Debtor shall file a notice identifying the Successful Bidder and Back-Up Bidder with the Bankruptcy Court.

Within one (1) business day of the selection of the Successful Bidder(s), such Successful Bidder(s) (including any Back-Up Bidder(s)) shall make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate purchase price such that the Good Faith Deposit and additional deposit equal ten percent (10%) of the increased aggregate purchase price, submitted by wire transfer of immediately available funds to an escrow account identified and established by the Debtor.

## XI.    Backup Bids

If the Successful Bidder fails to consummate the sale, breaches the applicable asset purchase agreement or otherwise fails to perform, upon consultation with the DIP Lender and the Creditors' Committee, the Debtor may consummate the proposed sale with the next highest or otherwise best bidder at the Auction (*i.e.*, the Backup Bidder, which hereafter shall be included in the definition of "***Successful Bidder***") without the need for further Court approval.

## XII.    Damages for Failure to Close

If the Successful Bidder fails to consummate the sale in accordance with the terms of its Successful Bid and applicable asset purchase agreement: (a) the Debtor will retain the Good Faith Deposit of such bidder , and (b) the Debtor will maintain the right to pursue all available remedies against such bidder.

Notwithstanding anything to the contrary in these procedures, the Good Faith Deposit of the Successful Bidder will be retained and credited against the purchase price by the Debtor in accordance with the terms of the applicable asset purchase agreement executed by the Successful Bidder. Deposits of all other bidders will be retained by the Debtor until the earlier to occur of (i) twenty-five days after entry of a Sale Order approving the sale of the Assets or (ii) closing of the sale of Assets in accordance with the Successful Bid.

## XIII.    Sale Hearing

A hearing with respect to the Sale Motion will be conducted by the Court on **January 15, 2026 at 10:00 a.m. prevailing Eastern Time** (the "***Sale Hearing***"). At the Sale Hearing, the Debtor will request that the Court enter an order (the "***Sale Order***"): (1) approving (a) the Successful Bid(s), (b) the applicable asset purchase agreement(s), and (c) the proposed assumption and assignment of any unexpired leases or executory contracts, and (2) authorizing the Debtor to consummate the proposed transactions. At the Sale Hearing, the Court shall also determine: any

10

Cure Amount required under 11 U.S.C. §365(b) if the affected landlord or contract counter-party timely filed an objection to the Debtor's proposed Cure Amount of any unexpired lease or executory contract to be assumed and assigned, and if applicable, whether the Debtor has demonstrated adequate assurance of future performance under 11 U.S.C. § 365.

Objections to the sale transaction(s) and Sale Order must: (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (iii) be filed with the Court and served so as to be actually received by the Debtor, the Notice Parties, and the foregoing parties' respective counsel by **January 12, 2026, at 4:00 p.m., prevailing Eastern Time.**

## XIV.    "As Is, Where Is"

The proposed transfer of any of the Assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or estate, except to the extent set forth in the applicable asset purchase agreement of the Successful Bidder as accepted by the Debtor and approved by the Court.  Except as otherwise provided in an applicable asset purchase agreement, all of the Debtor's rights, title and interest in and to the respective Asset will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests in accordance with section 363 of the Bankruptcy Code.  Any other claim, lien, charges or encumbrance, as set forth in the applicable asset purchase agreement, will attach to the net proceeds of the sale of the particular Asset.

Each bidder for any of the Assets will be deemed to acknowledge and represent that it (a) has had an opportunity to conduct such due diligence regarding the Assets prior to making its offer as provided in the applicable asset purchase agreement, (b) has relied solely upon its own independent review, investigation and/or inspection of any document including, without limitation, executory contracts and unexpired leases in making its Bid, and (c) did not rely upon or receive any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Assets, or the completeness of any information provided in connection with the Asset sale or the Auction, except as expressly stated in the particular asset purchase agreement.

## XV.    Reservation of Rights

Notwithstanding the Debtor's receipt of any Qualified Bids for any particular Asset, the Debtor may continue to negotiate and solicit Bids in consultation with the Creditors' Committee. Formal approval of a Bid will not occur unless and until the Court enters an order approving the applicable asset purchase agreement and authorizing the Debtor to consummate the applicable transactions.  The Debtor reserves the right, after consultation with the DIP Lender and the Creditors' Committee, to modify these Bidding Procedures and implement additional procedural rules in any manner that will best promote the goals of the bidding process or the Bidding Procedures or impose, at or before the Auction (if held), additional customary terms and conditions on the sale of the applicable Assets, including, without limitation:  (i) extending the deadlines set forth in the Bidding Procedures; (ii) adjourning the Auction; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (if held); (iv) canceling the Auction; (v) rejecting any or all Bids or Qualified Bids; and (vi) adjusting the

11

applicable minimum Overbid increment.

All parties expressly reserve all of their rights (and do not waive any such rights) to seek Court relief with regard to the Auction, the Bidding Procedures, the sale transaction(s), and any related items (including, if necessary, to seek an extension of the Bid Deadline).

Each reference in these Bidding Procedures and the Bidding Procedures Order to the Debtor's "consultation" (or similar phrase) with the Creditors' Committee in connection with making a determination or taking an action shall mean consultation in good faith and in a reasonably timely manner under the circumstances prior to making such determination or taking such action. The Creditors' Committee will be permitted to seek relief from the Bankruptcy Court, on an expedited basis, if they disagree with any actions or decisions made by the Debtor as part of these Bidding Procedures.

Exhibit B to Bidding Procedures Order

[Notice of Auction and Sale Hearing]

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-2*

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
David S. Salhanick, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-0966
Fax  (973) 533-0127

*Counsel to the Debtor*
*and Debtor in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| Work 'N Gear, LLC, | Case No. 25-17472 (MEH) |
| Debtor. | |

### NOTICE OF BIDDING PROCEDURES, AUCTION AND SALE APPROVAL HEARING

**PLEASE TAKE NOTICE** that on July 16, 2025, Work 'N Gear, LLC, the above-captioned debtor and debtor in possession (the "***Debtor***") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United  States Bankruptcy Court for the District of New Jersey (the "***Bankruptcy Court***").

**PLEASE TAKE FURTHER NOTICE** that on December _____, 2025, the Debtor filed a motion (the "***Motion***") pursuant to 11 U.S.C. §§ 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006 for (i) entry of an order (a) authorizing bidding procedures (the "***Bidding Procedures***")[1] and notice of the auction relating thereto, (b) scheduling a hearing to consider sale substantially all of the Debtor's assets (the "***Sale Hearing***"); and (ii) entry of an order (a) authorizing and approving the sale of the Debtor's assets free and clear of liens, claims, encumbrances, and interests, (b) authorizing and approving the asset purchase agreement with respect thereto, (c) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases (the "***Assumed Leases and Contracts***") as necessary in connection with the sale, and (d) granting related relief (the "***Motion***") with the Bankruptcy Court.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtor is soliciting offers for the purchase of the Assets consistent with the Bidding Procedures, which were approved by the Bankruptcy Court by entry of an order dated December ____, 2025 [Docket No. ___], (the "***Bidding Procedures Order***"), attached hereto.  All interested bidders should carefully read the Bidding Procedures and the Bidding Procedures Order. To the extent that there are any inconsistencies between this notice and the Bidding Procedures, the Bidding Procedures shall govern.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtor receives competing Qualified Bids in accordance with the terms of the Bidding Procedures, the Debtor shall conduct an Auction of the Assets at **10:00 a.m. prevailing Eastern Time on January ____, 2026** at the offices of A.Y. Strauss LLC, as counsel to the Debtor, 290 West Mount Pleasant Avenue, Suite 3260, Livingston, New Jersey 07039, or during such later time or at such other place as the Debtor shall determine in accordance with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider, among other things, the approval of the Sale of the Assets to the Successful Bidder determined at Auction to have submitted the highest or otherwise best bid for the Assets, will be held on **January ___, 2026 at __:__ __.m. (ET)** before the Honorable Mark E. Hall, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, or at such other time as the Bankruptcy Court may determine.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Motion, the Debtor shall seek approval at the Sale Hearing, of, among other things, the Sale of the Assets free and clear all liens, claims, encumbrances, and other interests pursuant to section 363 of the Bankruptcy Code, and to assume and assign the Assumed Leases and Contracts to the Successful Bidder pursuant to section 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Sale relief requested in the Motion must: (a) be in writing; (b) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (c) comply with the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of New Jersey, and any orders of the Bankruptcy Court; and (d) be filed with the Bankruptcy Court and served upon the following parties so as to be actually received by **4:00 p.m. prevailing Eastern Time on January ___, 2026** (the "***Objection Deadline***"): (i) the Debtor, Work 'N Gear, LLC, 10 Forbes Road, Suite 300 West, Braintree, MA 02184, Attn: Larry Nusbaum; (ii) A.Y. Strauss LLC, as counsel to the Debtor, 290 West Mount Pleasant Avenue, Suite 3260, Livingston, New Jersey 07039, Attn: Eric H. Horn, Esq. and David S. Salhanick, Esq.; (iii) KCP Advisory Group, LLC, financial advisor to the Debtor, 700 Technology Park Drive, Suite 212, Billerica, MA 01821, Attn: Margie Kaufman; (iv) Genova Burns LLC, DIP Lender to the Debtor, Genova Burns LLC, 494 Mayor Kenneth A. Gibson Blvd., Newark, NJ 07102, Attn: Donald W. Clarke, Esq.; and (v) Lowenstein Sandler LLP, as counsel to the Committee, One Lowenstein Drive, Roseland, New Jersey 07068, Attn: Colleen Restel, Esq. and Kelly E. Moynihan, Esq.

**PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the full terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict.  A copy of the Motion, the Bidding Procedures, and the Bidding Procedures Order may be obtained (a) via PACER or (b) by request made to Debtor's counsel:  A.Y. Strauss LLC, as counsel to the Debtor, 290 West Mount Pleasant Avenue, Suite 3260, Livingston, New Jersey 07039, Attn: Eric H. Horn, Esq., Tel. 973-387-5006; email: ehorn@aystrauss.com.

<u>**Consequences of Failing to Timely File and Serve an Objection to the Sale**</u>

**ANY PARTY OR ENTITY THAT FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS AFFECTED THEREUNDER, AND THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED LEASES AND CONTRACTS TO THE SUCCESSFUL BIDDER AND ANY CURE AMOUNTS RELATED THERETO.  THE SELLER ENCOURAGES ALL PARTIES TO CAREFULLY REVIEW THE BIDDING PROCEDURES ATTACHED TO THE BIDDING PROCEDURES ORDER, AS WELL AS ALL TERMS AND CONDITIONS OF THE MOTION, THE PURCHASE AGREEMENT, AND THE BIDDING PROCEDURES ORDER.**

Dated: _____, 2026

**A.Y. STRAUSS LLC**

By: ___/s/_____
Eric H. Horn, Esq.
David S. Salhanick, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-0966
Fax  (973) 533-0127

*Counsel to the Debtor*
*and Debtor in Possession*

Exhibit C to Bidding Procedures Order

[Assignment / Cure Notice]

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-2*

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
David S. Salhanick, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-0966
Fax  (973) 533-0127

*Counsel to the Debtor*
*and Debtor in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| Work 'N Gear, LLC, | Case No. 25-17472 (MEH) |
| Debtor. | |

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT**
**OF CERTAIN UNEXPIRED NON-RESIDENTIAL REAL**
**PROPERTY LEASES AND EXECUTORY CONTRACTS**

PLEASE TAKE NOTICE that on December _____, 2025, Work 'N Gear, LLC (the
"***Debtor***") filed a motion (pursuant to 11 U.S.C. §§ 105(a), 363 and 365 and Bankruptcy Rules
2002, 6004 and 6006 for (i) entry of an order (a) authorizing bidding procedures (the "***Bidding
Procedures***") and notice of the auction relating to the sale of substantially all of the assets of the
Debtor (the "***Bidding Procedures Motion***"), (b) scheduling a hearing to consider the sale of
substantially all of the Debtor's assets (the "***Sale Hearing***"), and (c) approving entry of an order
(i) authorizing and approving the sale of the Debtor's assets free and clear of liens, claims,
encumbrances, and interests, (ii) authorizing and approving the asset purchase agreement with
respect thereto, (iii) authorizing and approving the assumption and assignment of certain
executory contracts and unexpired leases (the "***Assumed Leases and Contracts***") as necessary in
connection with the sale, and (d) granting related relief (the "***Sale Motion***" and together with the
Bidding Procedures Motion, the "***Motion***" [Docket No. __]) with the United States Bankruptcy
Court for the District of New Jersey (the "***Bankruptcy Court***").[1]  An order approving the
Bidding Procedures Motion (the "***Bidding Procedures Order***") was entered on December
_____, 2026 [Docket No __].

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

1

**PLEASE TAKE FURTHER NOTICE** that in connection with the Bidding Procedures Order, the Bankruptcy Court scheduled a hearing to consider the Sale Motion for **January \_\_\_\_, 2026 at \_\_:\_\_ \_\_.m.** (prevailing Eastern Time) (the "***Sale Hearing***").

**PLEASE TAKE FURTHER NOTICE** that you have been identified as a party to an unexpired lease or executory contract (collectively referred to as the "***Leases and Contracts***") that the Debtor may seek to assume and assign.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Sale Motion, the Debtor may assume and assign certain of their Leases and Contracts free and clear of all liens, claims, charges, encumbrances, and interests upon payment of the cure amounts required under section 365(b)(1)(A) of the Bankruptcy Code (the "***Cure Amounts***").

**PLEASE TAKE FURTHER NOTICE** that the Leases and Contracts that the Debtor may seek to assume, sell and assign (the "***Potential Assumed Leases Contracts***") and corresponding Cure Amounts are listed on the attached **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that any objections to the relief requested in the Sale Motion, including the assumption and assignment of the Potential Assumed Contracts and the corresponding Cure Amounts, must be (a) in writing, (b) comply with the Federal Rules of Bankruptcy Procedures and the Local Bankruptcy Rules, (c) be filed with the clerk of the Bankruptcy Court for the District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, **on or before January \_\_\_\_, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "***Cure Objection Deadline***") and (d) be served so as to be received **no later than 4:00 p.m. on the same day**, upon (i) Work 'N Gear, LLC**, 10 Forbes Road, Suite 300 West, Braintree, MA 02184, Attn: Larry Nusbaum; (ii) A.Y. Strauss LLC, as counsel to the Debtor, 290 West Mount Pleasant Avenue, Suite 3260, Livingston, New Jersey 07039, Attn: Eric H. Horn, Esq. and David S. Salhanick, Esq.; (iii) KCP Advisory Group, LLC, financial advisor to the Debtor, 700 Technology Park Drive, Suite 212, Billerica, MA 01821, Attn: Margie Kaufman; (iv) Genova Burns LLC, DIP Lender to the Debtor, Genova Burns LLC, 494 Mayor Kenneth A. Gibson Blvd., Newark, NJ 07102, Attn: Donald W. Clarke, Esq.; and (v) Lowenstein Sandler LLP, as counsel to the Committee, One Lowenstein Drive, Roseland, New Jersey 07068, Attn: Colleen Restel, Esq. and Kelly E. Moynihan, Esq.

**PLEASE TAKE FURTHER NOTICE** that any person or entity receiving notice of the Sale Hearing and this Notice that fails to file an objection on a timely basis shall (i) be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other monetary obligations and amounts with respect to such unexpired lease or executory contract and the Debtor shall be entitled to rely solely upon the Cure Amount; and (ii) be forever barred and estopped from asserting or claiming against the Debtor or the Successful Bidder or any otherassignee of the relevant designated contract or lease that any additional amounts are due or defaults, claims or damages exist under such designated contract or lease.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing may be adjourned from time to time without further notice to creditors or parties-in-interest other than by announcement of said adjournment in the Bankruptcy Court or on the Bankruptcy Court's calendar on the date scheduled for the Sale Hearing.

Dated: _____, 2026

                                                     **A.Y. STRAUSS LLC**

                                                     By: _/s/_____

                                                   Eric H. Horn, Esq.
                                                   David S. Salhanick, Esq.
                                                   290 West Mount Pleasant Avenue, Suite 3260
                                                   Livingston, New Jersey 07039
                                                   Tel. (973) 287-0966
                                                   Fax (973) 533-0127

                                                   *Counsel to the Debtor*
                                                   *and Debtor in Possession*

3

Exhibit 2 to Motion

[Form of APA]

ASSET PURCHASE AGREEMENT


between


[_____], as Purchaser


and


Work 'N Gear, LLC, as Seller


Date:  _____, 2025

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT is entered into and dated as of _____, 202\_\_\_ (this "*Agreement*"), by and between [_____], a [_____] (the "*Purchaser*"), and Work 'N Gear, LLC a New York limited liability company (the "*Seller*"). The Purchaser and Seller are each a "*Party*" and collectively the "*Parties*".

W I T N E S S E T H:

WHEREAS, Seller owns and operates a chain of retail stores selling work apparel, footwear and healthcare apparel clothing and related goods (the "*Business*");

WHEREAS, on July 16, 2026, Seller filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of New Jersey (the "*Bankruptcy Court*"), Case No. 25-17472 (MEH) (the "*Bankruptcy Case*");

WHEREAS, upon the terms and subject to the conditions set forth herein and as authorized under Sections 105, 363, and 365 of the Bankruptcy Code, Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser, the Purchased Assets in exchange for the payment to Seller of the Purchase Price and the assumption by Purchaser of the Assumed Liabilities;

WHEREAS, the transactions contemplated by this Agreement (the "*Transactions*") will be subject to the approval of the Bankruptcy Court and will be consummated only pursuant to a Sale Order (as defined below) to be entered in the Bankruptcy Case and other applicable provisions of the Bankruptcy Code; and

WHEREAS, Seller and Purchaser wish to enter into this Agreement, pursuant to which Seller agrees to sell to Purchaser, and Purchaser agrees to buy from Seller, certain of Seller's assets pursuant to the terms hereof.

NOW, THEREFORE, in consideration of the premises and the mutual representations, warranties, covenants and agreements hereinafter contained, and intending to be bound hereby, the Parties hereby agree as follows:

ARTICLE I

DEFINITIONS

1.1    Certain Definitions.  For purposes of this Agreement, the following terms shall have the meanings specified in this Section 1.1 or in other Sections of this Agreement:

"Acquired Location" means any Location subject to an Assumed Real Property Lease.

"Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control

with, such Person. For purposes of this definition, the term "*control*" (including the terms "*controlled by*" and "*under common control with*") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract, or otherwise.

"Assumed Agreements" has the meaning set forth in Section [•].

"Assumed Contracts" has the meaning set forth in Section [•].

"Assumed Liabilities" has the meaning ascribed thereto in Section [•].

"Assumed Real Property Leases" has the meaning set forth in Section [•].

"Assumption Approval" has the meaning set forth in [•].

"Assumption Order" means an Order of the Bankruptcy Court authorizing the assumption or the assumption and assignment of a Real Property Lease or Contract pursuant to Section 365 of the Bankruptcy Code, which Order may be the Sale Order.

"Books and Records" means all files, documents, instruments, papers, books and records, including Tax books and records (whether stored or maintained in hard copy, digital or electronic format, or otherwise) used by Seller in connection with the Business or relating to the Purchased Assets, including customer lists, customer information and account records, computer files, data processing records, payroll, employment and personnel records, advertising and marketing data and records, credit records, records relating to suppliers, and other data.

"Business Day" means any day of the year on which national banking institutions in New York are open to the public for conducting business and are not required or authorized by Law to close.

"Cash Portion" has the meaning set forth in [•].

"Claim" has the meaning set forth in Section 101(5) of the Bankruptcy Code.

"Closing" has the meaning set forth in Section [•].

"Closing Date" has the meaning set forth in Section [•].

"Contract" means any written or oral agreement, arrangement, understanding, license, sublicense, lease, or instrument or other contractual or similar arrangement or commitment to which Seller is a party, other than a Real Property Lease.

"Cure Amounts" means monetary amounts relating to periods prior to the Closing for items such as past due rent, utilities, taxes, common area maintenance fees, and any other monetary obligations that must be paid and nonmonetary obligations that otherwise must be satisfied (whether arising before or after the Petition Date), including pursuant to Sections 365(b)(1)(A) and (B), 365(d)(3) and 503(b) of the Bankruptcy Code, in connection with the assumption and/or assignment of the Assumed Real Property Leases and the Assumed Contracts,

as such amounts and obligations may be modified by agreement among Seller, Purchaser and any applicable counterparty to an Assumed Real Property Lease or Assumed Contract.

"Customer Obligations" means obligations of Seller under Customer Programs.

"Customer Programs" means customer-targeted practices of Seller which are designed to (a) develop and sustain positive reputations for Seller's stores and merchandise in the marketplace and (b) attract new customers to Seller's stores and to enhance store loyalty and sales among Seller's existing customer base, including, without limitation, gift cards, store credits, merchandise return and exchange policies, merchandise credits, layaway plans, credit card reward programs, club card, club pass, and other customer loyalty programs, and charitable programs such as gift card fundraisers and shop-a-thons.

"Deposit" has the meaning set forth in Section [•].

"DIP Lender" means ABL OPCO LLC and/or one or more of its affiliates.

"Employee Plan" means, as of the Closing Date, all written plans, practices and arrangements, formal or informal, whether applicable to a group of individuals or a single individual, and whether active, frozen or terminated, currently providing compensation (other than salary or wages) or other benefits of any type or nature with respect to the employees of the Business, including but not limited to all plans providing benefits for such employees that are employee benefit plans as defined in Section 3(3) of ERISA.

"Encumbrance" means any Lien, security interest, mortgage, deed of trust, option, lease, tenancy, occupancy, covenant, condition, easement, agreement, royalty, pledge, hypothecation, charge, claim, option, right of first refusal, servitude, proxy voting trust or agreement, adverse claim, transfer restriction under any agreement of any kind or nature, known or unknown, or other encumbrance, including without limitation, all Interests.

"Equipment" means all machinery, rolling stock, equipment, computer equipment, software, software systems, databases, and database systems used at the Locations.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"ERISA Affiliate" means (a) any Person subject to ERISA whose employees are treated as employed by the same employer as the employees of Seller under IRC Section 414(b), (b) any trade or business subject to ERISA whose employees are treated as employed by the same employer as the employees of Seller under IRC Section 414(c), (c) solely for purposes of Section 302 of ERISA and Section 412 of the IRC, any organization subject to ERISA that is a member of an affiliated service group of which Seller is a member under IRC Section 414(m), or (d) solely for purposes of Section 302 of ERISA and Section 412 of the IRC, any Person subject to ERISA that is a party to an arrangement with Seller and whose employees are aggregated with the employees of Seller under IRC Section 414(o).

"Excluded Assets" has the meaning set forth in Section [•].

"Excluded Liabilities" has the meaning set forth in Section [•].

"FF&E" has the meaning set forth in Section [•].

"Fixed Assets" means all furniture, furnishings, fixtures, trade fixtures, machinery, operating equipment, office equipment and supplies, racks, pallets, displays, packaging, office equipment, computer equipment, telephone and communications equipment, improvements, etc., wherever located.

"Governmental Body" means any governmental unit (as that term is defined in section 101(27) of the Bankruptcy Code, government, or governmental or regulatory body thereof, or political subdivision thereof, whether foreign, federal, state, or local, or any agency, instrumentality or authority thereof, or any court or arbitrator (public or private).

"Hired Employees" means all employees and independent contractors of Seller prior to the Closing who are offered and accept (and commence) employment (or the performance of services as an independent contractor, as the case may be) with Purchaser.

"Intellectual Property" means, to the extent relating to or used in connection with the Business, whether owned or licensed, whether related to use in the United States or another country, (i) any and all patents (including design patents, industrial designs and utility models) and patent applications (including docketed patent disclosures awaiting filing, reissues, divisions, continuations, continuations-in-part and extensions), patent disclosures awaiting filing determination, inventions and improvements thereto, (ii) trademarks, service marks, certification marks, trade names, brand names, trade dress, logos, business and product names, slogans and registrations and applications for the registration thereof, (iii) copyrights (including software) and registrations thereof, (iv) inventions, processes, designs, formulae, trade secrets, know-how, industrial models, confidential and technical information, manufacturing, engineering and technical drawings, product specifications, discoveries and confidential business information, (v) intellectual property rights similar to any of the foregoing, (vi) computer software, web site and domain names, (vii) copies and tangible embodiments thereof (in whatever form or medium, including electronic media) and (viii) all contracts or licenses for the use of any of the foregoing, in the case of each of the foregoing, together with all goodwill directly or indirectly associated therewith.

"Interest" shall mean an "interest in property" as such phrase is used in Section 363(f) of the Bankruptcy Code.

"Inventory" means all of Seller's finished goods, inventory which is first class, merchantable and not damaged, wherever located.

"IRC" means the Internal Revenue Code of 1986, as amended.

"Knowledge of Seller" means the actual knowledge, without inquiry or investigation, of the president, the chief restructuring officer, the chief operating officer, and the chief merchandising officer of Seller.

"Law" means any federal, state, local, or foreign law, statute, code, ordinance, rule, or regulation or common-law requirement.

"Legal Proceeding" means any judicial, administrative, or arbitral actions, suits, or proceedings (public or private) or any proceedings by or before a Governmental Body.

"Liability" means any debt, liability, or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or not accrued, liquidated or unliquidated, or due or to become due), and including all costs and expenses relating thereto.

"Lien" has the meaning ascribed thereto in Section 101(37) of the Bankruptcy Code.

"Location" means any place at which Seller operates the Business.

"Material Adverse Effect" means (a) with respect to Seller, (i) any change in (or effect on) the condition (financial or otherwise), properties, assets (including intangible assets), liabilities (including contingent liabilities), rights, obligations, operations, or business, which change (or effect) is materially adverse to the financial condition, properties, assets, liabilities, rights, obligations, operations, or business of Seller taken as a whole; or (ii) a material adverse change in the ability of Seller to consummate the Transactions and fulfill, in all material respects, all its obligations under this Agreement, and (b) with respect to Purchaser, a material adverse change in the ability of Purchaser to consummate the Transactions and fulfill, in all material respects, all of its obligations under this Agreement.

"Official Committee of Unsecured Creditors" or "Committee" shall mean the official committee appointed in the Bankruptcy Case by the United States Trustee pursuant to a Notice of Appointment dated August 12, 2025.

"Order" means any order, injunction, judgment, decree, ruling, writ, assessment, or arbitration award of a Governmental Body.

"Permitted Exceptions" means, with respect to any of the property or assets of Seller, whether owned as of the date hereof or hereafter, (i) all defects, exceptions, restrictions, easements, rights of way and encumbrances of record; (ii) any other imperfections in title, charges, easements, restrictions and encumbrances that do not materially affect the use of the affected asset; (iii) any state of facts as shown on the surveys of any Acquired Location provided to Purchaser by Seller; (iv) zoning, entitlement and other land use and environmental regulations by any Governmental Body; and (v) any state of facts shown on any title commitment or policy or other documentation provided to Purchaser by Seller relating to any Acquired Location.

"Periodic Taxes" has the meaning set forth in Section [•].

"Permits" has the meaning set forth in Section [•].

"Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust, unincorporated organization, Governmental Body, or other entity.

"Petition Date" means July 16, 2025.

"Purchase Price" has the meaning set forth in Section [•].

"Purchased Assets" has the meaning set forth in Section [•].

"Real Property Lease" means any real property lease, sublease, license, or other agreements under which Seller uses or occupies or has the right to use or occupy, as lessor (or sublessor) or lessee (or sublessee), or licensor or licensee, now or in the future, any real property used in the conduct of or related to the Business or any portion thereof.

"Rejected Agreement(s)" has the meaning set forth in Section [•].

"Sale Order" means an Order entered by the Bankruptcy Court approving this Agreement, which Order shall be in form and substance reasonably acceptable to Seller and Purchaser.

"Security Deposits" means all security deposits (including cash) held by landlords, utilities, or other parties under any Assumed Agreements.

"Tax Authority" means any government, or agency, instrumentality, or employee thereof, charged with the administration of any Law relating to Taxes.

"Tax Return" means all returns, declarations, reports, estimates, information returns, and statements required to be filed in respect of any Taxes (including any attachments thereto or amendments thereof).

"Taxes" means (i) all federal, state, local, or foreign taxes, charges, or other assessments, including, without limitation, all net income, gross receipts, capital, sales, use, ad valorem, value added, transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment, social security, unemployment, excise, severance, stamp, occupation, property, and estimated taxes; (ii) any item described in clause (i) for which a taxpayer is liable as a transferee or successor, by reason of the regulations under Section 1502 of the IRC, or by contract, indemnity, or otherwise; and (iii) all interest, penalties, fines, additions to tax, or additional amounts imposed by any Tax Authority in connection with any item described in clause (i) or (ii).

"Termination Date" has the meaning set forth in Section [•].

1.2     Other Definitional and Interpretive Matters. Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation shall apply:

Calculation of Time Period. When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is not a Business Day, then the period in question shall end on the next succeeding Business Day.

Exhibits/Schedules. All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

Gender and Number. Any reference in this Agreement to gender shall include all genders, and words imparting only the singular number shall include the plural and vice versa.

Headings. The provision of a Table of Contents, the division of this Agreement into Articles, Sections, and other subdivisions, and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Agreement. All references in this Agreement to any "Section" are to the corresponding Section of this Agreement unless otherwise specified.

Herein. Words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.

Including. The word "including" or any variation thereof means "including, without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

Construction. The Parties have participated jointly in the negotiation and drafting of this Agreement and, in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement.

ARTICLE II

PURCHASE AND SALE OF ASSETS; ASSUMPTION OF LIABILITIES

2.1     Purchase and Sale of Assets.

(a)     On the terms and subject to the conditions set forth in this Agreement, at the Closing, to the fullest extent permitted by Sections 363 and 365 of the Bankruptcy Code, Purchaser shall purchase, acquire, and accept from Seller, and Seller shall sell, transfer, convey, and deliver to Purchaser, all of Seller's right, title, and interest in, to, and under the Purchased Assets, to the extent legally transferable, free and clear of all Liens, Claims, Interests, and Encumbrances other than those created by Purchaser and other than Permitted Exceptions.

(b)     For purposes of this Agreement, the term "Purchased Assets" means all of the following properties, assets, and rights of Seller (other than the Excluded Assets) existing as of the Closing:

(i)     subject to Section [•], all Real Property Leases and Contracts listed on Schedule [•] (respectively the "Assumed Real Property Leases" and the "Assumed Contracts" and, collectively, the "Assumed Agreements")

(ii)     the Intellectual Property set forth on Schedule [•]and to the extent transferable and assignable, all other Intellectual Property;

(iii)     all Fixed Assets and Equipment, wherever located, that are used to operate the Locations (collectively, the "FF&E"), including, without limitation, the FF&E set forth on Schedule [•]

(iv)     all Inventory;

(v)      all Credit Card and Third Party Customer Accounts Receivable;

(vi)     all customer management relationship software relating to the Business and in connection with the Acquired Locations, to the extent permissible under Section 363(b) of the Bankruptcy Code and other applicable Law;

(vii)    all Security Deposits relating to any Assumed Agreements;

(viii)   to the extent transferable and assignable, all licenses, franchises, permits, variances, exemptions, orders, approvals, and authorizations issued by Governmental Bodies in connection with the Acquired Locations (the "Permits");

(ix)     all telephone numbers and addresses (including electronic mail addresses) used by Seller in connection with the Acquired Locations;

(x)      all goodwill arising in connection with the Acquired Locations;

(xi)     the accounts receivable and related cash proceeds of Seller relating to the Window Period (as defined below); and

(xii)    to the extent transferable and assignable, all Books and Records relating to the Acquired Locations, but excluding any such Books and Records that are subject to attorney-client or similar privilege or any other Books or Records that Seller is precluded or restricted from transferring pursuant to applicable Law.

2.2     Excluded Assets. Notwithstanding anything to the contrary contained herein, nothing herein shall be deemed to sell, transfer, assign, or convey the Excluded Assets to Purchaser, and Seller shall retain all right, title, and interest to, in, and under, and all obligations with respect to, the Excluded Assets. For all purposes of and under this Agreement, the term "Excluded Assets" means:

(a)      any Real Property Leases and Contracts that are not Assumed Agreements, in accordance with Section [•] (collectively, the "Rejected Agreements");

(b)      all rights, claims, or causes of action of Seller of any nature against third parties, including without limitation any Affiliates of Seller, including the outstanding insurance claim related to damage caused by Superstorm Sandy, and all preference or avoidance claims  and actions of Seller, including, without limitation, any claims and actions arising under Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code and similar state Law;

(c)      all Tax refunds, rebates, credits, and similar items or attributes relating to or arising out of the operation of the Business and to any period, or portion of any period, on or prior to the Closing Date;

(d)      all accounts receivable of Seller as of the Closing Date and all cash

proceeds of such accounts receivable that are received after the Closing Date, except with respect to the Acquired Locations which shall be open for business after the completion of the Inventory count described in Section [•] and prior to the Closing, the accounts receivables of which are derived from sales made during the period from the opening of such Acquired Locations after the conclusion of such Inventory count until the Closing (the "Window Period") which shall belong to Purchaser and upon receipt of such accounts receivable by Seller, Seller shall immediately pay such accounts receivable to Purchaser, and Purchaser will assume all pro-rata expenses associated with the operation of the Business during such Window Period, such expenses to include rent, salaries, utilities and all other costs related to the operations of the Business; and

(e)      all assets of Seller not specifically described in Section [•], including without limitation any rights of Seller under this Agreement.

2.3      Assumption of Liabilities.  On the terms and subject to the conditions and limitations set forth in this Agreement, at the Closing, Purchaser shall assume, effective as of the Closing, and shall timely perform and discharge in accordance with their respective terms, the following Liabilities existing as of the Closing (collectively, the "Assumed Liabilities") and no others:

(a)      all Liabilities of Seller under the Assumed Agreements arising after the occurrence of the Closing for events which took place after the Closing, provided, however, that if Seller's health plan is an Assumed Agreement, Purchaser shall not be liable for any obligations or costs under such health plan related to any persons who are not employees of Seller;

(b)      all gift cards, store credits, layaway plans, credit card reward programs, and merchandise credits issued by Seller prior to, and outstanding on, the Closing;

(c)      all Customer Obligations arising after the Closing;

(d)      all Liabilities arising out of Purchaser's ownership, use or occupancy of the Purchased Assets after the occurrence of the Closing for events which took place after the Closing, provided that to the extent that sales are made during the Window Period, Purchaser will assume all pro-rata expenses associated with the operation of the Business during such Window Period; and

(e)      all Liabilities relating to the In-Transit Inventory.

2.4      Excluded Liabilities.  Purchaser shall not assume and shall be deemed not to have assumed any Liabilities of Seller of whatever nature, whether presently in existence or arising hereafter, known or unknown, disputed or undisputed, contingent or non-contingent, liquidated or unliquidated, or otherwise, other than the Assumed Liabilities (collectively, the "Excluded Liabilities").

2.5      Assignment of Assumed Real Property Leases and Assumed Contracts.

(a)     In connection with the assignment to Purchaser of the Assumed Agreements, all Cure Amounts, as calculated by Seller, or agreed to by Seller and counterparty  to any Contract and Real Property Lease, or as may be determined by the Bankruptcy Court, if any, necessary to cure all defaults and damages (whether declared or not), if any, payable to any landlord or other party under any Assumed Agreement, that relates to the period prior to the Assumption Approval (as defined below), for events which take place prior to the Closing, shall be paid in cash in full by Seller, on or before the date of the Assumption Approval, and not by Purchaser, and Purchaser shall have no liability therefor.  Seller reserves the right to contest any Cure Amount in the Bankruptcy Court.

(b)     Seller shall use its commercially reasonable efforts to obtain an Order or Orders of the Bankruptcy Court approving the assumption and assignment of the Assumed Agreements to Purchaser (the "Assumption Approval") on the terms set forth in this Section 2.5, subject to Seller's payment of the applicable Cure Amounts and providing evidence of Purchaser's adequate assurance of future performance thereunder to the satisfaction of the counterparty thereto (or the Bankruptcy Court, in the event of a dispute  regarding  adequate assurance).  For the avoidance of doubt, Seller shall not be obligated to file motions for reconsideration or to file appeals.  However, Seller reserves the right to contest any Cure  Amount in the Bankruptcy Court.

2.6     Further Conveyances and Assumptions.  From time to time following the Closing, Seller shall take commercially reasonable efforts to transfer to Purchaser any Purchased Assets received by or in the possession of Seller.

ARTICLE III

CONSIDERATION

3.1     Consideration.

(a)     The aggregate consideration for the Purchased Assets (the "Purchase Price") shall be:

(i)     the sum of $_____ for all Purchased Assets (the "Cash Portion"); plus

(ii)     an amount equal to the Security Deposits; plus

(iii)     the assumption of the Assumed Liabilities.

(b)     Proration.  At Closing, with respect to all Assumed Real Property Leases, the Parties shall apportion all water, gas, electricity and other utilities, sewer, and other municipal charges, common area maintenance reimbursements to lessors, local business or other license fees, merchants' association dues, rental payments, and other similar periodic charges  and assessments (including such of the foregoing which have or may become a lien thereon, whether or not recorded, prior to the Closing Date) for which Purchaser shall be responsible under the Assumed Real Property Leases and interests in related improvements acquired by Purchaser

hereunder (whether by fee ownership or as the result of an Assigned Agreement), in accordance with Section [•], real estate Taxes.  Notwithstanding any other provisions contained herein to the contrary, all prorations will be made as of the earlier of the date immediately following the date on which the Inventory count and aging described in Section 8.13 is  concluded or the Closing Date.

3.2     Purchase Price Deposit.  Purchaser has delivered to Escrow Agent a refundable good faith cash deposit in an amount equal to $_____ (the "Deposit"), which Deposit shall be held by the Escrow Agent pursuant to the terms and conditions of a Deposit Escrow Agreement and applied as follows:

(a)     if the Closing shall occur, then the Deposit shall be applied towards the Cash Portion of the Purchase Price and paid over to Seller at the Closing;

(b)     if this Agreement is terminated for any reason other than Purchaser's material breach in accordance with Section [•], then the Deposit shall be paid promptly to Purchaser.

ARTICLE IV

CLOSING AND TERMINATION

4.1     Closing Date.  Subject to the satisfaction of the conditions set forth in Article IX hereof (or the waiver thereof by the Party entitled to waive such condition), the closing of the purchase and sale of the Purchased Assets and the assumption of the Assumed Liabilities provided for in Article II hereof (the "Closing") shall take place at the offices of A.Y. Strauss LLC, 290 West Mount Pleasant Avenue, Suite 3260, Livingston, New Jersey 07039 (or at such other place as the Parties may designate in writing) at 10:00 a.m. (Prevailing Eastern Time) on the first Business Day on which all of the conditions set forth in Article IX have been satisfied or waived (other than conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions), unless another time or date, or both, are agreed to in writing by the Parties. The date on which the Closing shall be held is referred to in this Agreement as the "Closing Date."  The Closing shall occur at or before Noon (Prevailing Eastern Time) on the Termination Date (as defined below).

4.2     Deliveries by Seller.  At the Closing, Seller shall deliver to Purchaser:

(a)     one or more duly executed bills of sale in a reasonable form to be agreed upon by the Parties;

(b)     one or more duly executed assignment and assumption agreements in a reasonable form to be agreed upon by the Parties with respect to each of the Assumed Real Property Leases and the Assumed Contracts;

(c)     the officer's certificate, without personal liability to the executing officer, required to be delivered pursuant to Section 9.1(a) and Section 9.1(b);

(d)     a copy of the Sale Order as entered by the Bankruptcy Court;

(e)     all keys to the Acquired Locations and any and all passwords for all

computers and security devices that are part of the Purchased Assets;

(f)      possession of the Purchased Assets; and

(g)      such other documents, instruments and certificates as Purchaser may reasonably request, provided that Seller shall not be required to incur any out of pocket expense or additional Liability in providing any of the foregoing.

4.3      Deliveries by Purchaser.  At the Closing, Purchaser shall deliver to Seller:

(a)      cash in the amount of the Cash Portion (as adjusted pursuant to Section 3.1(d)) and the Inventory Cash Portion, plus the Security Deposits, less the Deposit, by wire transfer of immediately available funds to the persons and accounts specified by Seller in writing at least one (1) Business Day prior to the Closing;

(b)      one or more duly executed assignment and assumption agreements in a reasonable form to be agreed upon by the Parties;

(c)      the officer's certificate, without personal liability to the executing officer, required to be delivered pursuant to Section 9.2(a) and Section 9.2(b); and

(d)      such other documents, instruments, and certificates as Seller may reasonably request.

4.4      Termination of Agreement.   This Agreement may be terminated prior to  the Closing as follows:

(a)      by Purchaser or Seller, if the Closing shall not have occurred by Noon (Prevailing Eastern Time) on January 31, 2026 (the "Termination Date");

(b)      by mutual written consent of Seller and Purchaser;

(c)      by Purchaser, if any condition to the obligations of Purchaser set forth in Section 9.1 or Section 9.3 shall have become incapable of fulfillment other than as a result of a material breach by Purchaser of any covenant or agreement contained in this Agreement, and such condition is not waived by Purchaser;

(d)      by Seller, if any condition to the obligations of Seller set forth in Section 9.2 or Section 9.3 shall have become incapable of fulfillment other than as a result of a material breach by Seller of any covenant or agreement contained in this Agreement, and such condition is not waived by Seller;

(e)      by Purchaser, if there shall be a material breach by Seller of any representation or warranty, or any covenant or agreement contained in this Agreement which would result in a failure of a condition set forth in Section 9.1 or Section 9.3 and which breach has not been cured by the earlier of (i) three (3) Business Days after the giving of written notice by Purchaser to Seller of such breach and (ii) the Termination Date;

(f)     by Seller, if there shall be a material breach by Purchaser of any representation or warranty, or any covenant or agreement contained in this Agreement which would result in a failure of a condition set forth in Section 9.2 or Section 9.3 and which breach has not been cured by the earlier of (i) three (3) Business Days after the giving of written notice by Seller to Purchaser of such breach and (ii) the Termination Date; and

(g)     by Purchaser or Seller, if there shall be in effect a final non-appealable Order of a Governmental Body of competent jurisdiction restraining, enjoining, or otherwise prohibiting the consummation of the Transactions, it being agreed that the Parties shall promptly appeal any adverse determination that is not non-appealable (and pursue such appeal with reasonable diligence).

4.5     Procedure Upon Termination.  In the event of termination pursuant to Section 4.4, written notice thereof shall forthwith be given to the other Party or Parties, the DIP Lender, and the Official Committee of Unsecured Creditors, and this Agreement shall terminate, the Deposit shall immediately be refunded to Purchaser (except as otherwise provided in Section 3.2(c) above).

ARTICLE V

REPRESENTATIONS AND WARRANTIES AND COVENANTS OF SELLER

Seller hereby represents and warrants to Purchaser that:

5.1     Organization and Good Standing.  Seller is a corporation duly organized, validly existing and in good standing under the Laws of the State of New York.

5.2     Authorization of Agreement.  Subject to entry of the Sale Order and such other authorization as is required by the Bankruptcy Court, (i) Seller has the requisite power and authority to execute and deliver this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party and to perform its obligations hereunder and thereunder and (ii) the execution and delivery of this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party and the consummation of the Transactions have been duly authorized by all requisite corporate action on the part of Seller. This Agreement has been duly executed and delivered by Seller and, upon entry of the Sale Order (assuming the due authorization, execution, and delivery of this Agreement by Purchaser), this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party will constitute the legal, valid, and binding obligation of Seller enforceable against Seller in accordance with its terms.

5.3     Conflicts; Consents of Third Parties.

(a)     The execution and delivery by Seller of this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party, the consummation of the Transactions, and compliance by Seller with any of the provisions hereof and thereof do not conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination or

cancellation under any provision of (i) the certificate of incorporation and by-laws of Seller; (ii) to the extent set forth in the Sale Order, any enforceable provision of any Real Property Lease or Contract to which Seller is a party or by which any of the properties or assets of Seller are bound; (iii) to the extent set forth in the Sale Order, any Order of any Governmental Body applicable to Seller or any of its properties or assets as of the date hereof; or (iv) any applicable Law, other than, in the case of clauses (ii), (iii) and (iv), such conflicts, violations, defaults, terminations or cancellations that would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

(b)    Except for the entry of the Sale Order and as disclosed on the attached Schedule 5.3(b), and subject to the provisions of the Sale Order, to the Knowledge of Seller, no consent, waiver, approval, Order, permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Body is required on the part of Seller in connection with the execution and delivery of this Agreement or any other agreement, document, or instrument contemplated hereby to which it is a party, the compliance by Seller with any of the provisions hereof or thereof, the consummation of the Transactions, the assignment or conveyance of the Purchased Assets, or the taking by Seller of any other action contemplated hereby or thereby.

(c)    Title to Purchased Assets.  Seller owns, leases, or has the right to transfer the Purchased Assets and, subject to the entry of the Sale Order, Purchaser will be vested with good title to such Purchased Assets, free and clear of all Liens, Claims, Interests, and Encumbrances, other than Permitted Exceptions and other than as specified in the Sale Order, to the fullest extent permissible under Section 363(f) of the Bankruptcy Code.

5.4    Brokers.  Seller does not have any obligation to pay any fees, commissions, or other similar compensation to any broker, finder, investment banker, financial advisor, or other similar Person in connection with the Transactions.

5.5    No Subsidiaries.  Seller owns no stock or other equity interest, directly or indirectly, in any corporation, partnership, joint venture, trust or other entity involved in the Business.

5.6    Absence of Environmental Liabilities.  To the Knowledge of Seller, Seller has complied in all material respects at all times with, and at all times prior to the Closing Date shall comply in all material respects with, all applicable environmental laws, orders, regulations, rules and ordinances adopted, imposed or promulgated by any Governmental Body relating to the Business.

5.7    Intellectual Property.  Seller is the record owner of all Intellectual Property registered in its name and either owns or holds a license or other right to use all Intellectual Property and licenses that are reasonably necessary to the conduct of the Business as currently conducted, and, to the Knowledge of Seller, (i) the use of such Intellectual Property by Seller does not infringe upon or otherwise violate the rights of any other Person and (ii) there are no threatened actions by any Person seeking damages from or an injunction against Seller's use of such Intellectual Property.  Attached hereto as Schedule 5.7 is a true, correct, and complete listing as of the date of this Agreement of all material

patents, patent applications, trademarks, trademark applications, domain names, copyrights, and copyright registrations as to which Seller is the owner or is an  exclusive license.

5.8     Good Faith Purchaser. This Agreement was negotiated and entered into at arm's length and, to the Knowledge of Seller, in good faith, and the Parties did not engage in any collusion with respect to setting or fixing the Purchase Price, and to the Knowledge of Seller, there are no facts to support a finding that Purchaser negotiated and entered into this Agreement and any ancillary agreements to which Purchaser is a party, other than in good faith, as that term is used in Bankruptcy Code Section 363(m).

**EXCEPT AS SET FORTH IN THIS AGREEMENT, (A) ALL OF THE PURCHASED ASSETS SHALL BE TRANSFERRED ON AN AS-IS, WHERE-IS BASIS AND (B) SELLER MAKES NO FURTHER REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, CONCERNING THE PURCHASED ASSETS (INCLUDING WITHOUT LIMITATION IN RESPECT OF THE PHYSICAL CONDITION OF ANY OF THE PURCHASED ASSETS), AND ANY SUCH REPRESENTATION OR WARRANTY IS HEREBY EXPRESSLY DISCLAIMED**.

ARTICLE VI

REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller that:

6.1     Organization and Good Standing. Purchaser is a [_____], duly organized / formed, validly existing, and in good standing (a) under the Laws of the state of [_____].

6.2     Authorization of Agreement. Purchaser has the requisite power and authority to execute and deliver this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party and to perform its obligations hereunder and thereunder. The execution and delivery of this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party and the consummation of the Transactions have been duly authorized by all requisite action on the part of Purchaser. This Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party has been or will be duly and validly executed and delivered by Purchaser and (assuming the due authorization, execution, and delivery by Seller) this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party constitutes or will constitute the legal, valid, and binding obligation of Purchaser enforceable against Purchaser in accordance with its terms (except as limited by bankruptcy, insolvency and other laws of general application relating to the enforcement of creditors' rights and by general equitable principles).

6.3     Conflicts; Consents of Third Parties.

(a)     The execution and delivery by Purchaser of this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party, the consummation

of the Transactions, and compliance by it with any of the provisions hereof or thereof do not conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination or cancellation under any provision of (i) Purchaser's organizational or governing documents; (ii) subject to entry of the Sale Order, any contract, lease, or permit to which Purchaser is a party or by which any of its properties or assets are bound; (iii) subject to entry of the Sale Order, any Order of any Governmental Body applicable to Purchaser or any of its properties or assets as of the date hereof; or (iv) any applicable Law, other than, in the case of clauses (ii), (iii), and (iv), such conflicts, violations, defaults, terminations, or cancellations that would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect on Purchaser's ability to consummate the Transactions.

(b)     Except for the entry of the Sale Order, no consent, waiver, approval, Order, permit, or authorization of, or declaration or filing with, or notification to, any Person or Governmental Body is required on the part of Purchaser in connection with the execution and delivery of this Agreement and any other agreement, document, or instrument contemplated hereby to which it is a party, the compliance by Purchaser with any of the provisions hereof or thereof, the consummation of the Transactions, or Purchaser's taking of any other action contemplated hereby or thereby.

6.4     Brokers.  Purchaser does not have any obligation to pay any fees, commissions or other similar compensation to any broker, finder, investment banker, financial advisor, or other similar Person in connection with the Transactions.

6.5     Condition of the Purchased Assets.  Purchaser acknowledges and agrees that Seller is not making any representations or warranties whatsoever, express or implied, beyond those expressly given by Seller in Article V hereof (as modified by any Schedules hereto), and Purchaser acknowledges and agrees that, except for the representations and warranties contained herein, the Purchased Assets are being transferred on a "where is" and, as to condition, "as is" basis. Purchaser acknowledges that it has conducted its own due diligence and in making the determination to proceed with the Transactions, Purchaser is relying on the results of its own independent investigation. Without in any way limiting the foregoing, Purchaser hereby acknowledges that Seller has disclaimed any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Purchased Assets.

ARTICLE VII

BANKRUPTCY COURT MATTERS

7.1     Submission to Bankruptcy Court of Bid Procedures and Protections.

(a)     Sale Motion.  Seller shall promptly file with the Bankruptcy Court a motion (the "Sale Motion"), notices and proposed orders in form and substance reasonably satisfactory to Purchaser seeking the Bankruptcy Court's issuance of the bidding procedures order attached hereto as Exhibit A (the "Bidding Procedures Order") and the Sale Order attached hereto as Exhibit B.  Seller will send notice of the Sale Motion on an expedited basis to all parties in interest (including, but not limited to the Official Committee of Unsecured Creditors and the DIP Lender)

and all potential purchasers reasonably known to Seller, in such manner as approved by Bankruptcy Court.  This Agreement shall be attached to the Sale Motion to be filed by Seller seeking approval of the Transactions.  The Sale Motion shall seek establishment of procedures to obtain higher and better bids, if any, subject to the overbid protections and procedures set forth in this Section.

(b)      Offer Deadline.  Binding offers to purchase all or any defined portion of the Purchased Assets ("Qualified Bids") may be submitted up to _____ Business Days prior to the date the Auction (defined below) is to occur.  Each Qualified Bid should include (i) a mark up of this Agreement and delivery of the deposit (as such term is defined in the Bidding Procedures Order), (ii) detailed information about the party making the Qualified Bid, including its financial and other capacity to consummate the Transactions, (iii) an identification of the executory contracts and leases to be assumed by the party making the Qualified Bid, and (iv) information sufficient to demonstrate that the party making the Qualified Bid will be able to provide parties to such contracts and leases with adequate assurance of its ability to perform under them.  Although a Qualified Bid may be subject to some contingencies, any such contingencies shall be considered by Seller when evaluating and comparing Qualified Bids.

(c)      Auction.  _____ business days prior to the hearing on the Sale Motion to approve this Agreement and the sale hereunder of the Purchased Assets to Purchaser, an auction (the "Auction") will be held at the offices of A.Y. Strauss LLC, counsel to Seller, if Seller determines in its discretion, after consultation with the Official Committee of Unsecured Creditors and DIP Lender, that proceeding with the Auction is appropriate.  During the Auction, Seller shall evaluate the offers of Purchaser and any Qualified Bids, including Qualified Bids submitted during the Auction

(d)      Multiple Lots.  Seller shall have the right to accept and evaluate one or more Qualified Bids seeking the purchase of one or more defined subsets of its assets.  In the event that acceptance and evaluation of such Qualified Bids is deemed appropriate in Seller's business judgment, formed after consultation with the Official Committee of Unsecured Creditors and the DIP Lender, the Auction may proceed in multiple lots, provided that any participant shall have an opportunity to submit a Qualified Bid on one or more lots or on all lots together, and Seller shall be free in its business judgment to accept such Qualified Bid or Bids that, alone or in conjunction with others, Seller deems to comprise the highest and best offer available.

(e)      Seller's Business Judgment.  Seller shall have the sole discretion  after consultation with the  Official Committee of Unsecured Creditors and the DIP Lender, subject to approval of the Bankruptcy Court, to determine the relative value of any Qualified Bid or Bids, to determine whether to accept or reject any Qualified Bid or Bids, subject to Purchaser's entitlement to Stalking Horse Protections as set forth herein, and to determine which Qualified Bid or Bids, alone or in conjunction with others, it deems to comprise the highest or best offer available.  Specifically, in evaluating competing Qualified Bids, Seller shall not be limited to price as the determinative factor, but may consider other factors, including, without limitation, the financial qualifications of the party or parties submitting the Qualified Bid or Bids and the likelihood that the proposed transaction will close within a timeframe acceptable to Seller.

(f)      Selection of Highest and Best Bid or Bids.  Upon the conclusion of the

Auction, Seller will file and serve prior to the sale approval hearing a supplement to the Sale Motion identifying the highest and best Qualified Bid(s), as determined in its business judgment following the Auction in consultation with the Official Committee of Unsecured Creditors, and requesting approval of the sale of Seller's assets pursuant to sections 363 and 365 of the Bankruptcy Code to the party or parties submitting such Qualified Bid(s).

(g)      Submission to the Bankruptcy Court of the Sale Order.  The sale of the Purchased Assets is subject to and contingent upon entry of the Sale Order upon proper notice in accordance with the applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.  Purchaser agrees that upon the reasonable request of Seller, it will furnish admissible evidence in the form of affidavits or declarations establishing that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code and that the Purchase Price was not controlled by an agreement in violation of Section 363(n) of the Bankruptcy Code. In the event the entry of the Sale Order is appealed, Seller shall use its commercially reasonable efforts to oppose any such appeal.  The Sale Order shall contain language which, among other things, transfers to Purchaser all rights available to Purchaser under Section 363 of the Bankruptcy Code, including, without limitation, a finding that Purchaser is a good-faith purchaser pursuant to Section 363(m) of the Bankruptcy Code; that the sale of the Purchased Assets contemplated hereby did not involve any improper conduct, including collusion, and cannot be avoided under grounds set forth under Section 363(n) of the Bankruptcy Code; that all claims of Liens or Encumbrances including, without limitation, the pre-petition and post-petition claims of any secured creditors of Seller or creditors of Seller whose claims could act as a Lien against the Purchased Assets are transferred to the proceeds of the sale, thereby allowing the Purchased Assets to be sold free and clear of any and all Liens, Claims, Interests and Encumbrances of any nature under Section 363(f) of the Bankruptcy Code.  The Sale Order shall also indicate that the Transactions may be consummated immediately upon entry of the Sale Order and pursuant to Fed. R. Bankr. P. 6004(h), the sale of the Purchased Assets is not stayed pending the expiration of fourteen (14) days from the date of entry of the Sale Order.

7.2      Assumed Agreements.

(a)      Subject to the terms and conditions of this Agreement, and in reliance on the representations, warranties and covenants set forth in this Agreement, Seller shall, pursuant to Section 365 of the Bankruptcy Code, with the approval and pursuant to Order of the Bankruptcy Court, assume and then sell, assign, transfer and convey to Purchaser all Assumed Agreements, to the extent executory.

ARTICLE VIII

COVENANTS

8.1      Consents.  Seller shall use its commercially reasonable efforts, and Purchaser shall cooperate with Seller, to obtain at the earliest practicable date all consents and approvals required to consummate the Transactions, provided, however, that neither Seller nor Purchaser shall be obligated to pay any consideration therefor to any third party from whom consent or approval is requested or to initiate any Legal Proceedings to obtain any such consent or approval

8.2     Further Assurances.  Subject to the other provisions of this Agreement, each of Purchaser and Seller shall use its commercially reasonable efforts to (a) take all actions necessary or appropriate to consummate the Transactions and (b) cause the fulfillment at the earliest practicable date of all of the conditions to their respective obligations to consummate the Transactions.

8.3     Schedules and Exhibits.  Prior to Closing, Seller shall update any Schedules to this Agreement as of the Closing Date, provided that no such update shall relieve Seller for any breach, or deprive Purchaser of any remedy, based on the Schedules as originally provided.

8.4     Employee Cooperation; Selected Employees.  Purchaser shall determine those employees of Seller employed or engaged in connection with the Business to whom Purchaser will offer employment effective as of the close of business on the Closing Date, and shall  provide Seller one or more lists collectively setting forth all such employees (the "Selected Employees"). Seller shall provide commercially reasonable cooperation and assistance to Purchaser in transitioning the Selected Employees to employment with Purchaser.  Seller shall not take any action, directly or indirectly, to prevent or discourage any employee previously so identified to Seller by Purchaser as a Selected Employee from accepting employment with Purchaser. Seller shall provide Purchaser with reasonable access to communicate with the employees and independent contractors of Seller (with respect to the Business) from the date hereof through the Closing.

ARTICLE IX

CONDITIONS TO CLOSING

9.1     Conditions Precedent to Obligations of Purchaser.  The obligation of Purchaser to consummate the Transactions is subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser in whole or in part to the extent permitted by applicable Law), it being agreed by the Parties that the form of  any document Purchaser requires Seller to execute as a condition to Closing shall be attached to the Sale Order and approved by the Bankruptcy Court:

(a)     Seller shall have furnished Purchaser with a certified copy of all necessary corporate action on its behalf approving its execution, delivery and performance of the Agreement, and Purchaser and its counsel shall have received all such counterpart originals or copies of such actions as it or they may reasonably request; and

(b)     the Sale Order approving this Agreement and the Transactions shall have been entered by the Bankruptcy Court and shall be final and non-appealable and shall remain in full force and effect and shall not have been stayed, vacated, modified, or supplemented in any material respect without the prior written consent of Purchaser and Seller.

9.2     Conditions Precedent to Obligations of Seller.  The obligations of Seller to

consummate the Transactions are subject to the fulfillment, prior to or on the Closing Date, of each of the following conditions (any or all of which may be waived by Seller in whole or in part to the extent permitted by applicable Law):

(a) the representations and warranties of Purchaser contained in this Agreement shall be true and correct in all material respects on and as of the Closing Date, except to the extent expressly made as of an earlier date, in which case such representations and warranties shall be true and correct in all material respects as of such earlier date, except that those representations and warranties that are modified as to materiality or contain a qualification referring to a "Material Adverse Effect" or any similar modification or qualification shall be true and correct in all respects as of said dates; provided, however, that notwithstanding the foregoing, this condition precedent to Closing shall be deemed satisfied unless the failure of such representations and warranties to be so true and correct would reasonably be expected to have, in the aggregate, a Material Adverse Effect on Purchaser's ability to consummate the Transactions; and Seller shall have received a certificate signed by an authorized officer of Purchaser, without personal liability to the executing officer, dated the Closing Date, to the effect that the condition set forth in this paragraph (a) has been satisfied;

(b) Purchaser shall have performed and complied in all material respects with all covenants, obligations and agreements required by this Agreement to be performed or complied with by it on or prior to the Closing Date, and Seller shall have received a certificate signed by an authorized officer of Purchaser, without personal liability to the executing officer, dated the Closing Date, to the foregoing effect;

(c) Purchaser shall have furnished Seller with a certified copy of all necessary corporate action on its behalf approving its execution, delivery and performance of the Agreement; and

(d) the Sale Order approving this Agreement and the Transactions shall have been entered by the Bankruptcy Court ), and shall be in compliance with all material respects with the requirements with respect thereto set forth in this Agreement.

9.3 <u>Conditions Precedent to Obligations of Purchaser and Seller</u>. The respective obligations of Purchaser and Seller to consummate the Transactions are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser and Seller in whole or in part to the extent permitted by applicable Law) there shall not be in effect any Order by a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the Transactions.

ARTICLE X

TAXES

10.1    Allocation of Taxes.  All Taxes imposed on or with respect of the Purchased Assets on a periodic basis (including, but not limited to, real estate Taxes and assessments) ("Periodic Taxes") relating to periods beginning on or before and ending after the Closing Date shall be allocated on a per diem basis to Seller and Purchaser, respectively, in accordance with Section 164(d) of the IRC.  All Periodic Taxes relating to periods ending on or before the Closing Date shall be allocated solely to Seller.  All Periodic Taxes relating to the periods beginning after the Closing Date shall be allocated solely to Purchaser.  If the actual amounts to be prorated are not known as of the Closing Date, then the prorations shall be made on the basis of Periodic Taxes assessed for the prior year.

10.2    Purchase Price Allocation.  Seller and Purchaser shall allocate the Purchase Price among the Purchased Assets in accordance with a statement (the "Allocation Statement") provided by Purchaser to Seller as soon as practicable after the Closing, which statement shall be prepared in accordance with Section 1060 of the IRC.  Purchaser and Seller shall file all Tax Returns (including Form 8594) consistent with, and shall take no tax position inconsistent with, the Allocation Statement.

10.3    Tax Reporting.  Purchaser and Seller shall each be responsible for the preparation and filing of their own Tax Returns.

10.4    Cooperation and Audits.  Purchaser and Seller shall cooperate with each other regarding tax matters and shall make available to the other as reasonably requested all information, records and documents relating to Taxes governed by this Agreement until the expiration of the applicable statute of limitations or extension thereof or the conclusion of all audits, appeals or litigation with respect to such Taxes.

10.5    Transfer Taxes.  To the extent that the transfer of the Purchased Assets is subject to exemption pursuant to Section 1146(a) of the Bankruptcy Code, the making, delivery, filing and recording of various instruments of transfer to be recorded in connection with the sale by Seller of the Purchased Assets to Purchaser shall not be taxed under any Law imposing a recording tax, stamp tax, transfer tax or similar tax.  Seller shall include such an exemption in the Sale Order. To the extent that any transfer, registration, stamp, documentary, sales, use or similar Tax is assessed in connection with the transfer of the Purchased Assets, all such Taxes (including, but not limited to all applicable real estate transfer or gains Taxes), any penalties, interest and additions to Tax, and court, registration and filing fees incurred in connection with this Agreement shall be the responsibility of and be timely paid by Purchaser.  Seller and Purchaser shall cooperate in the timely making of all filings, returns, reports and forms as may be required in connection therewith.

ARTICLE XI

MISCELLANEOUS

11.1    No Survival of Representations and Warranties.  The Parties agree that, provided that the Closing occurs, the representations and warranties and the covenants required to be performed prior to the Closing Date contained in this Agreement shall not survive the Closing hereunder and no Person shall have any liability for any breach thereof.  All covenants and other obligations required to be performed after the Closing Date shall survive the Closing Date.

11.2 <u>Expenses.</u> Except as otherwise provided in this Agreement, each of Seller and Purchaser shall bear its own expenses incurred in connection with the negotiation and execution of this Agreement, and each other agreement, document and instrument contemplated by this Agreement, and the consummation of the Transactions.

11.3 <u>Submission to Jurisdiction; Consent to Service of Process</u>.

(a) Without limiting either party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Transactions, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

11.4 <u>Waiver of Right to Trial by Jury</u>. Each party to this Agreement waives any right to trial by jury in any action, matter or proceeding regarding this Agreement or any provision hereof.

11.5 <u>Entire Agreement; Amendments and Waivers</u>. This Agreement (including the Schedules and Exhibits hereto) represents the entire understanding and agreement between the Parties with respect to the subject matter hereof. This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought. No action taken pursuant to this Agreement, including, without limitation, any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by either Party of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by Law.

11.6 <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the Laws of the state of New Jersey applicable to contracts made and performed in such state.

11.7 <u>Notices</u>. All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand, (ii) when sent by facsimile (upon written confirmation of transmission), (iii) one (1) Business Day following the day sent by overnight courier (with written confirmation of receipt) or (iv) five (5) Business Days following the date of mailing if delivered by registered or certified mail, return receipt requested, in each case at the following addresses and facsimile numbers (or to such other address or facsimile number as a party may have specified by notice given to the other party pursuant to this

provision):

If to Seller, to:

copies to:

A.Y. Strauss LLC
290 W. Mount Pleasant Ave.
Suite 3260
Livingston, NJ 07039
Attn: Eric H. Horn, Esq.

If to Purchaser, to:

with copies to:

11.8    Severability.  If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any Law or public policy, then all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the Transactions is not affected in any manner materially adverse to any party.  Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner in order that the Transactions are consummated as originally contemplated to the greatest extent possible.

11.9    Assignment. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.  Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a Party to this Agreement.  No assignment of this Agreement or of any rights or obligations hereunder may be made by either Seller or Purchaser (by operation of Law or otherwise) without the prior written consent of the other Party and any attempted assignment without the required consent.

*[signatures appear on following page]*

Seller:

**Work 'N Gear LLC**


By:_____
Name:
Title:

Buyer:

[_____]


By:_____
Name:
Title:

Exhibit 3 to Motion

[Sale Order]

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-2*

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
David S. Salhanick, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-0966
Fax  (973) 533-0127

*Counsel to the Debtor*
*and Debtor in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| Work 'N Gear, LLC, | Case No. 25-17472 (MEH) |
| Debtor. | |

**ORDER (A) AUTHORIZING AND APPROVING THE SALE OF
THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
CHARGES, ENCUMBRANCES, AND INTERESTS, (B) AUTHORIZING
AND APPROVING THE ASSET PURCHASE AGREEMENT WITH RESPECT
THERETO AND IMPLEMENTATION THEREOF, (C) AUTHORIZING
AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES AS NECESSARY IN
CONNECTION WITH THE ASSET SALE, AND (D) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through eighteen (18), is

hereby **ORDERED**.

Debtor:     Work 'N Gear, LLC
Case No.:   25-17472 (MEH)
Caption:    *Order Approving, Among Other Things, Sale of Assets*

_____

Upon the Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a), 363 and 365, and Bankruptcy Rules 202, 6004 and 6006 for (I) Entry of an Order (A) Approving Bidding Procedures and Notice of the Auction Relating Thereto, (B) Scheduling Hearing to Consider Sale of Substantially all of the Debtor's Assets, and (II) Entry of an Order (A) Authorizing and Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (B) Authorizing and Approving the Asset Purchase Agreement with Respect Thereto, (C) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (collectively, the "***Assigned Contracts***") as Necessary in Connection With the Sale, and (D) Granting Related Relief (the "***Motion***") seeking, among other things, the entry of an Order: (i) authorizing the Debtor's sale (the "***Sale***") to _____ (the "***Purchaser***"), pursuant to an Asset Purchase Agreement between Work 'N Gear, LLC and Purchaser, dated as of _____ (the "***Purchase Agreement***") of the Assets, free and clear of liens, claims, charges, interests or encumbrances, with such liens, claims, charges, interests or encumbrances to  transfer, affix, and attach to the proceeds of the Sale with the same order, priority, validity, force, and effect which such liens, claims, charges, interests or encumbrances now have against the Assets subject to any claims and defenses the Debtor or its estate may possess with respect thereto, (ii) authorizing the assumption and assignment of certain unexpired leases of non-residential real property in connection therewith as set forth on **Exhibit "__"** hereto (the "***Assumed Leases***" and each an "***Assumed Lease***"), (iii) authorizing the assumption and assignment of certain unexpired executory contracts in connection therewith as set forth on **Exhibit "___"** hereto (the "***Assumed Contracts***" and each an "***Assumed***

Debtor:    Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:   *Order Approving Sale of Assets*

_____

***Contract***"), and (iv) approving the Purchase Agreement and the transactions set forth therein and the implementation thereof; and upon this Court's order dated December ____, 2025 approving, *inter alia,* certain bidding procedures and an auction (the "***Auction***") in connection with the Debtor's sale of the Purchased Assets (Docket No. __) (the "***Bidding Procedures Order***"); and Purchaser having presented the highest and otherwise best bid for the Assets; and upon the record of the hearing to consider approval of the proposed Sale (the "***Sale Hearing***"); and the Court having determined that the relief requested by the Motion is proper, lawful, necessary, appropriate and in the best interests of the Debtor, its estate, creditors and direct and indirect equity holders, and all parties-in-interest; and the Court having considered the Motion, any objections filed thereto, the statements of counsel, and any testimony or offer of proof as to testimony that may have been presented at the hearing and any other responses and objections to the Motion been withdrawn, resolved, or overruled by this Order; and the Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore; it is hereby

**FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Debtor:    Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:   *Order Approving Sale of Assets*

_____

B.      Notice of the Motion, and of the Sale Hearing, the Auction, and the Debtor's proposed assumption and assignment of the Assumed Contracts and Assumed Leases was given in accordance with the Bidding Procedures Order of the Court and as otherwise required by applicable law, as evidenced by the affidavits of service on file with the Clerk of the Court.

C.      The Court has jurisdiction to consider the Motion and relief requested therein pursuant to 28 U.S.C. Sections 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2).  Venue of those chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. Sections 1408 and 1409.

D.      The statutory predicates for the relief sought in the Motion are sections 363, 365 and 105(a) of the Bankruptcy Code.  In addition, the relief requested in the Motion is appropriate under Bankruptcy Rules 2002, 6004 and 6006.

E.      The notice provided of the Motion, the Sale Hearing, the Auction, and the Debtor's proposed assumption and assignment of the Assumed Leases and Assumed Contracts was adequate and sufficient, and any otherwise applicable requirement for notice is hereby waived and dispensed with.

F.      The Debtor has complied in all material respects with the Bidding Procedures Order and has duly and properly implemented the procedures contemplated thereby.  The Sale of the Purchased Assets pursuant to the Purchase Agreement has been conducted pursuant to a fair and equitable process.  In accordance with the Bidding Procedures Order, potential bidders were afforded a reasonable opportunity to submit bids by 5:00 p.m. on January 5, 2026.  In accordance with the Bidding Procedures Order and the bidding procedures provided thereunder, the Debtor

4

Debtor:    Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:   *Order Approving Sale of Assets*

_____

scheduled the Auction on January 8, 2026.

G.       The Debtor has demonstrated a sufficient basis and the existence of exigent circumstances requiring them to sell the Purchased Assets and assume and assign any Assigned Contracts under sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtor's business judgment and in the best interests of the Debtor, its creditors and estates.

H.       Based upon the results of the Auction, the Debtor determined that the bid evidenced by the Purchase Agreement was the highest and best offer for the Purchased Assets.

I.       The Debtor afforded interested potential buyers a full, fair and reasonable opportunity to make a higher and better offer to purchase the Purchased Assets, and provided potential buyers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets.

J.       The record establishes that there are good, valid and sound business purposes for the sale of the Purchased Assets, the assumption and assignment of the Assumed Contracts and the Assumed Leases, as applicable, to be assumed by the Debtor and assigned to the Purchaser under the Purchase Agreement.

K.       The consideration to be paid under the Purchase Agreement is fair and reasonable under the circumstances of this Chapter 11 case, and the Purchaser's offer is the highest and best offer for the Purchased Assets and in the best interests of the estate.

L.       Adequate assurance exists that the Purchaser will fully perform all future

Debtor:   Work 'N Gear, LLC
Case No.:   25-17472 (MEH)
Caption:   *Order Approving Sale of Assets*

_____

obligations under the Assumed Contracts and Assumed Leases, as applicable, to be assumed and assigned to the Purchaser under the Purchase Agreement.  Assumption and assignment of the Assumed Contracts identified on **Exhibit "___"**, the Assumed Leases identified on **Exhibit "___"**, is an appropriate exercise of the Debtor's business judgment.

M.      The Debtor and the Purchaser have acted in good faith and in accordance with applicable law.  The Purchase is not an "insider" or otherwise an "affiliate" of the Debtors (as such terms are defined in section 101 of the Bankruptcy Code).  The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the full protections of sections 363(m) and (n) of the Bankruptcy Code with respect to the purchase of the Debtor's assets, including all of the Purchased Assets and Assigned Contracts. The Purchase Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion.  Neither the Debtor nor the Purchaser has engaged in any conduct that would prevent the application of the section 363(m) of the Bankruptcy Code or that would cause the application of or implicate section 363(n) to the Purchase Agreement or to the consummation of the sale transaction and transfer of the Purchased Assets to Purchaser.  The Purchaser is entitled to all the protections and immunities of § 363(m) of the Bankruptcy Code. No evidence presented to this Court that the Sale price was controlled by any agreement among potential bidders or that any activity prohibited by Section 363(n) of the Bankruptcy Code has occurred.

N.      The Debtor has full authority and power to execute and deliver the Purchase Agreement and related agreements and all other documents contemplated by the Purchase Agreement, to perform its obligations thereunder, and to consummate the transactions

6

Debtor:   Work 'N Gear, LLC
Case No.:   25-17472 (MEH)
Caption:   *Order Approving Sale of Assets*

_____

contemplated thereby and the execution, delivery and performance of the Purchase Agreement

and the documents to be executed and delivered by the Debtor pursuant thereto and the Sale of

the Purchased Assets, pursuant to the Purchase Agreement, has been duly and validly authorized

by all necessary action.  No other consents or approvals are necessary or required for the Debtor

to enter into the Purchase Agreement, perform its obligations thereunder and consummate the

transactions contemplated thereby.

O.     The Debtor shall sell the Purchased Assets free and clear of all liens, claims,

charges, encumbrances, and interests against the Debtor, its estate or any of the Purchased

Assets, including but not limited to any lien, claim, charge, encumbrance or interest for taxes in

respect of the Purchased Assets for years prior to the Closing.

P.     The Debtor has advanced sound business reasons for seeking to enter into the

Purchase Agreement and to sell the Purchased Assets and assume and assign any Assigned

Contracts, as more fully set forth in the Motion and as demonstrated at the Sale Hearing, and it is

a reasonable exercise of the Debtor's business judgment to sell the Purchased Assets and to

execute and deliver the Purchase Agreement to the Purchaser.

Q.     A valid business purpose exists for approval of the transactions contemplated by

the Motion pursuant to section 363(b) of the Bankruptcy Code.  Notwithstanding any

requirement for approval or consent by any person, the transfer of the Purchased Assets to the

Purchaser and assumption and assignment of the Assigned Contracts is a legal, valid and

effective transfer of the Purchased Assets and any Assigned Contracts.

R.     The Debtor and the purchaser have, to the extent necessary, and subject to the

7

Debtor:   Work 'N Gear, LLC
Case No.: 25-17472 (MEH)
Caption:  *Order Approving Sale of Assets*

---

terms and conditions set forth herein, satisfied the requirements of section 365 of the Bankruptcy

Code, including sections 365(b)(1) and 365(f)(2), in connection with the sale and the assumption

and assignment of any Assigned Contracts.  The Purchaser has demonstrated adequate assurance

of future performance with respect to all Assigned Contracts.

S.     In the absence of a stay pending appeal, the Purchaser will be acting in good faith

pursuant to section 363(m) of the Bankruptcy Code in closing the transactions contemplated by

the Purchase Agreement, in its sole discretion, at any time on or after entry of this Order, and

cause has been shown as to why this order should not be subject to the stay provided by

Bankruptcy Rule 6004(g) and 6006(d).

T.     The sale of the Purchased Assets outside of a plan of reorganization pursuant to

the Purchase Agreement neither impermissibly restructures the rights of the Debtor's creditors,

impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors, require

creditors to vote for any plan, or attempts to circumvent disclosure requirements of chapter 11.

U.     The transfer of the Purchased Assets to Buyer will be a legal, valid and effective

transfer of the Purchased Assets, and, except as may otherwise be provided in the Purchase

agreement, shall vest Purchaser with all right, title and interest of the debtor to the Purchased

Assets free and clear of all (i) liens, including any such liens (A) that purport to give to any party

a right or option to effect any forfeiture, modification, right of first refusal, or termination of the

Debtor's or Purchaser's interest in the Purchased Assets, or similar rights, or (B) relating to taxes

or any other liabilities relating to the Purchased Assets, the Debtor's, or its Business, other than

the assumed liabilities as set forth in the Purchase Agreement, and (ii) reclamation claims under

Debtor:   Work 'N Gear, LLC

Case No.:  25-17472 (MEH)

Caption:  *Order Approving Sale of Assets*

_____

section 546(c) of the Bankruptcy Code or similar rights and claims that have been or could be asserted against any of the Purchased Assets.

V.       Purchaser shall have no obligations with respect to any liabilities of the Debtor other than the assumed liabilities and its obligations under the Purchase Agreement.

**IT IS HEREBY ORDERED AS FOLLOWS**:

1.       The Motion is granted to the extent provided herein.  All objections to the Motion that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections, are overruled in all respects on the merits and denied.

2.       The Debtor is authorized and directed to sell, or cause to be sold, the Purchased Assets to the Purchaser, without further application to or order of this Court and upon the terms and conditions of the Purchase Agreement and any related agreements, as applicable.  The Debtor is further authorized and directed to take such steps and to execute such documents as are reasonably necessary to give effect to the transfers and transactions contemplated under the Purchase Agreement.

3.       The transfer of the Purchased Assets to the Purchaser shall constitute a legal, valid and effective transfer. Except to the extent otherwise provided for in the Purchase Agreement, title, right and interest in and to the Purchased Assets shall pass to the Purchaser at Closing free and clear of all liens (as that term is defined in section 101(37) of the Bankruptcy Code), claims (including, but not limited to, any "claim" as defined in Section 101(5) of the Bankruptcy Code), charges, interests, and encumbrances, including, but not limited to, any lien (statutory or otherwise), hypothecation, encumbrance, liability, security interest, interest, mortgage, pledge,

9

Debtor:    Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:   *Order Approving Sale of Assets*

_____

restriction, charge, instrument, license, preference, priority, security agreement, easement, covenant, encroachment, option, right of recovery, tax (including foreign, federal, state and local tax), governmental order, of any kind or nature (including (a) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (b) any assignment or deposit arrangement in the nature of a security device, (c) any claim based on any theory that the Purchaser is a successor, transferee or continuation of the Debtor or the Debtor's business, or (d) any leasehold interest, license or other right, in favor of a third party or the Debtor, to use any portion of the Purchased Assets, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown (other than permitted exceptions) (referred to collectively, whether having arisen, been incurred or accrued prepetition or postpetition, as the "***Liens and Claims***"), pursuant to Section 363(f) of the Bankruptcy Code, with all such Liens and Claims upon the Purchased Assets to be unconditionally and irrevocably released, discharged and terminated; *provided*, *however*, that all such Liens and Claims shall attach to the proceeds of the Sale of the Purchased Assets with the same extent, validity and priority as existed with respect to the Purchased Assets prior to Closing.

4.      The Purchase Agreement between the Purchaser and the Debtor, and each of the terms thereof and the transaction contemplated thereby, are approved. The Debtor is authorized and directed to execute and deliver such other documents and take such other actions as may be necessary, desirable or appropriate to effect, implement, and/or consummate the Purchase Agreement, the sale of the Purchased Assets, and all other transactions described in the Purchase Agreement, without further application to or order of this Court.

Debtor:  Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:  *Order Approving Sale of Assets*

_____

5.      The provisions of this Order authorizing the Sale of the Purchased Assets by the Debtor free and clear of Liens and Claims to the extent hereinafter provided (with such Liens and Claims to attach to the proceeds of the sale of the Purchased Assets), shall be self-executing, and neither the Debtor, the Purchaser nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such Sale; *provided*, *however*, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the Purchase Agreement.

6.      All persons or entities, presently or on or after the Closing in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchase may request.

7.      The terms and provisions of this Order shall be binding in all respects upon the Debtor, its estate, and any trustee thereof, all creditors and shareholders of the Debtor, and all interested parties and their respective successors and assigns, including but not limited to, any creditor asserting a Lien or Claim on or against the Purchased Assets.

8.      A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel the Liens and Claims and other encumbrances of record with respect to the Purchased Assets.

9.      This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or

11

Debtor:   Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:   *Order Approving Sale of Assets*

_____

contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

10.   Any and all governmental recording offices and all other parties, persons or entities are authorized to accept this Order for recordation on or after the Closing as conclusive evidence of the free and clear, and unencumbered, transfer of right, title and ownership in and to the Purchased Assets conveyed to the Purchaser at Closing.

11.   Except as expressly provided in the Purchase Agreement, the Purchaser is not assuming nor shall it or any affiliate of the Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtor in any way whatsoever relating to or arising from the Debtor's ownership or use of the Purchased Assets prior to the consummation of the transactions contemplated by the Purchase Agreement, or any liabilities calculable by reference to the Debtor or its operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Purchase Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any affiliate of the Purchaser.

12.   The consideration provided by the Purchaser for the Purchased Assets purchased pursuant to the Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The sale of the Purchased Assets to the

Debtor:   Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:   *Order Approving Sale of Assets*

_____

Purchaser pursuant to the Purchase Agreement and this Order is free from any fraudulent intent, purpose or desire on the part of the Purchaser or the Debtor to escape liability for any obligations of the Debtor or for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code under the laws of the United States, any state, territory, possession, or the District of Columbia.

13.     The Purchaser is hereby granted and is entitled to the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to any transfer of any Assigned Contracts as part of the sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Order.  Pursuant to Section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal shall not affect the validity of the transfer of the Purchased Assets to the Purchaser unless the transfer is stayed pending appeal prior to the Closing.

14.     The Transactions contemplated in the Purchase Agreement may not be avoided, and no damages may be assessed against the Purchaser under Section 363(n) of the Bankruptcy Code.

15.     Subject to and conditioned upon the Closing of the Sale and payment by the Debtor of Cure Amounts due under the Purchase Agreement, all requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption and assignment to the Purchaser of the Assumed Contracts and Assumed Leases, as applicable, shall have been satisfied. The Debtor is hereby authorized and directed to assume the Assumed Leases and Assumed Contracts as set forth in the Purchase Agreement and to assign such Assumed Leases and Assumed Contracts to the Purchaser, without further application to or order of the Court. Subject to the Sale Procedures Order, no counterparty to any Assumed Contract or Assumed

Debtor:   Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:   *Order Approving Sale of Assets*

---

Lease that did not file a timely objection to the cure schedule served by the Debtor on January 12, 2026 and filed by the Debtor on _____ (Docket No. __) (the "**Cure Schedule**") shall be permitted to claim that any additional amounts or monetary obligations are due or defaults exist, or that any additional conditions to assignment must be satisfied, other than the payment of the Cure Amounts set forth in the Cure Schedule, which are the sole amounts necessary under Sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses or claims under the Assumed Contracts and Assumed Leases.

16.     The Assumed Leases shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser, as tenant, in accordance with their respective terms, notwithstanding any provision in any such lease agreement (including, without limitation, an anti-assignment provision, a change-of-control provision, or as described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, conditions, or limits such assignment or transfer.

17.     Pursuant to section 365(k) of the Bankruptcy Code, the Debtor and its estate shall not be liable for any breach of the Assumed Contracts or Assumed Leases after the date of assignment to the Purchaser.

18.     Each non-debtor party to any Assumed Lease is hereby barred and permanently enjoined from asserting against the Purchaser any default, claim, damages or liability existing, accrued, arising or relating to a period prior to the Closing Date.

19.     The failure (if any) of the Debtor or the Purchaser, as the case may be, to enforce at any time one or more terms or conditions of any Assumed Contracts or Assumed Leases, as applicable, shall not be a waiver of such terms or conditions, or of any of the rights of the Debtor

Debtor:    Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:   *Order Approving Sale of Assets*

_____

or the Purchaser, as the case may be, to enforce each and every term and condition of the Assumed Contracts or Assumed Leases.

20.     The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered confirming any plan of reorganization or liquidation or which may be entered converting the Debtor's case from Chapter 11 to Chapter 7 and shall be binding on any trustee or successor trustee. The Debtor shall not file, nor seek to confirm, any plan of reorganization or liquidation in this case or take any action that is inconsistent with the Purchase Agreement or the Debtor's obligations arising thereunder or that impairs in any way the Purchaser's rights or remedies thereunder.

21.     To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of this Chapter 11 case or the consummation of the transactions contemplated by the Purchase Agreement.

22.     The Purchase Agreement and the transactions and instruments contemplated thereby shall be specifically enforceable against and binding upon, and not be subject to rejection or avoidance by, the Debtor or any subsequent successor, assign, or trustee of the Debtor.

23.     The Purchase Agreement and any related agreements, documents, or other instruments may be amended by the parties in a writing jointly signed by such parties without further order of the Court, provided that: (a) any such amendment does not have a material adverse effect on the Debtor or the Debtor's estate, and (b) notice of any such amendment shall be provided to the Creditors' Committee and the DIP lender.

24.     This Order shall be effective immediately upon entry pursuant to Rule 7062 and

15

Debtor:   Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:  *Order Approving Sale of Assets*

_____

9014 of the Federal Rules of Bankruptcy Procedure, and no automatic stay of execution, pursuant to Rule 6004(h) or 6006(d) of the Federal Rules of Bankruptcy Procedures, applies with respect to this Order.

25.    The Court shall retain jurisdiction over the Debtor, the Purchaser, and all parties asserting Liens and Claims and contract rights on or in the Purchased Assets, to implement, interpret, consummate and/or effectuate the provisions of this Order, the Purchase Agreement, and all agreements arising out of, related to, or approved pursuant to this Order, and to enter orders in aid or furtherance of the Transactions contemplated in the Purchase Agreement.

26.    The provisions of this Order are non-severable and mutually dependent.

27.    Pursuant to sections 105(a) and 363 of the Bankruptcy Code, all Persons and Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against the Purchaser or the Purchased Assets to recover any Claim which such Person or Governmental Unit has or may assert against the Debtor (as such Claims exist immediately prior to the Closing).

28.    The Purchaser is not a "successor" to the Debtor or its bankruptcy estate by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Debtor and/or its estate, including but not limited to any bulk sales law or similar liability, except as otherwise expressly provided in the Purchase Agreement.

29.    Pursuant to sections 105 and 363 of the Bankruptcy Code, all person and entities, including, but not limited to, all parties holding any Claims against the Debtor, its estates or its assets, the Debtor's employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, including such

16

Debtor:   Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:   *Order Approving Sale of Assets*

_____

officials maintaining any authority relating to environmental, labor and health and safety laws, and their respective successors or assigns, are hereby permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind or the employment of any process or any act to collect, offset or recover any Claim against the Purchaser, or that seeks to impose liability upon the Purchaser or any affiliate, successor or assign thereof, or against the Purchased Assets or the Assigned Contracts, under the laws of the United States, any stare, territory or possession thereof or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law, including, without limitation, any theory of successor to transferee liability or any liability for pre- or postpetition Claims against any of the Debtor by reason of the transfer of the Purchased Assets to the Purchaser, including, without limitation, pre- and postpetition Claims any federal, state or local governmental entities, of any current or former employee for claims arising out of employment and termination of employment, including, without limitation, claims for wages, bonuses, commissions, accrued vacation, severance, continuation of coverage under COBRA, or pension, welfare, fringe benefits or any other benefits of any kind including, without limitation, obligations in respect of retiree medical coverage or benefits.

30.     The provisions of the Purchase Agreement may be waived, modified, amended, or supplemented by agreement of the Debtor and the Purchaser and, where and if applicable, any third parties materially affected thereby, without further action of the Court; *provided*, *however* that any such waiver, modification, amendment, or supplement is not material and substantially conforms to and effectuates the Purchase Agreement and any related agreements.

31.     The failure specifically to include any particular provisions of the Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness

17

Debtor:    Work 'N Gear, LLC
Case No.:  25-17472 (MEH)
Caption:   *Order Approving Sale of Assets*

_____

of such provision, it being the intent of the Court, the Debtor and the Purchaser that the Purchase

Agreement and any related agreements are authorized and approved in their entirety with such

amendments thereto as may be made by the parties in accordance with this Order.